```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
GLOBAL NETWORK COMMUNICATIONS, INC.,                                :
                                                                    :       07 Civ.
                              Plaintiff,                            :
                                                                    :
       - against -                                                  :
                                                                    :
CITY OF NEW YORK and CITY OF NEW YORK                               :
DEPARTMENT OF INFORMATION TECHNOLOGY                                :
AND TELECOMMUNICATIONS,                                             :
                                                                    :
                              Defendants.                           :
--------------------------------------------------------------------X
```

# PLAINTIFF MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR INJUNCTION AND TEMPORARY RESTRAINING ORDER

LAW OFFICE OF JOSEPH P. GARLAND
Joseph P. Garland – JG0888
275 Madison Avenue, Suite 420
New York, New York 10016
(212) 213-1812

Attorneys for Plaintiff

Table of Contents

I. Preliminary Statement .................................................................................................... 1

II. Facts ............................................................................................................................... 1

III. Applicable Legal Standard............................................................................................ 7

IV. Argument ..................................................................................................................... 7

    A. Global Will Suffer Irreparable Harm Without A Temporary Restraining Order and Preliminary Injunction Preserving the Status Quo................................................................ 7

    B. Likelihood of Success on the Merits................................................................................. 9

        1. The Underlying Claim that the City's Scheme Violates Federal Law. ....................... 9

        2. The City Would Suffer No Harm From the Maintenance of the Status Quo. ........... 11

        3. The Public Interest Will Be Served By the Continued Availability of Global's PPTs. ................................................................................................................................... 12

    C. Insofar as the Court orders Global to Post a Bond, it should be minimal........................ 12

V. Conclusion ................................................................................................................... 13


# **Table of Authorities**

**Statutes**

42 U.S.C. § 1983 .................................................................................................................... 8
47 C.F.R. § 64.1330(a) ........................................................................................................... 4
Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, Report and Order, 11 F.C.C.R. 20541, 1996 FCC LEXIS 5261 (1996) ..................................................................................................................................... 4
S. CONF. REP. No. 104-230, 104th Cong., 2d Sess. 1 (1996) .................................................. 4
Section 253, Telecommunications Act of 1996, 47 U.S.C. § 253 ................................. 2, 3, 10
Section 276, Telecommunications Act of 1996, 47 U.S.C. § 276 ..................................... 4, 10

**Cases**

*Able v. United States,* 44 F.3d 128 (2d Cir. 1995) ..................................................................... 7

*AIM Int'l Trading, LLC v. Valcucine Spa.*, 188 F. Supp. 2d 384 (S.D.N.Y. 2002) ................. 7

*International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67 (2d Cir. 1996) ................................ 7

*Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258 (10th Cir. 2004) ........................................... 8

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990) ..................................... 7

*Roso-Lino Beverage Dist., Inc. v. The Coca-Cola Bottling Co.*, 749 F.2d 124 (2d Cir. 1984) ................................................................................................................................... 8, 9

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970) ................................ 9

*Tel Comm Technologies, Inc. v. City of Bridgeport*, 2006 WL 3791383, 2006 U.S. Dist. LEXIS 92728 (D. Conn. Dec. 21, 2006) ..................................................................................... 8

*USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488 (S.D.N.Y. 1989) ........................... 8

Plaintiff, Global Network Communications, Inc. ("Global"), submits this Memorandum of Law in Support of its Motion for a temporary restraining order and Preliminary Injunction enjoining Defendants from continuing to remove Global public pay telephones ("PPT") from the public rights-of-way in the City of New York.

## I. **PRELIMINARY STATEMENT**

Global moves for a temporary restraining order and a preliminary injunction to restrain and enjoin the City from continuing to remove, or force the removal of, Global's public pay telephones ("PPTs") pending resolution of this case. After indicating that it would physically remove 41 PPTs long operated by Global from the City's public rights-of-ways, Defendants have begun to do so. (¶ 3, Massie Decl. dated December 13, 2007 ("Massie Decl."), Exh. 3, 5 (letters of Nov. 19, 2007 and Dec. 7, 2007).) Global will likely have no remedy – damages may be unavailable – should this Court find that the removals and the destruction of the assets and the good will that has attached to each location were improper because, *inter alia*, they were contrary to obligations imposed under federal law.

The City will suffer no injury by allowing, or being compelled to allow, Global to retain PPTs that have in fact been in place and serving the public over 18 years. The public, on the other hand, will suffer injury unless Global is allowed to retain them.

## II. **FACTS**

Facts relevant to this application are set forth in the accompanying declarations of Ronald Massie ("Massie Decl."), Global's president, and Joseph P. Garland ("Garland Decl."), Global's attorney. Global operates public pay telephones ("PPTs") throughout the City of New York. Among those PPTs are some 662 that occupy the City's public rights-of-way, including forty-one on the curb-line. (¶¶ 17-19, Massie Decl.) Defendants are targeting for removal all forty-

one of those curb-line PPTs, which are Global's most valuable asset.  (¶ , Massie Decl.)  With respect to the PPTs, Global registered them with the City by placing them on what was known as an "Interim Registry."  Global later applied for, but was denied, a franchise to continue to operating its PPTs on the City's public rights-of-way.  That denial was the subject of another action, also entitled *Global Network Communications Inc. v. City of New York and City of New York Department of Information Technology and Telecommunications*, 03 Civ. 7934 (LLS), in which this Court, by Louis L. Stanton, recently granted summary judgment to Defendants on the ground that the City and DoITT did not violate section 253 of the Telecom Act when they denied a franchise to Global.  507 F. Supp. 2d 365 (S.D.N.Y. 2007).  That judgment is being appealed to the Second Circuit.  No. 07-5184-cv.

Before the motion for summary judgment in the first action was briefed, Global advised the Court and Defendants that Global had entered into an agreement with a third-party, Jeffrey Hanft, pursuant to which Global would sell its PPTs assets to Mr. Hanft or a company controlled by Mr. Hanft.  (¶ 6, Massie Decl.)  Mr. Hanft had direct dealings with DoITT and the City's Department of Investigation as well as with legal representatives of Defendants, as he recites in his declaration filed in the first action.  He was asked to complete and submit a VENDEX application, and he did so.  He was asked to attend a meeting in New York with representatives of DoITT and the Department of Investigation, and he did so.  He was asked to provide follow-up information to the Department of Investigation, and he did so.  (Declaration of Jeffrey Hanft dated September 17, 2007 (Exhibit 1, Massie Decl.).)

After initiating communications with Defendants early in 2007, then, only in December did Defendants say that it did not matter whether Mr. Hanft received a franchise because he had

2

nothing to buy, i.e., that Global's PPTs were not a viable asset. (Massie Decl. Exh. 2 (Dec. 11, 2007 letter, Regal to Rubin).)

All was for naught, however, because to operate Global's assets on the City's public rights-of-way, Mr. Hanft must obtain a franchise from DoITT. None is available.

As set forth in the Complaint, and notwithstanding Defendants' representations to the contrary, (*see* ¶ 8, Massie Decl. (counsel for Defendants represented to Judge Stanton that a franchise was, in fact, available to anyone who wanted one (and met the criteria)), there currently is no provision in the regulatory scheme for PPTs on the City's public rights-of-way for anyone to receive such a franchise. The New York City City Council *authorized* the process – which begins with the issuance of a Request for Proposals, or RFP – in September 2003. Now, over four years later, that step has not been taken.

In this area, Defendants are not free to do, or not do, as they please. In the telecommunications area, they are subject to the requirements of the Federal Communications Act and, most particularly, the portions of that statute that were included in the Telecommunications Act of 1996 (the "Telecom Act"). Two provisions are at issue in this Action.

First is the general requirement of section 253. It provides:

> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

47 U.S.C. § 253(a).[1]

---

[1] Section 253(c) has a safe harbor for a municipality's limited regulation of how
(footnote continued . . .)

3

Section 276 of the Telecom Act directs the Federal Communications Commission to promulgate regulations that address provision of public pay telephone service. In doing so, the FCC noted

> the twin goals of Section 276 of the Act of 'promoting competition among payphone service providers and promoting the widespread deployment of payphone services to the benefit of the general public.' To this end, we seek to eliminate those regulatory constraints that inhibit the ability both to enter and exit the payphone marketplace, and to compete for the right to provide services to customers through payphones.

*Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996, Report and Order*, 11 F.C.C.R. 20541, 20544 ¶ 2, 1996 FCC LEXIS 5261 (1996) ("FCC Report") (quoting S. CONF. REP. No. 104-230, 104th Cong., 2d Sess. 1 (1996)). The FCC noted that:

> 13. The competition we observe today. . . has been significantly distorted by government regulation of prices, regulatory barriers to entry and exit, as well as by significant subsidies from other telecommunications services. . . . Removing these types of entry and exit restrictions is a necessary step toward allowing competitive forces to guide both the deployment of payphones and the setting of prices for payphone services.

*FCC Report* ¶ 13. It then adopted a rule:

To effectuate these observations, twelve years ago the FCC adopted a rule:

> Each state must review and remove any of its regulations applicable to payphones and payphone service providers that impose market entry or exit requirements.

47 C.F.R. § 64.1330(a) (promulgated Oct. 7, 1996). The FCC has noted that "[f]ailure to

---

telecommunications services are offered, but it does not apply to whether to permit the provision of a service in the first place. That Defendants have granted franchises (in the limited period when the window for them was open) shows that Defendants do not object to the provision of the services at issue here.

4

remove" state requirements that impose barriers to exit and entry "would plainly conflict with the affirmative obligation imposed by the Commission's rule." *In re New England Public Communications Council Petition for Preemption*, ¶ 30, CCB Pol. No. 96-11, Memorandum Opinion and Order, FCC 96-470 (rel. Dec. 10, 1996). *See also id*., ¶ 29 ("By prohibiting independent payphone providers from offering services in Connecticut, the DPUC Decision is inconsistent with the terms, tenor, and purpose of the Commission's Pay Telephone Order."). On a petition for reconsideration, the FCC noted that its prior decision, which was affirmed, "concludes that the *DPUC Decision*, on its face, conflicts with the pro-competitive policies of the 1996 Act and violates section 253(a), because the *DPUC Decision* prohibits a certain class of telecommunications service providers, *i.e.*, independent payphone providers, from offering interstate or intrastate payphone services in Connecticut." *In re New England Public Communications Council Petition for Preemption*, ¶ 8, CCB Pol. No. 96-11, Memorandum Opinion and Order, FCC 96-470 (rel. Apr. 18, 1997).[2]

---

[2] In the petition for reconsideration, the FCC described its initial conclusion:

> **Error! Main Document Only.**In the *New England Preemption Order*, the Commission exercised its authority under the Supremacy Clause and sections 253(d) and 276(c) of the Communications Act of 1934, as amended (the Communications Act or the Act), to preempt enforcement of the DPUC's decision that prohibits all entities except incumbent and certified local exchange carriers (LECs) from providing pay telephone service in the State of Connecticut. **Error! Main Document Only.**The Commission found that the *DPUC Decision* violates section 253(a) of the Communications Act because it bars independent payphone providers from providing an interstate or intrastate telecommunications service. The Commission also found that the *DPUC Decision* does not fall within the protected class of state regulation described in section 253(b), because it is neither competitively neutral nor necessary to protect consumers. For similar reasons, the Commission found, as an alternative ground for its decision, that the *DPUC*

(footnote continued . . .)

5

Unlike many areas of telecommunications law, this one is simple. The FCC directs – it says "must" – every state and their subdivisions to "remove any of its regulations applicable to payphones and payphone service providers that impose market entry or exit requirements." Currently, in the City of New York there is an absolute bar to a new entrant obtaining a franchise from the City to operate PPTs on the public rights-of-way. The effect of this bar on Global is simple as well. Global, having been denied a franchise by the City is now barred from selling its PPT assets to any firm other than one that is a current franchise-holder. It cannot sell those assets to the buyer of its choice.

But it is not for the City to decide to whom Global can sell its assets. Its attempt to do so by not granting Hanft a franchise specifically or allowing Hanft to obtain a franchise as a general proposition creates an improper, and illegal, barrier to Global's exiting the market.

On the law, then, it is plain that the City's failure to provide a mechanism for anyone to obtain a franchise is a violation of the Telecom Act and the FCC regulations promulgated pursuant thereto. On the law it is unclear whether money damages may be awarded for this violation.

On the facts, because Defendants' violation has prevented Global from selling its assets

---

*Decision* is inconsistent with the payphone provision of the Act, section 276, and the Commission's rules implementing that section. **Error! Main Document Only.**As of December 16, 1996, section 64.1330(a) of these rules requires the DPUC to review and remove regulations that impose payphone market entry and exit requirements.

In re New England Public Communications Council Petition for Preemption, ¶ 3**Error! Main Document Only.**.

6

and placed Global in jeopardy of being put out of business, which is in and of itself sufficient as irreparable injury, in a situation in which it may not be able to obtain damages should it prevail, establishes its entitlement to a preliminary injunction.

### III. APPLICABLE LEGAL STANDARD

When an injunction seeks to stay "'government action taken in the public interest pursuant to a statutory . . . scheme," this Court has determined that the movant must satisfy the more rigorous 'likelihood of success prong.'" *International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 70 (2d Cir. 1996) (quoting *Able v. United States,* 44 F.3d 128, 131-32 (2d Cir. 1995) ). Thus, "[t]o obtain a preliminary injunction the moving party must show, first, irreparable injury, and second . . . likelihood of success on the merits." *Green Party of New York State v. New York State Board of Elections*, 389 F.3d 411, 418 (2d Cir. 2004).

"Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (citations omitted).

### IV. ARGUMENT

**A.   Global Will Suffer Irreparable Harm Without A Temporary Restraining Order and Preliminary Injunction Preserving the Status Quo.**

The City has begun to remove the 41 most valuable assets that Global has. These are its PPTs that have been built-out to the curb and are potentially available for advertising. (¶ 17, Massie Decl.) While they are under 10% of Global's total PPTs, (¶ 19, Massie Decl.), the rationale for their removal extends to all of Global's PPTs. Absent the requested injunction, it is clear that the City will continue to forcibly remove Global's PPTs from the public rights-of-way

7

in the City.

In this Action, Global asserts that the non-availability of a franchise for Mr. Hanft is preventing it from selling its assets and prevents Global from exiting the market. The blanket non-availability of a franchise on the part of Defendants, then, is directly at odds with the Telecom Act's and the FCC's prohibition of such barriers. When the Court likely concludes that the non-availability is a violation, Global's assets, both the PPTs themselves and the good will that has developed over the many years in which they have been located where they are will have been destroyed and Global will have nothing to sell to Mr. Hanft.

In that scenario, it is uncertain whether Global will be able to recover from Defendants for the damages it has suffered as a result of the improper barriers erected by Defendants because it has been held that 42 U.S.C. § 1983 does not permit a damage claim for a violation of the Telecom Act by a municipality. *See, e.g.*, *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1266-67 (10th Cir. 2004); *Tel Comm Technologies, Inc. v. City of Bridgeport*, 2006 WL 3791383, 2006 U.S. Dist. LEXIS 92728, at *10-11 (D. Conn. Dec. 21, 2006) (citing cases).

Moreover, it is also clear that the loss of an ongoing business constitutes irreparable harm, even were the City not a government and a governmental entity with potential claims of immunity. "One exceptional circumstance warranting injunctive relief . . . exists where the prospective breach, if unrestrained, threatens the destruction or catastrophic impairment of an ongoing business." *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989). The Second Circuit has held that the loss of "an ongoing business representing many years of effort and the livelihood of its husband and wife owners, constitutes irreparable harm. What plaintiff stands to lose cannot be fully compensated in monetary terms." *Roso-Lino*

8

*Beverage Dist., Inc. v. The Coca-Cola Bottling Co.*, 749 F.2d 124, 125-26 (2d Cir. 1984) (preliminary injunction context).  *See also Reuters Ltd. v. UPI, Inc.*, 903 F.2d 904, 908 (2d Cir. 1990) ("terminating the delivery of a unique product to a distributor whose customers expect and rely on the distributor for a continuous supply of that product almost inevitably creates irreparable damage to the good will of the distributor.").

Its PPTs are the sole source of revenue for Global, and the only reason it has seven employees.  If DoITT removes Global's PPTs, Global will have no business, and its employees will lose their livelihoods.  (¶ 29, Massie Decl.)  If Global prevails in this case, its victory will be Pyrrhic.  It will have no assets to sell to Mr. Hanft or to anyone else, its assets and the good will developed at the locations of the PPTs will be destroyed.

The loss of the ongoing enterprise will never be fully repaid because the loss of a multi-year business "'is not measurable entirely in monetary terms,'" *Roso-Lino Beverage Dist., Inc. v. The Coca-Cola Bottling Co.* 749 F.2d at 125 (quoting *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970)), and is otherwise "not compensable in monetary terms and not reducible to monetary value." *Id.*  These facts and cases establish that Global faces imminent, irreparable harm as a matter of law.

**B.     Likelihood of Success on the Merits**

    **1.    The Underlying Claim that the City's Scheme Violates Federal Law.**

In this Action, Global's claim is that the City has violated the Telecom Act by the erection of a barrier that prevents Global from exiting the market for the provision of PPTs in the City.  Currently, there is no mechanism available to anyone to obtain a franchise for the operation of PPTs on the public rights-of-way.  Global has reached an agreement with a third-

9

party for the sale of its PPT assets, but that third-party cannot obtain a franchise, and thus that third-party cannot operate those PPTs, because no franchise is available.

As the above references to sections 253 and 276 of the Telecom Act as well as to the FCC's regulations promulgated pursuant to section 276 with respect to barriers in the public pay telephone business make clear, the erection or maintenance of barriers to exit from the market for providing a public pay telephone service is illegal.

For example, notwithstanding the FCC's directive – from twelve years ago – that all barriers to entry *and exit* be removed and the City Council's directive – from four years ago – the City has imposed an absolute barrier into the provision of PPT services on the public rights-of-way. In the City of New York, there is no mechanism for obtaining a franchise, the *sine quo non* of the operating of PPTs on the public rights-of-way. As the Complaint recites, although the City Council *authorized* (at least until September 2008) DoITT in September 2003 to begin the process for awarding new franchises – the authority having expired in March 2002, (Cplt. ¶ 23) – DoITT has not taken the first step towards doing so, issuing a Request for Proposals, or RFP. (Cplt. ¶ 30.)

So the non-availability of a franchise is not only contrary to federal law, it is implicitly at odds with the City's own law and constitutes bureaucracy run amok.[3]

---

[3] It is also at odds with DoITT's own purported position, taken with the New York City Economic Development Corporation and the New York City Department of Small Business Services, which in a March 2005 report to Mayor Bloomberg spoke glowingly of the benefits of enhanced competition in the provision of telecom services that followed from the removal of barriers protecting incumbent providers. TELECOMMUNICATIONS AND ECONOMIC DEVELOPMENT IN NEW YORK CITY: A PLAN OF ACTION, at 16 (March 2005) ("One of the most important results of continuing technological change in telecommunications is the extent to which it is relentlessly
(footnote continued . . .)

**2. The City Would Suffer No Harm From the Maintenance of the Status Quo.**

---

breaking down barriers among various segments of the industry, inviting companies – and in some cases, effectively forcing them – to compete for business on what was once other companies' turf") *available at* http://www.nycedc.com/NR/rdonlyres/32243D90-27DD-4164-9B17-3B6F4AC7098D/0/TelecomPlanMarch2005.pdf (last viewed on Dec. 12, 2007).

11

The City will suffer no harm if the requested temporary restraining order and injunction are granted. Global's PPTs have been in place for many years, and it has been operating under DoITT's rules the entire time. (¶ 30, Massie Decl.) It has worked with DoITT staff, as have other PPT operators, to address any concerns that arise from PPTs located in areas of construction or sidewalk repair, vandalism, and the like. That interest will not be aggravated if Global is allowed to remain in business during the time it pursues its appeal and ultimately prosecutes its claims. In any event, the balance of equities lies with Global, which will eventually lose its business if the City proceeds to systematically remove its PPTs.

### 3. The Public Interest Will Be Served By the Continued Availability of Global's PPTs.

Global's PPTs provide a public service recognized by Congress, the state PSC, and the City themselves. Many provide critical emergency E911 phone service (for no fee, as required by law) in sections of the City that have a serious need for the service. Approximately 80% of Global's PPTs are in areas of the City that have lower than usual percentage of homes with residential telephones, with higher crime rates, and provide invaluable emergency 911 service to those areas. The requested injunction only preserves this status quo, and does no harm to the City, while providing a public service in hundreds of public pay telephones throughout the City.

### C.    Insofar as the Court orders Global to Post a Bond, it should be minimal

Given the absence of any harm to the City as a result of the Court's granting the requested relief, the amount of any bond that Global is required to post should be minimal. At most it should consist of payments going forward of the amounts that Global owes the City with respect to the Global PPTs that are on the interim registry.

## V. CONCLUSION

For the foregoing reasons, Global requests that this Court issue an Order temporarily restraining the City and those acting on their behalf from removing any Global PPTs from the City's sidewalks and preliminarily enjoining them from doing it in the future pending resolution of the issues in this case.

Dated: New York, New York
       December 13, 2007

Respectfully submitted,

LAW OFFICE OF JOSEPH P. GARLAND

By: _____/S/_____
       Joseph P. Garland – JG0888
275 Madison Avenue, Suite 420
New York, New York 10016
(212) 213-1812

Attorneys for Plaintiff/Appellant