**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
                                                        :
**GLOBAL NETWORK COMMUNICATIONS, INC.,**                :
                                                        :
                                    **Plaintiff,**      :        **07 Civ. _____**
                                                        :
- against -                                             :
                                                        :        <u>**DECLARATION**</u>
**CITY OF NEW YORK and CITY OF NEW YORK**               :
**DEPARTMENT OF INFORMATION**                           :
**TECHNOLOGY AND TELECOMMUNICATIONS,**                  :
                                                        :
                                    **Defendants.**     :
------------------------------------------------------------------------X

RONALD MASSIE, under the penalties of perjury, declares:

1. I am the president of Plaintiff Global Network Communications ("Global"), and I make this declaration in support of Global's application for a temporary restraining order and preliminary injunction to prevent Defendants from continuing to remove and destroy assets and the property of Global and thereby prevent Global from selling those assets to a third-party.

2. Global also seeks to engage in expedited discovery of Defendants with respect to whether Defendants have entered into any franchise agreements with providers of telecommunications services generally and with the providers of public pay telephone services specifically and whether Defendants have received any inquiries, formal or otherwise, by persons seeking to obtain a franchise to provide a telecommunications service since March 2002, which is when the authorization for the issuance of franchises terminated. This specific discovery and other types are necessary for Global to prepare for the preliminary injunction hearing on its request.

3. Defendants have begun to physically remove Global's assets and destroy the good will

developed for their locations, which compels this application for a temporary restraining order.

4. Global is in the business of operating public pay telephones on the public rights-of-way of the City of New York (the "City"). In 2005, the New York City Department of Information Technology and Telecommunications, or DoITT, denied Global a franchise for the operation of payphones, or PPTs, on the public rights-of-way of the City. A franchise is required pursuant to local law to operate such PPTs. Global has objected to the denial of a franchise in a separate action brought in the Southern District of New York that is currently on appeal to the United States Court of Appeals for the Second Circuit following the grant of summary judgment to the City and DoITT (the defendants therein) in a separate action (the "Original Action") in which Global alleges, *inter alia*, that the denial of a franchise to Global was a violation of the Telecommunications Act of 1996, which is part of the Federal Communications Act.

5. In light of the denial of a franchise to Global, Global attempted to sell its PPT assets. Two earlier efforts did not go forward because DoITT and the City objected to the terms of the proposed transactions.

6. More recently, however, Global entered into an agreement pursuant to which the PPT assets of Global would be sold free-and-clear on a cash basis to a third party, after which I would have no interest in such PPTs.

7. Global disclosed its intention of selling its assets to a third party in a conference held before Judge Louis Stanton, to whom the Original Action was assigned, with Defendants on January 5, 2007. I disclosed the name of the person acquiring those assets, Jeffrey Hanft, at a later conference with Defendants and Judge Stanton.

8. Mr. Hanft has experience in the telecommunications industry. During one of these conferences with Judge Stanton, Judge Stanton asked representatives of Defendants whether a

franchise was available to someone who wished to enter the market and operate PPTs on the City's public rights-of-way.  Bruce Regal, an attorney with the New York City Corporation Counsel's office and one of the counsel for the defendants in the Original Action, attempted to evade the question, but Judge Stanton insisted that he, Mr. Regal, give a yes-or-no answer, and Mr. Regal said that, yes, a franchise was then available to a third-party that wished to obtain one.

9. I advised Mr. Hanft of what Mr. Regal had said.  I told him that the DoITT and the City had represented to a federal judge that a franchise was available to him, Mr. Hanft, as a new entrant in the market.

10. I was told by Mr. Hanft that he then had a telephone conversation with Mr. Regal and Stanley Shor.  Mr. Shor is, and at the time was, an assistant commissioner, of DoITT.  Mr. Hanft told me that during that conversation he was told by Mr. Shor that because Mr. Hanft intended to acquire Global assets, Mr. Hanft would be subject to particularly strict scrutiny in the application process.  He was also told that he had to complete and submit a so-called VENDEX, or standard Vendor Information Exchange System application.

11. Mr. Hanft told me that he then completed the VENDEX application.  He was then contacted by the Department of Investigation of the City of New York and was asked to attend an interview with that City Department.

12. Mr. Hanft told me at the time that he attended such a meeting with Joseph Piazza of the Department of Investigation and that Mr. Shor attended the meeting as well.  It was held on May 29, 2007 in New York, New York.  Mr. Hanft told me that the meeting was tape recorded, but his request to obtain a copy of that tape recording under New York's Freedom of Information Law was denied.  (My attorney contacted the City with respect to such recording and instructed that steps be taken to preserve the recording because it was potentially evidence in the Original

3

Action.)

13. Mr. Hanft told me that during his meeting with Messrs. Piazza and Shor, Mr. Shor did the bulk of the talking. Mr. Hanft executed a declaration for use in the Original Action that recited what took place in that meeting. I attach a copy of that declaration as Exhibit 1 hereto.

14. On November 30, 2007, Robert Rubin, an attorney for Mr. Hanft, wrote to Mr. Regal to inquire as to the status of Mr. Hanft's application to obtain a franchise to operate the Global assets that he intends to purchase from Global. Mr. Rubin wrote,

> I have been retained by Jeffrey Hanft in connection with his intent to acquire certain pay telephone assets of Global Network Communications, Inc. These assets are currently located on the rights-of-way of the City of New York. In February 2007, Mr. Hanft submitted a VENDEX application with respect to his company's being able to operate those assets. Mr. Hanft submitted additional information to the City of New York Department of Investigation in September. Mr. Hanft has not received any further information from the City with respect to the status of his application.

> Please provide me with an update with respect to Mr. Hanft's application. I would also be happy to respond to any questions that you have with respect to Mr. Hanft's application. My client has also learned that the City of New York has advised Global that certain of the more valuable of the assets that Mr. Hanft is purchasing from Global must be removed from their locations by Global, and that Global has challenged that position. Obviously, should those assets be compromised by the City, this would significantly affect Mr. Hanft's willingness to proceed with the actual purchase of any Global assets and ultimately his ability to enter into the New York City public pay telephone market.

15. On December 11, 2007, Mr. Regal responded to Mr. Rubin's letter. I attach copies of the letters as Exhibit 2 hereto. Mr. Regal told Mr. Rubin:

> As the locations on City sidewalks of public pay telephones originally installed by Global Network Communication, Inc. ("Global") no longer constitute transferable assets of Global, any transaction, such as you describe in your letter, involving payphone locations on City sidewalks in connection with which Global would receive consideration, could only have occurred as part of a settlement of legal claims brought by Global against the City. Recent developments, including a court decision favorable to the City, have led the City to conclude that a

settlement would not be in the City's interest, and the City and Global are no longer discussing such a settlement.

16. On November 19, 2007, I received a letter from Mr. Shor identifying 41 Global PPTs that DoITT intended to remove within five business days unless either Global removed them itself or Global gave reasons why they should be permitted to remain on the City's public rights-of-way. Under New York City regulations, Global was entitled to the five days. I attach a copy of that letter as exhibit 3 hereto.

17. Significantly, all of the 41 PPTs listed in Mr. Shor's Nov. 19 letter are so-called curb-line PPTs. Curb-line PPTs are the most valuable type of PPTs because they ultimately are appropriate for carrying advertising.

18. Each of the PPTs listed in Mr. Shor's Nov. 19 letter has been at the particular locations for many years, and they were placed at the curb pursuant to permits given to Global by DoITT.

19. Removal of these PPTs would have a dramatic impact on Global's ability to continue to do business. At this time, Global has a total of 662 PPTs (including the four that were removed today). Of these, in turn, the 41 identified in Mr. Shor's Nov. 19 letter are curb-line PPTs.

20. On November 27, 2007, my attorney responded to Mr. Shor's letter on behalf of Global. I attach a copy of that letter as Exhibit 4.

21. That letter is self-explanatory. It notes, among other things, that the PPTs had permits to be on the City's public rights-of-way. It challenges the appropriateness of DoITT's threatened removal of the PPTs without having afforded Global the opportunity to have that decision made by an unbiased person after a hearing.

5

22. On December 7, 2007, Mr. Shor responded to Global's attorney's letter. I attach a copy of that response as Exhibit 5 hereto. Among other things, Mr. Shor summarily rejects Global's entitlement to maintain its PPTs on the City's public rights-of-way, jettisons as "superfluous" the other grounds presented in his November 19 letter for removing Global's PPTs, and advises that DoITT may remove Global's PPTs "at any time."

23. My attorney spoke to Defendants' counsel on December 7 and again on December 10. He also wrote to her on both days, as well as on December 11, 2007. I attach copies of those three letters as Exhibit 6 hereto.

24. I learned yesterday morning that Defendants have begun to remove the PPTs identified in Mr. Shor's November 19 letter, and it is clear that they will continue to do so unless they are enjoined. As of December 12, 2007, the City removed at least four Global PPTs, all in Brooklyn:

> 1184 Nostrand Ave.
> 360 Central Ave.
> 66 Court Street
> 988 Myrtle Ave.

Each of these PPTs is on the curb-line.

25. In light of the foregoing, Global has no choice but to seek immediate judicial intervention to preserve the assets that it intends to sell to Mr. Hanft, a third-party, so that it can exit the business of providing public payphone services in the City.

26. Underlying this Action is the fact that the City's refusal to provide a mechanism for a new entrant such as Mr. Hanft or any other outsider (i.e., a non-franchisee) to obtain a franchise to operate PPTs on the City's public rights-of-way flies in the face of the requirements of the Telecom Act that states and localities remove barriers to entry and exit.

27. While Mr. Regal challenges the view that Global has a right to the assets that it is seeking to sell to Mr. Hanft, that is, in fact, the subject the Original Action, which is currently on appeal to the Second Circuit after this Court, by Louis L. Stanton, granted summary judgment to these Defendants on the claim that Defendants acted in violation of the Telecom Act when they denied a franchise to Global.  That denial is the basis for Mr. Regal's assertion that Global has no right to the assets it is attempting to sell.  If the Second Circuit determines that Defendants acted improperly in denying Global a franchise, the basis for Mr. Regal's position collapses.

28. Moreover, Global may not have any remedy for the wrongful removal its PPTs insofar as the removal is a violation of the Federal Telecommunications Act because, as I understand it, there remains an open question whether monetary damages are recoverable to a firm injured by a violation of the relevant provisions of that statute.

29.  If Defendants are not enjoined from removing any more Global PPTs, Global will be stripped of the assets it has agreed to sell to Mr. Hanft.  In all likelihood, this will result in the destruction of Global's business which, in turn, will result in the termination of the employment of seven.

30.  These PPTs are well and properly maintained by Global.  Many of them serve communities with a relatively low number of private telephones lines and cellphones.  As such they constitute a lifeline for people to make calls generally but also to use the 911 emergency and 311 information services.  Most have been in their current location for over ten years, although some were moved to the curb after being on the side of an adjacent building.

31.  The Exhibits to this Declaration are, upon information and belief, true and correct copies of the original documents.

I declare under penalty of perjury under the laws of the United States of America that the

7

foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:   San Juan, Puerto Rico
         December 13, 2007

_____
                    Ronald E. Massie

8

Exhibit 1

ITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
GLOBAL NETWORK COMMUNICATIONS, INC.,    :
    :
                          Plaintiff,    :   03 Civ. 7934 (LLS)
    :
    -against-    :
    :
CITY OF NEW YORK and CITY OF NEW YORK    :
DEPARTMENT OF INFORMATION TECHNOLOGY    :
AND TELECOMMUNICATIONS,    :
    :
                       Defendants.    :
--------------------------------------------------------------------X

### DECLARATION OF JEFFREY HANFT

JEFFREY HANFT declares under the penalties of perjury:

1.  Before retiring, I held the position of President of Telefonos Publicos de PR.  I submit this declaration in support of Global Network Communication's motion for reconsideration.

2.  In late 2006, I entered into discussions with Ronald Massie concerning the possible sale of public pay telephone (PPT) assets of Global Network Communications, Inc. (Global), including those that are located on the sidewalks of the City of New York (the City).  It has been my understanding from Mr. Massie that he was and is the owner of Global.  Also in late 2006, I was advised by Mr. Massie that the City had denied Global a franchise, that this lawsuit concerns that denial, and that one avenue for Global to exit the market for the provisioning of PPT service on the City's sidewalks would be for Global to sell its PPTs.  Given my general knowledge of the PPT business throughout the United States, I believe that the market for the provisioning of PPT service on the City's sidewalks, when open, is one of the best, if not the best, in the country.

1

Thus, I consider the possibility of being able to enter the PPT market in the City, particularly with the excellent inventory of PPTs that Global possesses, to be an excellent business opportunity.

3.    In late 2006, as a result of my discussions with Mr. Massie, I came to understand that to enter the PPT market on the City's sidewalks, I would need to obtain a payphone franchise from the City, and any PPTs that I would hope to operate on the City's sidewalks would need permits.

4.    In early 2007, I agreed in principle with Mr. Massie that a company that I would form, and of which I would have 100% ownership and total operational control would acquire the Global PPT assets subject to my company's being able to obtain a franchise from the City, and that Global PPTs that were to be purchased would have to possess or be capable of receiving permits from the City.

5.    Thereafter, in December, 2006 or January, 2007, I spoke by telephone with Stanley Shor, who I understood was an official of the New York City Department of Information Technology and Telecommunications (DoITT), Debra Samuelson and Bruce Regal, who I understood were lawyers for DoITT and the City. During my conversation with Messrs. Shor and Regal and Ms. Samuelson, they said that I would receive heightened scrutiny by the City before I would be allowed, if I was ever allowed, to receive approval of my Vendex application because I was purchasing the PPT assets of Global. I advised them that I was interested in entering the market for providing PPT service on City's sidewalks, and that I considered the PPT assets of Global as being the best vehicle for doing that because such PPTs would give me an immediate and significant entry into the market. Thus, I was willing to proceed.

2

6.    After that meeting, I obtained a VENDEX form, which requires the providing of detailed information regarding my company=s businesses and assets.  I promptly completed that form, and in February, 2007 returned the completed Vendex form to the City.

7.    I next received a telephone call from Joseph Piazza of the New York City Department of Investigation (DOI) asking that I submit to an interview with DOI.  I agreed and an interview was held on May 29, 2007, in Manhattan, New York.  At the interview for the City was Joseph Piazza of DOI and Mr. Shor of DoITT.  The meeting was tape-recorded and I have requested a copy of that recording under New York's Freedom of Information Law.  My request has been denied.

8.    During the May 29 meeting, Mr. Shor did the bulk of the talking from the City's side.  I provided all information that was requested of me during that meeting.

9.    Among other things, I informed Messrs. Piazza and Shor that I was a creditor of Phoneworks, Inc., a company managed by Mr. Massie, but that there is no relationship between Mr. Massie and me other than Phoneworks's debt, and that once that money is paid off, there would be no continuing relationship.

10.    During the course of the meeting, Mr. Shor said that all PPT franchises will expire in 2010 and that DoITT did not know whether any of these franchises would be renewed.  It is my understanding that under the terms of the City's payphone franchise payphone franchisees were entitled to a four year extension in 2010 upon timely request, and subject to the approval of the DoITT Commissioner.

11.    Mr. Shor also said that DoITT was wrestling with the issue of whether any provision would be made to offer franchises to companies that did not already have them and would, in effect, be new entrants.  In addition, Mr. Shor made it clear in words that DoITT was not going to

3

occupy the public rights-of-way without, effectively, making any payments. Verizon makes payments, but the required compensation is not competitively-neutral and non-discriminatory because Verizon receives a subsidy, while Global and many other competitors did not and do not. Finally, before the City could even consider Global's history, it has to establish that a lawful fee would exceed the $500 thousand that Global already paid since it was not entitle to demand the $500 thousand.

## 2.    New Evidence Establishes a Further Violation of the TCA by the City

Separately, the Court overlooked the developing evidence that implicated the rationale offered by the City for Global's rejection, and adopted by the Court, and that evidences that the reason the City rejected Global had nothing to do with its principal's character or conduct; but rather, a desire to eliminate competitors, principally to the former Bell monopolist (now the dominant firm), and to eliminate units of production (which principally benefits the former monopolist's market share and market power). Such a rationale expressly violates section 253(a) and would not survive a proper section 253(c) review.

It is well-settled that a barrier to exit, as well as a barrier to entry, violates section 253(a). In light of the developments brought to the Court's attention on Aug. 24, (*see* Garland Decl., Exh. 1), not only has the City barred Global's entry into the market, it also is effectively barring its exit on a competitively neutral basis. In addition, the City is erecting barriers to Mr. Hanft's purchase of the Global assets. The result of the City's recent conduct, as illuminated by DoITT's own official, Stanley Shor, (Hanft Decl., ¶¶ 10-12), is the barring of a new entrant from coming

8

issue any franchises under the currently-existing City legislation that provided for the issuance of new franchises. Furthermore, Mr. Shor said that the City legislation that provided for the issuance of franchises to those companies currently operating on City sidewalks was no longer able under its terms to be the basis for DoITT to issue franchises.

12.   When I told Mr. Shor that I had been advised that representations had been made by City representatives that new franchises were in fact available to someone like me, Mr. Shor said that was not the case.

13.   After my May 29 meeting, I received a letter from Joseph Piazza containing a list of further information that DOI sought. I have transmitted that information to DOI.

14.   I declare the foregoing to be true under the penalties of perjury

Dated: _____, Florida
        September 17, 2007


                                                        _____
                                                               Jeffrey Hanft

4

Exhibit 2

LAW OFFICES OF ROBERT D. RUBIN

November 30, 2007

Bruce Regal, Esq.
Senior Counsel, NYC Law Dep't
100 Church Street, Room 6-155
New York, New York  10007-2601

By email: bregal@law.nyc.gov

Re: <u>Jeffrey Hanft</u>

Dear Mr. Regal,

I have been retained by Jeffrey Hanft in connection with his intent to acquire certain pay
telephone assets of Global Network Communications, Inc.  These assets are currently located
on the rights-of-way of the City of New York.  In February 2007, Mr. Hanft submitted a
VENDEX application with respect to his company's being able to operate those assets.  Mr
Hanft submitted additional information to the City of New York Department of Investigation in
September.  Mr. Hanft has not received any further information from the City with respect to
the status of his application.

Please provide me with an update with respect to Mr. Hanft's application.  I would also be
happy to respond to any questions that you have with respect to Mr. Hanft's application.  My
client has also learned that the City of New York has advised Global that certain of the more
valuable of the assets that Mr. Hanft is purchasing from Global must be removed from their
locations by Global, and that Global has challenged that position.  Obviously, should those
assets be compromised by the City, this would significantly affect Mr. Hanft's willingness to
proceed with the actual purchase of any Global assets and ultimately his ability to enter into the
New York City public pay telephone market.

Sincerely,

Robert D. Rubin, Esq.

3055 N.W 84TH AVE. MIAMI, FL 33122
786.331.3391          786.331.3392 FAX



THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

MICHAEL A. CARDOZO
*Corporation Counsel*

BRUCE REGAL
Phone: (212) 788-1327
Fax: (212) 227-5648
e-mail: bregal@law.nyc.gov

Law Offices of Robert D. Rubin
3055 N.W. 84th Avenue
Miami, Florida 33122

December 11, 2007

Re: Hanft/Global

Dear Mr. Rubin:

I write in response to your letter to me dated November 30, 2007.

As the locations on City sidewalks of public pay telephones originally installed by Global Network Communication, Inc. ("Global") no longer constitute transferable assets of Global, any transaction, such as you describe in your letter, involving payphone locations on City sidewalks in connection with which Global would receive consideration, could only have occurred as part of a settlement of legal claims brought by Global against the City.   Recent developments, including a court decision favorable to the City, have led the City to conclude that a settlement would not be in the City's interest, and the City and Global are no longer discussing such a settlement.

Sincerely,

Bruce Regal

Exhibit 3



THE CITY OF NEW YORK
DEPARTMENT OF INFORMATION TECHNOLOGY & TELECOMMUNICATIONS
Paul J. Cosgrave, Commissioner

Stanley Shor
*Assistant Commissioner*
*Franchise Administration*

November 19, 2007

VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED & FACSIMILE
70020860000688861161
FAX: 718-328-1193

Ronald E. Massie
Global Network Communications Inc.
1080 Leggett Ave.
Bronx, New York 10474

Re: Public Pay Telephones (PPTs) operated on City property without permits

Dear Mr. Massie:

This letter serves as notice that Global Network Communications must remove the following PPT(s) located on the streets, sidewalks and other inalienable property of the City of New York ("City") that are owned, operated and maintained by Global Network Communications. Recent inspections conducted by the Department of Information Technology and Telecommunications (DoITT) have identified the following as non-permitted PPTs:

|   | Building Number | Street Name | Phone Number | Borough | CB |
|---|---|---|---|---|---|
| 1 | 158 | Fulton Street | 212-587-1024 | Manhattan | 1 |
| 2 | 158 | Fulton Street | 212-587-1197 | Manhattan | 1 |
| 3 | 56 | North Moore Street | 212-226-2101 | Manhattan | 1 |
| 4 | 176 | Bleecker Street | 212-254-7353 | Manhattan | 2 |
| 5 | 176 | Bleecker Street | 212-614-9016 | Manhattan | 2 |
| 6 | 115 | 2 Avenue | 212-420-8409 | Manhattan | 3 |
| 7 | 24 | 2 Avenue | 212-674-5285 | Manhattan | 3 |
| 8 | 338R | East 11 Street | 212-254-5898 | Manhattan | 3 |
| 9 | 310 | East 11 Street | 212-614-9408 | Manhattan | 3 |
| 10 | 425 | West 31 Street | 212-290-2635 | Manhattan | 4 |
| 11 | 605 | 6 Avenue | 212-741-6113 | Manhattan | 4 |
| 12 | 435 | 10 Avenue | 212-268-1709 | Manhattan | 4 |
| 13 | 451 | 10 Avenue | 212-643-9012 | Manhattan | 4 |
| 14 | 326 | West 40 Street | 212-290-2716 | Manhattan | 4 |
| 15 | 654 | 8 Avenue | 212-921-7870 | Manhattan | 5 |
| 16 | 654 | 8 Avenue | 212-921-2159 | Manhattan | 5 |
| 17 | 837 | 6 Avenue | 212-239-6070 | Manhattan | 5 |

| 18 | 61 | West 37 Street | 212-391-8618 | Manhattan | 5 |
| 19 | 150 | West 38 Street | 212-840-8235 | Manhattan | 5 |
| 20 | 250 | West 41 Street | 212-221-9034 | Manhattan | 5 |
| 21 | 252 | West 40 Street | 212-354-4305 | Manhattan | 5 |
| 22 | 367 | 1 Avenue | 212-228-5269 | Manhattan | 6 |
| 23 | 1110 | 1 Avenue | 212-755-7435 | Manhattan | 8 |
| 24 | 2369 | 2 Avenue | 212-534-4835 | Manhattan | 11 |
| 25 | 66 | Court Street | 718-624-9268 | Brooklyn | 2 |
| 26 | 988 | Myrtle Avenue | 718-452-1993 | Brooklyn | 3 |
| 27 | 360 | Central Avenue | 718-452-1631 | Brooklyn | 4 |
| 28 | 123 | Jamaica Avenue | 718-485-6634 | Brooklyn | 5 |
| 29 | 1184 | Nostrand Avenue | 718-778-2110 | Brooklyn | 9 |
| 30 | 1756 | 86 Street | 718-837-9300 | Brooklyn | 11 |
| 31 | 1716 | Bath Avenue | 718-234-9300 | Brooklyn | 11 |
| 32 | 202-09 | Hollis Avenue | 718-465-9248 | Queens | 12 |
| 33 | 109-63 | Sutphin Boulevard | 718-291-0837 | Queens | 12 |
| 34 | 800 | East 169 Street | 718-617-3489 | Bronx | 3 |
| 35 | 800 | East 169 Street | 718-617-4567 | Bronx | 3 |
| 36 | 65 | West Burnside Avenue | 718-731-1839 | Bronx | 5 |
| 37 | 65 | West Burnside Avenue | 718-901-7036 | Bronx | 5 |
| 38 | 2401 | Hughes Avenue | 718-364-7013 | Bronx | 6 |
| 39 | 524 | East 187 Street | 718-562-8045 | Bronx | 6 |
| 40 | 72 | Westchester Square | 718-792-1423 | Bronx | 10 |
| 41 | 2565 | Boston Road | 718-655-8534 | Bronx | 11 |

Pursuant to Section 23-402 of the New York City Administrative Code (the "Code"), no PPT shall be installed, operated or maintained on, over or under any street or any other inalienable property of the City without a permit thereof. DoITT's search of its records has uncovered no permit(s) for your company at the location(s) cited above. Consequently, Global Network Communication's PPTs are in violation of Section 23-402, and are subject to removal by DoITT pursuant to Section 23-408(i)(1)(aa) of the Code and Section 6-36 (c) of Title 67 of the Rules of the City of New York (the "rules"). Section 6-36 (c) of the Rules provides that Global Network Communications has five (5) business days from the date of this letter to remove said non-permitted PPTs from City Property, or to provide DoITT with written evidence that said PPTs are permitted, or do not require permits.

DoITT's records also reflect that Global Network Communications has failed to pay fees required under Section 6-24(d) of the Rules for installing, operating or maintaining PPTs on, over or under any street or any other inalienable property of the City. Thus, the PPTs are subject to an order of removal and/or removal additionally pursuant to Section 6-26 (b)(iv).

Global Network Communications has thirty (30) days from the date of removal of its PPTs by the City to recover the PPTs, or it will be deemed abandoned pursuant to Section 23-408(k) of the Code and will be auctioned by the City. The PPT(s) may be released pursuant to Section 23-408 upon payment of the cost of removal, repair and restoration work, storage and administrative expenses incurred by DoITT as a result of the violation. Before DoITT will release the PPT(s), Global Network Communications will need to present proof of ownership including, but not limited to, a bill of sale, or keys to open the coin box. If an individual other than the owner comes to collect the PPTs, that individual must have written and notarized authorization from the owner on company letterhead that the PPTs may be released to said

authorized representative, and that said authorized representative may accept service of Notice of Violation ("NOV").

No PPTs will be released without photo identification. Payment must be made by certified check, money order, bank check, or other form of negotiable instrument acceptable to DoITT.

Please address all requests for an appointment to recover the PPTs, or questions concerning form of payment, or other issues, to Jerry Eskowitz at 212-788-6555. All such request must be made in writing.

Sincerely,

Stanley Shor

c:    *W. Kalish, D. Murray, J. Eskowitz*

Exhibit 4

The Law Office of

# Joseph P. Garland

275 Madison Avenue
Suite 420
New York, NY   10016

Telephone: 212/213-1812
Fax: 212/213-1816
jpg65@columbia.edu

By Fax, E-Mail, and Registered Mail

Stanley Shor
Assistant Commissioner
Franchise Administration
The City of New York
Department of Information Technology & Telecommunications
75 Park Place
New York, New York   10007

Re:  Global Network Communications; Your Letter of November 19, 2007

Dear Commissioner Shor:

We represent Global Network Communications, Inc.   This letter constitutes Global's response, pursuant to section 6-36(c) of the Rules of the City of New York, to your letter to our client, dated November 19, 2007 (the "Nov. 19 Letter"), and sets forth, as provided in that section, "the reasons why the Commissioner should not take the proposed action."   Pursuant to that section, you are required to "review the response of the permittee [Global] and notify the permittee of the final determination **and the reasons therefor**.[emphasis added]"   We ask that in transmitting your response to Global you also transmit a copy to me at the fax number or email address indicated above.

Initially, it is improper for DoITT to deprive Global of assets without according it an opportunity to present its entitlement to maintain the PPTs listed in your letter to an independent and impartial fact-finder.   *See Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 278-80 (E.D.N.Y. 2002) (suspension of taxicab licenses), *aff'd*, 60 Fed. Appx. 861 (2d Cir. 2003) (unpublished opinion).   In *Krimstock v. Kelly*, the Second Circuit mandated that a person arrested – and I note that *Global* has not been accused of any crime – "be provided an early opportunity to test the propriety of the City's" seizure of property before an impartial fact-finder.   306 F.3d 40, 53 (2d Cir. 2002).[1]   The City's removal of Global PPTs would be just such a seizure mandating such a

---

[1]  In its analysis, *Krimstock* relied on a long-line of Supreme Court cases, including *Mathews v. Eldridge*, 424 U.S. 319 (1976), which "set forth three factors to weigh in deciding whether the demands of the Due Process Clause are satisfied where the government seeks to maintain possession of property before a final judgment is rendered. . . . The factors include (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards; and (3) the government's interest."   306 F.3d at 60.   Those factors

The Law Office of J.P. Garland

Stanley Shor
November 27, 2007
Page 2

procedure as well as a reasonable opportunity to remove its own equipment if required.

Of course neither you nor DoITT are independent or impartial in this respect.   Section 6-36, which provides that "The Commissioner shall review the response of the permittee and notify the permittee of the final determination and the reasons therefor," does not afford Global the independent, impartial fact-finder required.

The period of time allowed to Global for removing its PPTs – five business days – is itself inadequate even upon a finding that it must do so.   It must be afforded sufficient time to adequately remove such PPTs in a manner that will preserve their value as assets of the Company.   If Global is required to remove 41 PPTs, it should be allowed at least thirty days to accomplish the task.

In addition, your Nov. 19 Letter asserts two grounds for the removal of the specified PPTs.   First is their supposed lack of permits.   Second is the alleged failure to make certain payments with respect to those PPTs.

**First,** the Nov. 19 Letter asserts that "DoITT's search of its records has uncovered no permit(s) for your company at the location(s) cited above."   Please clarify this statement.   Is DoITT claiming that the PPTs are illegal because Global did not get a permit to relocate the phones or is DoITT saying that they are illegal by virtue of the Determination of the Commissioner that Global should not be recommended for a franchise?   If the former, then Global will provide the necessary documents to show that it lawfully relocated the PPTs and **has permits with respect to them**.   Global also will require sufficient additional time to respond to any clarifications that you provide.

It has also come to our attention, as noted in Global's opposition to the motion for summary judgment in the federal case, that the dominant firm in the industry, Verizon Communications, appears to operate hundreds, if not thousands, of PPTs on the City's public rights-of-way without permits yet DoITT has taken no action with respect to those phones.[2]   This selective non-enforcement to benefit a preferred carrier is directly at odds with the non-discrimination principles of the section 253 of the federal Telecom Act.   In addition, allowing Verizon to operate

---

applied here mandate that Global have a hearing before the City or DoITT takes any action in the form of seizing Global's assets.

[2] This was acknowledged by Jerald Horowitz, an attorney for the City, at a hearing in *Coastal Comm. Serv. v. City of New York*, 02-CV-2300, Oct. 21, 2004 Tr. at 5-6 (E.D.N.Y.), who said that the City had learned that Verizon had "phones that were not licensed" but that at that point the City had done nothing about it.   (*Global v. City*, Garland May 25, 2007 Decl., Exh. 13.)

The Law Office of J.P. Garland

Stanley Shor
November 27, 2007
Page 3

PPTs without permits and asserting a lack of permits as a violation by Global is contrary to FCC Orders that were released pursuant to section 276 of the Telecom Act.

Insofar as any lack of permits is a consequence of the failure by DoITT and the City of New York to grant Global a franchise for the operation of PPTs on the City's public rights-of-way, that failure, in turn, is contrary to, *inter alia*, the Telecom Act of 1996 and particularly section 253 of that Act. Plaintiff brought a suit against the City and DoITT challenging the denial of a franchise as violative of that statute. Although the district court, Southern District of New York, granted the motion by the City and DoITT for summary judgment and denied Global's motion for reconsideration. Global has taken an appeal from those decisions to the United States Court of Appeals for the Second Circuit.

***Second,*** as to the alleged failure to make certain payments under section 6-24(d) of the Administrative Code, you fail in your Nov. 19 Letter to specify what payments these are. Global has taken the position in its federal case that it has paid everything that it has to pay. You fail to specify what has not been paid, for what PPTs, and how much is owed. Since, as you know, Global takes the position that it has paid all that is owed (if not more), please clarify for us with specificity the amounts and the basis for your position. At this juncture, we need a clarification so that we can respond more directly as well as produce to an impartial adjudicator the documentation that supports out position that we have paid.

In any case, it is also the position of Global, articulated in the federal litigation, that it is a violation of section 253 of the Telecommunications Act for the City or DoITT to seek any further payments for the operator of a PPT such as Global beyond the substantial payments already made given the *de facto* subsidy afforded the incumbent carrier – Verizon Communications and its predecessors – because such inequity constitutes a discrimination in favor of Verizon.

Separately, because the PPTs listed in your letter are at the curb, they are no longer on the Interim Registry and therefore there is no entitlement to any fees with respect to them, a position I understand was accepted on behalf of DoITT in an unrelated proceeding. (I reiterate that Global maintains that it does have permits for those PPTs at the curb.)

I look forward to your prompt response.

Sincerely,

Joseph P. Garland

cc:  Diana M. Murray, Esq. (by e-mail)
     Ronald E. Massie (by e-mail)

Exhibit 5



**THE CITY OF NEW YORK**
**DEPARTMENT OF INFORMATION TECHNOLOGY &TELECOMMUNICATIONS**
Paul J. Cosgrave, Commissioner

Stanley Shor
*Assistant Commissioner*
*Franchise Administration*

December 7, 2007

Global Network Communications, Inc.
1080 Leggett Avenue
Bronx, New York 10474
Attention: Ronald Massie

Dear Mr. Massie:

This letter is written, on behalf of the Department of Information Technology and Telecommunications and its Commissioner ("DoITT"), in response to a letter dated November 27, 2007 to me by Joseph P. Garland representing Global Network Communications, Inc. ("Global"), which letter was in itself a response to a letter ("the November 19th letter") to Global from me dated November 19, 2007.

On March 11, 2005, DoITT issued a final determination ("the 2005 Final Determination"), subsequently upheld in state and federal court, not to propose an award of a franchise to Global. In light of the 2005 Final Determination, any "registry" and/or "interim permit" authority Global may once have had to maintain and operate public pay telephones on City sidewalks has long since expired (see Section 6.d. of Local Law 68 of 1995, describing the expiration of the term of "interim permits", and Section 6.a. of Local Law 68 of 1995 describing the expiration of "registry" authority). These circumstances provide full and sufficient authority under City law for the City to now remove such phones, at any time, from the sidewalks (Section 23-408 of the New York City Administrative Code describes the procedures by which such phones once removed from the sidewalks by the City can be recovered). These circumstances are neither curable by Global (other than by removing the offending phones before the City does) nor do they raise disputable facts that require any further proceeding.

Page 2
December 7, 2007


In light of these circumstances, which are sufficient in and of themselves as a basis under City law for removal by the City of the applicable phones, the matters raised in your letter with respect to other, additional possible grounds for the City to remove the phones at the locations identified in the November 19th letter are superfluous.

Sincerely,

Stanley Shor


C:    Joseph P. Garland

Exhibit 6

The Law Office of

# Joseph P. Garland

275 Madison Avenue                                    Telephone: 212/213-1812
Suite 420                                                         Fax: 212/213-1816
New York, NY   10016                                    jpg65@columbia.edu


By E-Mail

December 7, 2007

Diana Murray, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York     10007

Re:  Global Network Communications

Dear Ms. Murray:

I write with respect to Stanley Shor's letter to Ronald Massie dated Dec. 7, 2007 which responds to my letter, dated Nov. 27, 2007.   Mr. Shor rejects the arguments therein.  (I note in passing that Commissioner Cosgrave has not heard our appeal and appears not to have taken part in the decision, which likely violates DoITT's rules.)   We disagree with Mr. Shor's decision.

In all events, Mr. Shor's letter does not provide any time-frame within which Global could, in an orderly fashion, voluntarily remove its property, even if it wanted to.   In effect, Mr. Shor not only rejected Global's administrative appeal, but has given Global no time to comply with DoITT's own rules and his direction.  Accordingly, I would ask that DoITT provide my client with a date certain by which Global is to remove voluntarily its public pay telephones.   You advised me by telephone when I asked that you was unaware of such a date certain.

Sincerely,

/S/

Joseph P. Garland

cc:  Ronald E. Massie (by e-mail)

The Law Office of

# Joseph P. Garland

275 Madison Avenue                                          Telephone: 212/213-1812
Suite 420                                                           Fax: 212/213-1816
New York, NY   10016                                          jpg65@columbia.edu


<u>By E-Mail</u>

December 10, 2007

Diana Murray, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York    10007

Re:  <u>Global Network Communications</u>

Dear Ms. Murray,

This letter is in further response to that of Stanley Shor of December 7 and follows my letter to you of that date.   I noted in my letter that Global disagrees with Mr. Shor's conclusions.   I believe it incumbent upon DoITT, by the Commissioner himself, to state why its determination is appropriate without at the very least affording Global the opportunity to address the grounds for the removal of the Global phones before an independent and impartial fact-finder.

As the City knows, Global is attempting to exit the market.   Global identified the buyer, Jeffrey Hanft, early this year to the City and to Judge Stanton.   Mr. Hanft has been extensively and unusually vetted by the City.   He has had numerous direct dealings with the City and has provided all of the information required and requested of him.   Several months have passed since and yet no word has been communicated as to whether Mr. Hanft has passed the review process so as to be eligible to receive a franchise which, you will recall, Bruce Regal represented to the Court was available to eligible applicants.   Since the preservation of the Global PPTs in one respect depends on the Hanft entity receiving an approval for a franchise, and their removal could well drive Global out of business, it is essential at this juncture, due to Mr. Shor's letter and the threatened removal of Global's PPTs, that the City inform Mr. Hanft and Global as to whether Mr. Hanft is eligible to receive a payphone franchise.

Mr. Hanft's counsel has contacted DoITT requesting a status report.   I have received no information with respect to DoITT's response to that query and I understand that neither Mr. Hanft nor his counsel have either.   Please advise as to when, if at all, DoITT intends to respond.   I also note that DoITT rejected Global's proposal to meet directly with Mr. Hanft and Mr. Massie in November to discuss what more was needed to be done by Mr. Hanft's company to acquire those assets and what requirements, if any, the City was imposing for such a transaction.

The Law Office of J.P. Garland

Diana Murray, Esq.
December 10, 2007
Page 2

Significant damage will be done to Global's assets, which Global has indicated it is prepared to sell subject solely to DoITT's providing the necessary approvals, should the phones listed in Mr. Shor's November 19 letter be removed.  Not only will the physical assets be taken but, more important, so will the good will that has been generated at the locations long occupied by those phones.  What's more, their removal will have an adverse effect on the people who use them, including for E-911 calls.  Their continued presence pending the resolution of whether Mr. Hanft will be able to acquire them, on the other hand, will have no impact on the City.

Global requests that DoITT agree to refrain from taking any action with respect to the Global PPTs identified in Mr. Shor's November 19 letter at least until Mr. Hanft has received a response from DoITT that addresses the ability of his company to acquire the Global assets.

Finally, Mr. Shor's characterization as "superfluous" the other assertions DoITT makes with respect to a basis for removing Global PPTs I take to mean that DoITT has abandoned those bases.

Sincerely,

/S/

Joseph P. Garland

cc:    Ronald E. Massie (by e-mail)

The Law Office of

# Joseph P. Garland

275 Madison Avenue                                    Telephone: 212/213-1812
Suite 420                                                    Fax: 212/213-1816
New York, NY   10016                                    jpg65@columbia.edu


<u>By E-Mail</u>

December 10, 2007


Diana Murray, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York    10007

Re:  <u>Global Network Communications</u>

Dear Ms. Murray,

I wish to memorialize the position of the City of New York and DoITT with respect to my recent inquiries.   On Friday, I asked you whether Defendants would consent to a stay of any activity with respect to the Global public pay telephones identified in Stanley Shor's letter of November 19 until the Second Circuit decided Global's appeal.   You declined.   By letter also on Friday, December 7, I asked whether DoITT would provide a date before which DoITT would not take any action with respect to the identified phones – Mr. Shor having used the phrase "at any time."   You did not respond to that letter.

Yesterday, I asked whether Defendants would refrain from taking any action at least until DoITT had responded to the request made by Jeffrey Hanft's attorney to Bruce Regal of Corporation Counsel for a status report respecting his application to operate Global phones.   In a follow-up to that letter, I called you, and you returned the call.   You told me that Defendants' position is clear and that it was not going to answer any further questions from Global.   (I do not know whether this refusal extends to Mr. Hanft or his attorney.)

Under the circumstances, Global is compelled to obtain appropriate judicial relief to stay any efforts on the part of Defendants to remove any of Global's phones on the public rights-of-way.   We intend to make such an application by Thursday, December 13.

Sincerely,

/S/

Joseph P. Garland

The Law Office of J.P. Garland

Diana Murray, Esq.
December 11, 2007
Page 2


cc:     Ronald E. Massie (by e-mail)