UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

GLOBAL NETWORK COMMUNICATIONS, INC.,

                                  Plaintiff,

                     -v-

CITY OF NEW YORK; CITY OF NEW YORK
DEPARTMENT OF INFORMATION TECHNOLOGY
AND TELECOMMUNICATIONS,

                              Defendants..

------------------------------------------------------------------------- X

**NOTICE OF CROSS-MOTION TO DISMISS THE COMPLAINT**

No. 07 CV 11209 (LBS)

**PLEASE TAKE NOTICE** that upon the annexed declaration of Diana M. Murray, dated January 11, 2008, and the exhibits thereto and the accompanying Memorandum of Law and upon the complaint and all prior proceedings herein, defendants the City of New York ("the City") and the New York City Department of Information Technology and Telecommunications ("DoITT"), by its undersigned counsel, will cross-move this Court before the Honorable Leonard B. Sand, at the United States Courthouse located at 500 Pearl Street, New , York, New York, on January 15, 2008 at 3:00 p.m., for an order pursuant to Federal Rules of Civil Procedure, Rule 12(b), dismissing all claims in the complaint,

together with such other and further relief as the Court deems just, fair and equitable.

Dated:      New York, New York
              January 11, 2008

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendant
                              100 Church Street, Room 5-156
                              New York, New York 10007
                              (212) 788-1278

                    By:     _Diana M. Murray_____
                              Diana M. Murray (DM 5435)
                              Assistant Corporation Counsel

To:      Joseph P. Garland, Esq.
            275 Madison Avenue, Suite 420
            New York, New York 10016
            (212) 213-1812

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

GLOBAL NETWORK COMMUNICATIONS, INC.,

Plaintiff,

-v-

CITY OF NEW YORK; CITY OF NEW YORK
DEPARTMENT OF INFORMATION TECHNOLOGY
AND TELECOMMUNICATIONS,

Defendants..

-------------------------------------------------------------------- x

**DECLARATION IN SUPPORT
OF CROSS-MOTION TO
DISMISS THE COMPLAINT
AND IN OPPOSITION TO
MOTION FOR
PRELIMINARY
INJUNCTION**

No. 07 CV 11209 (LBS)

**DIANA M. MURRAY,** declares under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1. I am an Assistant Corporation Counsel in the Office of MICHAEL A. CARDOZO, Corporation Counsel of the City of New York. I submit this affirmation on behalf of defendants the City of New York ("the City") and the Department of Information Technology and Telecommunications of the City of New York ("DoITT") in support of their cross-motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1), (6) and (7) and in opposition to plaintiff's motion for a preliminary injunction.

**A.     Statutory and Factual Background**

2. In 1959, the New York City Council ("the City Council") adopted Local Law 78 of 1959 ("Local Law 78") making it illegal to install or maintain a public pay telephone installation ("PPT") on City-owned street property without a license issued by the City's Commissioner of Traffic, in his or her discretion, and establishing procedures for issuance of

such licenses. Nevertheless, by the early 1990s companies had installed PPTs on City streets without licenses. See Global Network Communications, Inc. v. City of New York, 507 F. Supp. 2d 365 (S.D.N.Y. 2007).

3.  In 1995, the City Council adopted Local Law 68 of 1995 ("Local Law 68"), New York City Administrative Code ("Admin Code"), Sections 23-401 through 23-408, which provided a conditional amnesty procedure (the "amnesty procedure") allowing legalization of previously installed, unlicensed PPTs located on City streets, provided certain conditions were met, including, but not limited to, receipt by the owner of a "franchise" from the City. See Local Law 68, §6, attached hereto as Defendants Exhibit ("Defs. Exh.") A. Upon notice of the denial of such a franchise application, a company must either remove its PPTs from City streets or within 60 days enter into an agreement to sell certain of its PPTs located on City sidewalks. In the event that a company does neither, the City may remove the PPTs from City sidewalks. The equipment itself remains retrievable by the company upon payment of the cost of removal. Id.

4.  After the enactment of New York City Local Law 68 of 1995, plaintiff Global Network Communications, Inc. ("Global") applied for a franchise to operate and legalize its PPT locations on City sidewalks. While its application was being considered, Global's chief executive and sole shareholder, Ronald Massie ("Massie"), admitted in criminal proceedings that Global relied on organized crime figures to further its business and committed fraud against its business associates and that Massie was involved in other illegal activities. See Global Network Communications, Inc. v. City of New York, 507 F. Supp. 2d at 369-70. Based in part on these admissions, the City denied Global a franchise.

**B.    Global's 2003 Complaint**

5.  In October of 2003, Global commenced an action against the City in the District Court for the Southern District of New York ("the prior action").  Global sought declaratory and injunctive relief that would direct the City to issue to it a franchise that would allow it to operate the PPTs then and now in service illegally on City sidewalks.  Global challenged the actions of the City based on Section 253 of the Telecommunications Act of 1996 ("the "TCA"), 47 U.S.C. § 253, and federal constitutional grounds.  The first five causes of action claimed that the City violated 47 U.S.C. § 253(a).  The first two causes of action were facial challenges to the City's legal framework relating to the operation of PPTs on City-owned property.  The third through fifth causes of action claimed that the City violated section 253(a) by virtue of its allegedly preferential treatment of Verizon, its refusal to grant Global a franchise, and its allegedly selective enforcement of the legal framework against Global.  The sixth and seventh causes of action claimed that the City's legal framework regarding operation of PPTs on City-owned property is preempted by New York law and by 47 U.S.C. § 276, which states that FCC regulations preempt inconsistent state requirements.   The remaining claims asserted violations of plaintiff's federal constitutional rights and sought damages under 42 U.S.C. § 1983.

**C.    The Motion to Dismiss in the District Court**

6.  On November 15, 2004, the City moved to dismiss the complaint in the prior action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  In a decision and judgment dated June 14, 2005, the District Court (Stanton, J.) dismissed the action for failure to state a claim upon which relief may be granted.  See  Global Network Communications, Inc. v. City of New York, 373  F. Supp. 2d 3785 (S.D.N.Y. 2005).

7. With respect to Global's claims under 47 U.S.C. § 253, the District Court held that "[t]he City's action in denying Global's application for a franchise fits comfortably within this safe-harbor exception" for management of public rights-of-way set forth in subsection 253(c). That Court noted Global's fraudulent conduct and connections to organized crime figures, admitted by Mr. Massie under oath. The Court concluded that "[n]o federal law or regulation should be construed to force the City to franchise Global to provide PPT services on New York City's public property and rights-of-way, when the record shows that Global cannot be expected to pay its obligations to the City in a timely or honest manner." The Court held that "the City's refusal of a franchise to Global rests solidly on its authority to obtain compensation for the use of its rights-of-way, without need for further support under the City's general right of administration or consideration of its scope." Id.

**D.     The 2005 Article 78 Proceeding**

8. Following the District Court's dismissal of the prior action, Global commenced an Article 78 proceeding in the New York Supreme Court, challenging the City's refusal to recommend a franchise for Global. Global also sought a stay barring the removal of its PPTs, which was granted pending an expedited decision on the merits.

9. On November 28, 2005, the Supreme Court dismissed the Article 78 petition. The Supreme Court expressly held that Global did not have a property right in the franchise it sought and had been afforded a sufficient opportunity to be heard. The Court also held that the determination by DoITT's Commissioner not to recommend a franchise for Global was rational and not arbitrary or capricious, as the Commissioner was entitled to rely on Massie's past criminal history as demonstrating a lack of the requisite good character. See November 28, 2005 State Court Decision, attached hereto as Defs. Exh. B.

10. Additionally, the Supreme Court held that the requirement that a sale of payphones be to an existing franchisee did not deny Global due process of law in the absence of evidence that the inability to sell to a potential franchisee will reduce the purchase price in light of the competitive market created by the numerous existing franchisees. Id. Global appealed the decision and sought a stay pending appeal, which was denied. See Global Network Communications Inc. v. Menchini, 2006 N.Y.App. Div. LEXIS 1838 (1st Dep't February 7, 2006). Global did not perfect the appeal.

**E.    Global's Appeal from the 2005 Order of the District Court**

11. On June 15, 2005, Global appealed the District Court's order of dismissal. Thereafter, Global moved before the District Court for an injunction pending appeal barring the City from removing its PPT's from City sidewalks. By order entered June 23, 2005, the District Court denied the motion "except to the extent that (in order to allow Global the opportunity to arrange to sell the PPTs to a qualified buyers or buyers, at the PPTs' present locations) defendant shall not before Monday 8/22/05 remove or cause Global's PPT's to be removed for lack of a franchise or permit." See June 20, 2005 Order, Entry #25 on District Court Docket, attached hereto as Defs. Exh. C.

12. Global subsequently sought similar relief by motion to the Second Circuit. By order dated August 26, 2005, after hearing oral argument from both sides, the Second Court denied Global's motion for a stay or an injunction pending appeal. See August 26, 2005 Entry, Circuit Court Docket, attached hereto as Defs. Exh. D. Global there relied on arguments very similar to those it advances in the instant motion. A subsequent application for a stay was granted on March 21, 2006. See March 21, 2006 Entry, Circuit Court Docket, Defs. Exh. C.

13. In an opinion dated July 21, 2006, the Second Circuit unanimously vacated the District Court's judgment in the prior action and remanded the case "with instructions to convert defendants' motion to dismiss into one for summary judgment, and to permit the parties to present all materials pertinent to such a motion ... ." The Second Circuit expressed no opinion as to the substantive correctness of the District Court's ruling, adding that "it may well be that upon a motion for summary judgment the court will reach the same conclusion as it did initially." See Global Network Communications, Inc. v. City of New York, 458 F.3d 150 (2d Cir. 2006).

**F.    Settlement Discussions With Plaintiff and Hanft**

14. Following remand, Global advised the Court, in the course of a court conference in January 2007, of a prospective purchaser of its phones and its interest in settling the prior action through a sale. By Order dated January 31, 2005, in order to "allow Global and the alleged prospective purchaser to satisfy the City of their bona fides," the District Court ordered the City not to "remove or cause Global's PPTs to be removed from their present locations for lack of a franchise or permit" before February 16, 2007. See January 31, 2007 Order, Entry #41 on District Court Docket, Defs. Exh. C. The prospective purchase, subsequently identified as Jeffrey Hanft ("Hanft"). As settlement was further discussed, it became clear that agreement to an essential element to any settlement was lacking and that further settlement discussions would be futile. After Judge Stanton granted the City's motion for summary judgment and denied Global's motion for reconsideration, the City informed Global that further settlement discussions were not in the City's interest and would not be entertained. See November 15, 2007 letter, attached hereto as Defs. Exh. E.

G.    **The Motion for Summary Judgment**

15. Following briefing of the City's motion in the prior action, by opinion and order dated August 30, 2007, the District Court (Stanton, J.) granted summary judgment to the City in this action, upholding the City's denial of Global's application for a franchise to operate its PPTs on City streets. The District Court essentially adopted the reasoning of its prior decision on the City's motion to dismiss. See Global Network Communications, Inc. v. City of New York, 507 F. Supp.2d 365 (S.D.N.Y. 2007).

16. The District Court made the following undisputed findings of fact:

- "The Feb. 29, 2000 criminal Complaint and Affidavit in Support of Arrest Warrants identified Massie as an associate of the Bonanno organized crime family and detailed his illegal loan-sharking activities. (*United States v. Massie,* No. 00-0358M (E.D.N.Y.) (Murray Aff., Ex. K.) The Commissioner also cited a search warrant affidavit which alleged that Massie had laundered money, including the proceeds of illegal loan-sharking, through Global to organized crime members, and that he had directed Roth to skim more than $ 4,000 per week in cash receipts from Global's PPTs for Massie's personal use by falsely reducing the receipts and altering computer records. (Murray Aff., Ex. L at 3-4.)." Id. at 368.

- "On November 7, 2001, while the Article 78 Proceeding was pending, Massie pled guilty to mail fraud, mortgage fraud and conspiracy to collect extortionate extensions of credit. At his plea allocution, Massie admitted that he defrauded businesses who were entitled to commissions for allowing Global's PPTs to be placed on their property by paying them less than what they were owed under their agreements with Global. United States v. Massie, No. 00 Cr. 0440 (E.D.N.Y.) (Nov. 7, 2001 Tr. 24-25) (Murray Aff., Ex. O.)." Id.

- "On April 23, 2003, Massie testified as a cooperating government witness against an alleged organized crime member. He testified that approximately 20 to 30 percent of Global's business derived from PPT locations that were enlisted or identified by members of the Bonanno organized crime family, that Global paid those family members monthly commissions, and that Massie was allowed to use the name of Frank Lino, a "made" member of the Bonanno organization, to "intervene in any problems that we came across in the course of [Global's] business." (United States v. George Lombardozzi, Apr. 23, 2005 Trial Tr. 537-543) (Murray Aff., Ex. S.) Massie also admitted that over a period of three years the amount he skimmed from the PPT commissions totaled approximately $ 1,800,000 ... ." Id., at 369.

In sum, the District Court found no unresolved material fact regarding the unsavory acts of Global and its principal.

17. In concluding again that the denial of Global's application "fits comfortably within the safe-harbor exception of Section 253(c) of the TCA," the District Court held, *inter alia,* that:

- The City's right to require compensation from telecommunications providers includes the reasonable expectation that the compensation will not only be paid accurately in full, or time but also without criminal involvement or fraud. Id. at 372.

- No federal law or regulation should be construed to force the City to franchise Global when the record shows that Global cannot be expected to pay its obligations in a timely or honest manner. Id.

- The evidence of Global's criminal history and non-payment of interim registry fees was unchallenged. Id.

- Global's speculation that it has overpaid the City does not diminish the legitimacy of the City's concerns as courts, as well as municipal governments, are free to assume that past misconduct is "highly suggestive of the likelihood of future violations." Id., at 372-373.

- Provisions that allegedly favor Verizon are immaterial as (1) the refusal to award Global a franchise rests on solid authority to receive compensation for the use of its rights-of-way without need for further support under the City's general right of administration or consideration of its scope and (2) Global lacks standing to challenge the provision in the absence of a franchise. Id., at 373.

- The denial of the franchise for Global does not have anything to do with subsidies of other telecommunications services or preference for an incumbent provider or PPT service. Id., at 374.

- The denial of the franchise for Global based on Global's defaults of its obligations to the City and its untrustworthiness to pay compensation honestly, is not the type of "regulatory barriers to entry and exit" contemplated by the FCC and is unaffected by FCC regulation. Id.

Based on the findings of fact and these conclusions of law, the District Court awarded summary judgment to the City in the prior action. Id. at 377.

18. Thereafter, Global applied to the District Court for reconsideration and vacation of the granting of summary judgment in the prior actioni.  On that motion, Global asserted  new claims that the City was preventing Global from exiting, and its proposed buyer from entering, the market.  See Pl. Mem., dated September 27, 2007, attached hereto as Defs. Exh. F.  On November 8, 2007, the Court issued a memorandum endorsement adhering to its prior ruling, and denying Global's application to serve a supplemental complaint asserting these new claims.  The Court reasoned that the new claims would "require discovery into new facts, exploration of new issues (which perhaps should be referred to the Federal Communications Commission) and the litigation of complex separate claims which did not even exist when the issues raised in the summary judgment motion were being prepared, presented, decided, appealed, remanded, resubmitted and at last decided in the form of the summary judgment motion." See Court's Memorandum Endorsement, dated November 8, 2007, attached hereto as Defs. Exh. G.

19. On November 20, 2007, Global appealed the denial of reconsideration and vacation of the granting of summary judgment and the prior grant of summary judgment in the prior action. See November 20, 2005 Notice of Appeal, Entry #63 on District Court Docket, Defs. Exh. C.

20. Because it does not have a franchise, Global has no right to operate PPTs on the City's streets,  see New York City Administrative Code Section 23-402.  Consequently, by letter dated November 16, 2007,  the City notified Global that 41 of its PPTs would be removed if Global did not remove them first.  See November 16, 2007 from Assistant Commissioner Stanley Shor, attached hereto as Def. Exh. H.  As of today, the City has removed 39 of the 41

PPTs. The remaining two PPTs are impracticable to remove at this time due to ongoing construction. Those removed are in a storage facility and can be picked up by Global.

**H.    Developments Subsequent to the Award of Summary Judgment**

21. On December 13, 2007, Global filed the instant action. The complaint alleges that at an unspecified time Global entered into an agreement with Hanft to sell what the complaint characterizes as Global's assets, contingent on Hanft obtaining a franchise from the City ("Hanft Sale"). See Compl., ¶¶ 14, 15. Hanft sought to obtain a franchise from the City for the purpose of operating PPTs where originally installed by Global. As alleged, the City subsequently responded by stating PPT locations occupied by Global phone equipment "no longer constitute transferable assets of Global" and refused to meet with Hanft. See Compl., ¶¶ 15, 17, 18. Unmentioned in the complaint, but irrefutable by Global, is the fact that the Hanft Sale was first presented by Global as a means of settling the now dismissed prior action, Global Network Communications v. DoITT, et al., 03 CV 7934 (LLS).

22. At the same time, Global applied for a temporary restraining order prohibiting the City from removing any of Global's PPTs from the City's streets. Following argument on the matter, the District Court (Cote, J.) denied the application citing plaintiff's failure to meet the likelihood of success on the merit standard. See December 13, 2007 Order, attached hereto as Defs. Exh. I.

On December 19, 2007, the Second Circuit (Raggi, J.) denied Global's motion for a preliminary injunction prohibiting the City from removing any of Global's PPTs from the City's streets pending its appeal of the prior action. On December 20, 2007, Global moved for reconsideration of the denial of a preliminary injunction by a full panel of the court. To date this motion before the Second Circuit has not been decided.

24. Plaintiff now moves, as it admits, for the same relief requested in the pending motion before the Second Circuit in the prior action.  See December 17, 2007 Transcript, p. 8, attached hereto as Defs. Exh. J.

25. As discussed in the memorandum of law, the complaint should be dismissed for lack of standing, collateral estoppel, failure to state a claim and failure to join a necessary party.

26. Furthermore, plaintiff's application for a preliminary injunction must be denied as plaintiff has not shown even a likelihood of success, not to mention the "clear and substantial likelihood of success on the merits" required to enjoin governmental action, nor demonstrated the required irreparable harm.  The City and the public also have a substantial interest in terminating, as soon as possible, placement on City streets of payphone installations controlled by an entity with Global's admitted untrustworthy history.  See Global Network Communications, Inc. v. City of New York, 507 F. Supp.2d at 369-370.  Moreover, sidewalk space is a scarce and valuable commodity.  The value of such space to the public for free and uncluttered pedestrian circulation, or for use by others, may be difficult to express in dollars but is no less imiportant.  But just as the public interest is served by the removal of illegally parked cars, so too is the public interest served by the removal of PPTs illegally occupying City sidewalks.

27. In any event, and as defendants argued at the December 27, 2007 conference before the Court, the instant motion for a preliminary injunction in this action should be stayed pending determination addressing the merits of plaintiff's motion, currently before the Second Circuit, for reconsideration of the denial of the December 19, 2007 of a preliminary injunction by a panel of the Second Circuit in the prior action.  Plaintiff admits that its motion before the

Second Circuit in the prior action requests the same relief as requested here. See December 17, 2007 Transcript, p. 8, Defs. Exh. I. Moreover, the appeal in the prior action raises the same issues raised in the instant case. See November 20, 2005 Notice of Appeal, Entry #63 on District Court Docket, Defs. Exh. B. Thus, a stay herein is warranted at this time as the decision in the motion pending before the Second Circuit will be binding on the parties.

Dated:      New York, New York
            January 11, 2008

                                          Diana M. Murray (DM 5435 )
                                          Assistant Corporation Counsel

Exhibit A

# LOCAL LAWS
## OF
## THE CITY OF NEW YORK
### FOR THE YEAR 1995

---

### No. 68

---

Introduced by Council Members Pinkett, Duane, Linares, McCaffrey, Ruiz, Harrison, Rivera, Robinson, Watkins and Eristoff; also Council Members Cruz and Michels.

## A LOCAL LAW

To amend the New York city charter and the administrative code of the city of New York, in relation to the issuance of permits for the installation, operation and maintenance of public pay telephones upon the streets and other inalienable property of the city, and in relation to protecting such public pay telephones against graffiti and illegal postings and to repeal section 19-128 of such administrative code.

*Be it enacted by the Council as follows:*

Section 1. Section 19-128 of the administrative code of the city of New York is hereby REPEALED.

§2. Title 23 of the administrative code of the city of New York is amended by adding a new chapter 4 to read as follows:

§23-401. *Definitions. Whenever used in this chapter:*

a. *"Commissioner" shall mean the commissioner of the department of information technology and telecommunications, or of any successor agency.*

b. *"Department" shall mean the department of information technology and telecommunications, or any successor agency.*

c. *"Owner" shall mean a natural person or business entity which owns, leases, or is otherwise responsible for the installation, operation and maintenance of a public pay telephone.*

d. *"Permit" shall mean an authorization by the department to install, operate and maintain one or more public pay telephones at a location on, over or under a street or other inalienable property of the city.*

e. *"Public nuisance" shall mean the use of a public pay telephone on a regular basis which the commissioner has reasonable cause to believe is in furtherance of unlawful activity.*

f. *"Public pay telephone" shall mean a telephone and associated equipment, from which calls can be paid for at the time they are made by a coin, credit card, prepaid debit card or in any other manner, which is available for use by the public and provides access to the switched telephone network for the purpose of voice or data communications. The*

2

term "public pay telephone" shall include any pedestal or telephone bank supporting one or more such telephones, associated enclosures, signage and other associated equipment.

8. "Street" shall have the meaning ascribed thereto in subdivision thirteen of section 1-112 of this code.

§23-402 Permit required. No public pay telephone shall be installed, operated or maintained on, over or under any street or other inalienable property of the city without a permit therefor, and unless such installation, operation and maintenance is in accordance with the provisions of this chapter, the rules of the commissioner promulgated pursuant thereto, and the terms and conditions of such permit.

§23-403 Powers of commissioner. a. The commissioner may issue and renew permits under this chapter based upon a determination, at his or her discretion, that issuance or renewal of a permit would be in the best interests of the city;

1. no permit shall be issued or renewed unless the applicant holds a franchise granted by the city to install, operate and maintain public pay telephones on, over and under the streets and other inalienable property of the city;

2. (i) in the event that the installation of a public pay telephone requires the opening, drilling or other physical alteration of a building facade or other private property, no permit shall be issued or renewed without the written consent of the building owner.

(ii) in the event that the installation of a public pay telephone requires affixing the phone to a building facade or other private property, no permit shall be issued or renewed without the written consent of the building owner.

(iii) in the event the installation of a public pay telephone is to be accomplished in a manner other than as set forth in subsection (i) and (ii) of this section, but requires access through an existing conduit or other opening on a building facade or other private property, or such installation is to be made within six feet of a building line, no permit shall be issued or renewed without the written consent of the building owner or the commercial lessee who shall certify (aa) that the building owner has authorized the lessee to grant such consents; and (bb) that the lessee has provided the building owner or its authorized agent with written notification by certified mail, of the granting of such consent, the name and address of the owner of the public pay telephone and the location of such public pay telephone in relation to the building. Proof of mailing of such notification to the building owner or its authorized agent shall be included in the permit application. It shall be a violation of this chapter where a permittee, without providing justification therefor, fails within a time period specified by the Commissioner to remove a public pay telephone following receipt of a notice from the building owner or its authorized agent by certified mail that he or she objects to the installation, where such notice and copy to the Commissioner are sent within thirty days of receipt of the commercial lessee's consent. Nothing herein shall be construed to limit a building owner or its authorized agent from pursuing such remedies as he or she may have under law with respect to the unauthorized installation of a public pay telephone; and

3. no permit shall be issued or renewed for the installation, operation and maintenance of a public pay telephone at any location where it will unreasonably interfere with the use of a street by the public, or where it will unreasonably interfere with the use of the abutting property.

b. The commissioner shall promulgate rules to implement the provisions of this chapter. Such rules shall include, without limitation: (i) a procedure and timetable for review by the department, and other appropriate agencies, including the department of

3

*transportation, of applications for the issuance and renewal of permits to install, operate and maintain public pay telephones at specified locations; (ii) standards governing the location of public pay telephones designed so as to ensure that such telephones will not unreasonably interfere with the use of the street by the public and with use of the abutting property; and (iii) standards and procedures governing the installation, removal, operation, cleaning and maintenance of public pay telephones, including procedures for the expedited removal of any public pay telephone determined to constitute a public nuisance.*

*c. Permits may contain such other terms and conditions not specifically provided for in this chapter as the commissioner deems necessary to protect the public safety and to safeguard the interests of the city.*

**§23-404 Term; Termination.**

*a. A permit for a public pay telephone shall continue in effect for the term of the franchise held by the owner of such public pay telephone, unless the commissioner, after giving the permittee notice and an opportunity to be heard, determines: (i) that as a result of changed conditions, the public pay telephone unreasonably interferes or will unreasonably interfere with the use of a street by the public, or constitutes a public nuisance; or (ii) that removal of the public pay telephone is required in connection with a street widening or other capital project or for other purposes as may be specified by rule of the commissioner. Upon making such determination, the commissioner shall order the removal of the public pay telephone within a reasonable time period. In the event the permittee fails to remove the public pay telephone within the time period specified in such order, the commissioner may remove or cause the removal of the public pay telephone and have repair and restoration work performed at the expense of the permittee, who shall be liable in a civil action for the amount expended by the city.*

*b. Notwithstanding the provisions of subdivision a of this section, in the event that a public pay telephone is removed in connection with a street widening or other capital project or other improvement specified by rule of the commissioner, the permittee may apply to the commissioner for permission to reinstall the public pay telephone at another location or, following the completion of such street widening, capital project, or other improvement, at or near its original location. Where such permission is granted, the permittee shall not be required to obtain a new permit for the public pay telephone, and the permit previously issued for such public pay telephone shall continue in effect. If such public pay telephone is reinstalled at another location, the permittee may apply to the commissioner for a new permit to install another public pay telephone following the completion of such street widening, capital project or other improvement at or near the original location of the public pay telephone previously removed in connection therewith, provided that the permittee has paid the required fee for such permit.*

**§23-405 Advertising.** *A permit issued under this chapter shall not constitute an authorization to place advertising upon a public pay telephone.*

**§23-406 Fees.** *The commissioner shall by rule establish fees for the issuance and renewal of permits pursuant to this chapter in amounts sufficient to compensate the city for the administrative expense of issuing or renewing a permit and the expense of inspections and other activities related thereto.*

**§23-407 Transfers.** *No permit issued under this chapter shall be transferred except as may be authorized by rule of the commissioner.*

**§23-408 Violations; Penalties and Other Enforcement.**

4

a. Any owner who installs, operates or maintains a public pay telephone on, over or under any street or other inalienable property of the city without a permit therefor shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than ten thousand dollars and imprisonment of not more than thirty days, or both such fine and imprisonment. Such owner shall, in addition, be liable for civil penalties pursuant to subdivisions c and d of this section.

b. An owner who repeatedly fails to provide phone services from a public pay telephone for any sustained period of time or who fails to provide coinless twenty-four hour 911 service from such public pay telephone shall be in violation of this chapter and shall be liable for a civil penalty of not more than two thousand five hundred dollars for each violation which may be recovered in a civil action or in a proceeding before the environmental control board. In the case of a continuing violation, each day's continuance shall be a separate and distinct offense.

c. An owner who violates any provision of this chapter, or any term or condition of a permit issued pursuant thereto, or any rule promulgated by the commissioner pursuant thereto shall be liable for a civil penalty of not more than one thousand dollars for each violation which may be recovered in a civil action or in a proceeding before the environmental control board. In the case of a continuing violation, each day's continuance shall be a separate and distinct offense.

d. An owner who is liable for a civil penalty for a violation pursuant to subdivision c of this section shall also be liable in a civil action for an additional civil penalty in the amount of the expense, if any, incurred by the city in the removal of the public pay telephone and the performance of related repair and restoration work.

e. In addition to authorized officers and employees of the department, officers and employees of the department of transportation who are designated by the commissioner shall have the power to issue summonses and appearance tickets returnable in the criminal court and notices of violation returnable before the environmental control board for violations of the provisions of this chapter.

f. An owner of a public pay telephone shall be liable for a violation by his or her employee, agent or independent contractor of the provisions of this chapter, or any term or condition of a permit issued pursuant thereto, or any rule promulgated by the commissioner pursuant thereto, made in the course of performing his or her duties.

g. An owner who submits an application for a public pay telephone permit containing a certification made by a commercial lessee pursuant to subparagraph (iii) of paragraph 2 of subdivision a of section 23-403 of this chapter, knowing that such certification contains a false statement or false information, shall be guilty of a misdemeanor.

h. The commissioner may request the corporation counsel to institute any action or proceeding that may be appropriate or necessary to restrain, correct or abate a violation of the provisions of this chapter.

i. 1. If the commissioner has reasonable cause to believe that an owner, or any employee, agent or independent contractor of such owner, has violated the provisions of this chapter, or any term or condition of a permit issued pursuant thereto, or any rule promulgated by the commissioner pursuant thereto, the commissioner may (i) notify the owner of the condition identified by the commissioner as a violation and specify the action that must be taken to correct the condition in such manner and within such period of time as shall be set forth in such notice, and (ii) shall afford the owner an opportunity

5

to contest the commissioner's notice in a manner to be set forth in rules of the commissioner. Upon final determination by the commissioner and failure of such owner to correct the condition in the manner and within the period of time specified by the commissioner, the commissioner shall be authorized, at his or her discretion:

aa. to remove or cause the removal of any public pay telephone which is installed, operated or maintained on, over or under any street or other unalienable property of the city without a permit therefor. Notwithstanding the foregoing, notice shall be provided pursuant to this subdivision prior to removal only where the name and address of the owner is shown on the public pay telephone or can be readily identified by the commissioner by virtue of a trademark prominently displayed on the public pay telephone.

bb. to revoke a permit and, upon revocation, to further order the removal of the public pay telephone. In the event the permittee fails to remove the public pay telephone and to perform related repair and restoration work within the time period specified by such order, the commissioner may remove or cause the removal of the public pay telephone and have repair and restoration work performed at the expense of the permittee, who shall be liable for the amount expended by the city;

cc. to render a public pay telephone inoperable except for the purpose of emergency telephone service through the 911 system or an operator. Such action may continue until the violation has been corrected to the satisfaction of the commissioner and payment has been made of all civil penalties imposed for the violation and any fees for any administrative expense or expense of additional inspections incurred by the city as a result of such violation. The commissioner shall affix to any public pay phone rendered inoperable pursuant to this paragraph a notice advising the public that the phone may be used only for emergency telephone service through the 911 system or an operator and setting forth the provisions of subdivision h of this section. Any device utilized by the commissioner for the purpose of rendering a public pay telephone inoperable shall be designed so as to permit the unimpaired use of the public pay telephone upon the removal of the device;

dd. to suspend review of all applications for the issuance or renewal of permits filed by such owner pursuant to this chapter. Such suspension may continue until the violation has been corrected to the satisfaction of the commissioner and payment has been made of all fines or civil penalties imposed for the violation, any costs incurred by the city for removal and related repair or restoration work, and any fees for any administrative expense or expense of additional inspections incurred by the city as a result of such violation;

2. Notwithstanding the provisions of paragraph one of this subdivision, if the commissioner determines that an imminent threat to life or property exists, the commissioner may remove or cause the removal of a public pay telephone, and have repair and restoration work performed at the expense of the owner, without affording the owner an opportunity to be heard prior to such removal. An owner who is a permittee or whose name and address is shown on the public pay telephone shall be provided notice and an opportunity to be heard five days after such removal in accordance with rules of the commissioner.

3. The procedures set forth in this subdivision shall be employed by the commissioner in addition to or in lieu of the other remedies set forth in this section and shall not be construed to limit the power of the commissioner to commence a civil action

6

or proceeding before the environmental control board, or the require that the commissioner resort to any procedure set forth in this subdivision as a prerequisite to the commencement of any such action or proceeding.

j. It shall be a misdemeanor for any person: (i) to remove any device installed by the commissioner pursuant to subparagraph aa of paragraph one of subdivision g of this section or to otherwise make operable a public pay telephone upon which such a device has been installed; or (ii) to remove or deface any notice affixed to a public pay telephone pursuant to such paragraph of such subdivision. Such misdemeanor shall be punishable upon conviction by a fine of not more than ten thousand dollars or imprisonment for not more than thirty days or both such fine and imprisonment.

k. Any public pay telephone removed pursuant to this section which is not claimed by the owner within thirty days of removal shall be deemed to be abandoned. All abandoned public pay telephones may be sold at public auction after having been advertised in the City Record and the proceeds paid into the general fund or such abandoned telephones may be used or converted for use by the department or by another city agency. A public pay telephone shall be released to the owner upon payment of the costs of removal, repair and restoration work, and of storage, any fees for any administrative expense or expense of additional inspections incurred by the department as a result of the violation, or, if an action or proceeding for the violation is pending in a court or before the environmental control board, upon the posting of a bond or other form of security acceptable to the commissioner in an amount which will secure the payment of such costs and any fines or civil penalties which may be imposed for the violation.

§3. Subparagraph k of paragraph 1 of subdivision c of section 1404 of the New York city charter, as added by chapter 720 of the laws of 1991, is amended to read as follows:

(k) the construction, maintenance and repair and obstruction or closure of public roads, streets, highways, parkways, bridges and tunnels which are within the jurisdiction of the department of transportation and the department of information technology and telecommunications; and

§4. Clause (i) of subparagraph a of paragraph 2 of subdivision d of section 1404 of the charter of the city of New York, as amended by chapter 720 of the laws of 1991, is amended to read as follows:

(i) service of a notice of violation of any provisions of the charter or administrative code the enforcement of which is the responsibility of the fire commissioner, the commissioner of buildings, the commissioner of environmental protection, the commissioner of transportation [or], commissioner of ports and trade or the commissioner of the department of information technology and telecommunications and over which the environmental control board has jurisdiction, may be made by delivering such notice to a person employed by the respondent on the premises the occupancy of which caused such violation; and

§5. a. Notwithstanding any provisions to the contrary of section 23-402 of the administrative code of the city of New York, as added by section 2 of this local law, all licenses previously issued to the telephone company pursuant to former sections 19-131 or 19-128 of the administrative code of the city of New York shall remain in full force and effect for a period of three years following the effective date of this local law or until ninety days following such date as the telephone company may be granted a franchise to install, operate and maintain public pay telephones, whichever is the earlier; provided, however, that a public pay telephone licensed pursuant to former sections 19-131 or 19-

7

128 of the administrative code of the city of New York may be subject to removal pursuant to the provisions of subdivision a of section 23-404 of the administrative code of the city of New York as added by section 2 of this local law. Notwithstanding any provisions to the contrary of paragraph 1 of subdivision a of section 23-403 of the administrative code of the city of New York, as added by section 2 of this local law, and subject to compliance with the provisions of section 6 of this local law, during the period in which such existing licenses remain in full force and effect, the commissioner of the department of information technology and telecommunications may issue permits pursuant to chapter 4 of title 23 of the administrative code of the city of New York, as added by section 2 of this local law, for the installation, operation and maintenance of new public pay telephones by the telephone company. Such permits shall expire three years following the effective date of this local law, unless the telephone company is granted a franchise to install, operate and maintain public pay telephones, in which case they shall continue in effect for the term of the franchise.

b. In the event the telephone company is granted a franchise to install, operate and maintain public pay telephones, it may request the issuance of permits pursuant to this local law with respect to any or all of its existing public pay telephones for which a license previously issued pursuant to former sections 19-131 or 19-128 of the administrative code is in effect in accordance with subdivision a of this section no later than thirty days following the date such franchise is granted. Such application shall consist of a letter identifying the location and license number of each existing public pay telephone for which the telephone company seeks a permit. Any existing public pay telephone for which the telephone company does not seek issuance of a permit shall be removed by the telephone company within sixty days following the date the franchise is granted and, if not so removed, shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. Failure to remove such a public pay telephone shall also be deemed a violation for purposes of subdivisions b and c of section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. Notwithstanding any other provisions to the contrary of section 23-403 of the administrative code of the city of new York, as added by section 2 of this local law, the commissioner shall, no later than ninety days following the date the franchise is granted, issue permits pursuant to this local law for the existing public pay telephones for which the telephone company has requested a permit pursuant to this subdivision, unless: (aa) within sixty days following the date the franchise is granted the commissioner has objected to the continued maintenance and operation of an existing public pay telephone upon the basis that such continued maintenance and operation would be inconsistent with this local law, or would not be in compliance with the rules of the commissioner, or of any federal or state regulatory authority having jurisdiction over the provision of public pay telephone service; and (bb) such condition has not been cured within the time frame specified by the Commissioner. The telephone company shall remove all existing public pay telephones for which a permit has not been granted pursuant to this paragraph on or before the one hundred twentieth day following the date the franchise is granted and, if not so removed, such telephones shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York, as added by section 2 of the local law. Failure to remove such a public pay telephone shall also be deemed a violation for purposes of subdivisions b and c of section 23-408 of the administrative code of the city of New York, as added by

8

section 2 of this local law. No fees shall be required for permits requested under this subdivision.

c. For a period of three years following the effective date of this local law or until such date as the telephone company may be granted a franchise to install, operate and maintain public pay telephones and the terms of the franchise agreement governing compensation to the city thereby take effect, whichever is the earlier, the telephone company shall pay to the city such commissions on revenues derived directly or indirectly from any public pay telephones maintained under license or permit as have been established by agreement between the telephone company and the city, provided, that such city standard public pay telephone commissions shall be paid at not less than the rate in effect as of June 1, 1995. In the event the telephone company fails to pay any such commissions, the commissioner of the department of information technology and telecommunications may suspend the issuance of permits to the telephone company pursuant to subdivision a of this section until such commissions are paid.

§6. a. Notwithstanding any provisions to the contrary of section 23-402 of the administrative code of the city of New York, as added by section 2 of this local law, and subject to compliance with the provisions of subdivision b of this section, an owner of a public pay telephone for which a license has not been issued pursuant to former sections 19-128 and 19-131 of the administrative code of the city of new York shall not be deemed in violation of the provisions of such section for failure to have obtained a permit for such public pay telephone, where such telephone was installed prior to the effective date of this local law, unless and until one of the following has occurred: (i) the owner has declined to respond to the request for proposals or other solicitation of proposals issued by the commissioner of the department of information technology and telecommunications for the purpose of entering into franchise agreements for the installation, operation and maintenance of public pay telephones within the time period specified in such request for proposals or other solicitation of proposals and thirty days have elapsed following such failure to respond; (ii) the commissioner has determined not to propose the award of a franchise to such owner to the franchise and concession review committee and thirty days have elapsed following notification to such owner of the commissioner's determination; or (iii) the franchise and concession review committee has determined not to approve a proposed franchise agreement for such owner and thirty days have elapsed following notification to such owner of the committee's determination; provided, further, that such public pay telephone shall not be deemed in violation of the provisions of section 23-402 of the administrative code of the city of New York, as added by section 2 of this local law if, within any such thirty day period, the owner enters into an agreement for the sale of such public pay telephone to another person who, at the time such agreement is concluded, is either a potential franchisee or has been awarded a franchise, and ownership of such public pay telephone is transferred within thirty days after such agreement is concluded.

b. The provisions of subdivision a of this section shall apply only where: (i) such owner has submitted to the department a registry identifying the location of each telephone installed and activated prior to the effective date of this local law and the date of activation for each such telephone; (ii) the owner has certified, upon a form specified by the commissioner, that all telephones identified in the registry have been installed and are maintained and operated in accordance with all applicable safety standards and requirements; (iii) the owner has paid to the city an annual interim occupancy fee for each

9

telephone identified in the registry in the amount of $75.00; and (iv) the commissioner has not objected to the continued maintenance and operation of such telephone as identified and certified in such registry upon the basis that such continued maintenance and operation: (aa) poses a danger to life or property; (bb) unreasonably interferes with the use of a street by the public; (cc) unreasonably interferes with the use of the abutting property; (dd) is a public nuisance within the meaning of subdivision e of section 23-401 of the administrative code of the city of New York, as added by section 2 of this local law; or (ee) interferes with a street widening or other capital project, or, if the commissioner has so objected, the condition which gave rise to such objection has been timely cured. A public pay telephone for which an objection has been made and not timely cured shall be removed immediately by the owner, and if not removed, shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York. Failure to remove such a public pay telephone shall also be deemed a violation for purposes of subdivisions b and c of section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. The commissioner shall promulgate rules governing the format and contents of such registries, the documentation of the information set forth therein, the certification to be provided in connection therewith, a timetable for submission of registries, and a procedure for payment of interim occupancy fees. Such rules shall allow for the payment of the interim occupancy fee in quarterly installments and shall include a mechanism for the prorated application of an interim fee towards payment of a permit fee in the event the owner is awarded a franchise prior to expiration of the annual interim period.

c. Any owner who does not submit a registry and pay to the city interim occupancy fees in the manner provided in the rules promulgated pursuant to subdivision b of this section and in accordance with the timetable established thereunder shall immediately remove all public pay telephones installed prior to the effective date of this local law other than telephones licensed pursuant to former sections 19-128 and 19-131 of the administrative code of the city of New York. Upon failure to remove such telephones such telephones shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. The failure to submit a registry in accordance with the timetable established pursuant to the rules promulgated pursuant to subdivision b of this section shall also be deemed a violation of section 23-402 of the administrative code of the city, as added by section 2 of this local law, for which an owner shall be guilty of a misdemeanor pursuant to subdivision a of section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law.

d. Notwithstanding any provisions to the contrary of paragraph 1 of subdivision a of section 23-403 of the administrative code of the city of new York, as added by section 2 of this local law, the commissioner of the department of information technology and telecommunications may issue permits pursuant to chapter 4 of title 23 of the administrative code of the city of New York, as added by section 2 of this local law, for the installation, operation and maintenance of new public pay telephones to an owner of a public pay telephone other than the telephone company who has not been awarded a franchise to install and maintain public pay telephones, provided, that: (i) such owner has submitted a registry and paid to the city interim occupancy fees in the manner provided in the rules promulgated pursuant to subdivision b of this section; and (ii) none of the following has occurred: (aa) the owner has declined to respond to the request for proposals

10

or other solicitation of proposals issued by the department of information technology and telecommunications for the purpose of entering into franchise agreements for the installation, operation and maintenance of public pay telephones within the time period specified in such request for proposals or other solicitation of proposals; (bb) the commissioner has determined not to propose the award of a franchise to such owner to the franchise and concession review committee; or (cc) the franchise and concession review committee has determined not to approve the proposed franchise agreement for such owner. Permits issued pursuant to this subdivision shall expire upon the occurrence of any of the foregoing. In the event the owner is granted a franchise to install, operate and maintain public pay telephones, such permits shall continue in effect for the term of the franchise.

e. In the event an owner of a public pay telephone other than the telephone company is granted a franchise to install and maintain public pay telephones, such owner may apply for the issuance of permits pursuant to chapter 4 of title 23 of the administrative code of the city of New York, as added by section 2 of this local law, with respect to any or all of the public pay telephones identified in a registry submitted pursuant to subdivision c of this section for which : (i) the commissioner made no objection or an objection was timely cured; and (ii) annual interim occupancy fees have been paid; provided however, that the provisions of subparagraph iii of paragraph 2 of subdivision a of Section 23-403 of the administrative code of the city of New York, as added by Section 2 of this local law, shall not apply with respect to an application for issuance of a permit for a public pay telephone where such public pay telephone was installed in the manner described in such subparagraph and activated on, or before August 1, 1994, and has been in continuous use since such activation date. Such applications shall be made no later than thirty days following the date the franchise is granted. Any such public pay telephone for which such owner does not so apply for issuance of a permit shall be removed by the owner within sixty days following the date the franchise is granted and, if not so removed, shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. Failure to remove such a public pay telephone shall also be deemed a violation for purposes of subdivisions b and c of section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. In reviewing an application for the issuance of a permit for an existing public pay telephone made pursuant to this section, the commissioner shall notify the owner of any condition which renders the continued maintenance and operation of such telephone inconsistent with the provisions of this local law, or out of compliance with the rules of the commissioner, or of any federal or state regulatory authority having jurisdiction over the provision of public pay telephones and which, if cured by the owner within such time period as may be specified by the Commissioner, shall render such telephone eligible for receipt of a permit pursuant to this local law. An owner shall not be required to remove an existing public pay telephone for which the owner has submitted an application for a permit pursuant to this paragraph unless and until the earlier of the following has occurred: (aa) the owner fails to timely cure a condition specified in a notification provided by the commissioner pursuant to this paragraph, or (bb) the application for such permit is denied. Any such public pay telephone, if not removed within thirty days of such occurrence, shall be subject to removal pursuant to section 23-408 of the administrative code of the city of New York as added by section 2 of this local law. Failure to remove such a public pay telephone shall

11

also be deemed a violation for purposes of subdivisions b and c of section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law. Nothing in this section shall be construed to limit the commissioner's authority to issue or deny permits at his or her discretion, or to otherwise pursue the remedies for violations set forth in section 23-408 of the administrative code of the city of New York, as added by section 2 of this local law.

§7. The commissioner may by rule extend any time period provided for in sections 5 and 6 of this local law, based upon a determination that such extension would be in the best interests of the city.

§8. All records of the department of transportation relating to the licensing of public pay telephones shall be transferred to the department of information technology and telecommunications according to a timetable to be established by such agencies.

§9. The department of information technology and telecommunications shall, upon the effective date of this local law and so far as not inconsistent with the provisions of this local law, be authorized to continue any business, proceeding or other matter commenced by the department of transportation pursuant to former section 19-128 of the administrative code of the city of New York.

§10. Subdivision a of section 10-117 of the administrative code is amended to read as follows:

a. No person shall write, paint or draw any inscription, figure or mark of any type on any public or private building or other structure or any other real or personal property owned, operated or maintained by a public benefit corporation, the city of New York or any agency or instrumentality thereof or by any person, firm, or corporation, *or any personal property maintained on a city street or other city-owned property pursuant to a franchise, concession or revocable consent granted by the city*, unless the express permission of the owner or operator of the property has been obtained.

§11. Subdivision a of section 10-119 of the administrative code, as amended by local law 111 for the year 1993, is amended to read as follows:

a. It shall be unlawful for any person to paste, post, paint, print or nail any handbill, poster, notice, sign or advertisement upon any curb, gutter, flagstone, tree, lamppost, awning post, telegraph pole, telephone pole, public utility pole, public garbage bin, bus shelter, bridge abutment, elevated train structure, highway fence, barrel, box, parking meter, mailbox, traffic signal stanchion, tree box, bench, traffic barrier [or] , hydrant, *public pay telephone, any personal property maintained on a city street or other city-owned property pursuant to a franchise, concession or revocable consent granted by the city* or other such item or structure in any street, or to direct, suffer or permit any servant, agent, employee or other person under his or her control to engage in such activity, provided, however, that this section shall not apply to any handbill, poster, notice, sign or advertisement so posted by or under the direction of the council, or by or under the direction of any city agency, or pursuant to a franchise, concession or revocable consent granted pursuant to chapter fourteen of the charter.

§12. This local law shall take effect one hundred eighty days after it shall have been enacted into law provided that sections 10 and 11 become effective immediately. The commissioner of the department of information technology and telecommunications and the environmental control board shall be authorized, prior to the one hundred eighty day effective date, to promulgate rules or take any other actions necessary for the timely implementation of this local law.

12

THE CITY OF NEW YORK, OFFICE OF THE CITY CLERK, s.s.:
    I hereby certify that the foregoing is a true copy of a local law of the City of New York, passed by the Council on August 17, 1995, and approved by the Mayor on September 1, 1995.

CARLOS CUEVAS, City Clerk, Clerk of the Council


CERTIFICATION PURSUANT TO MUNICIPAL HOME RULE LAW §27
    Pursuant to the provisions of Municipal Home Rule Law §27, I hereby certify that the enclosed Local Law (Local Law 68 of 1995, Council Int. No. 121-A) contains the correct text and:
    Received the following vote at the meeting of the New York City Council on August 17, 1995:  44 for, 0 against.
    Was approved by the Mayor on September 5, 1995.
    Was returned to the City Clerk on September 5, 1995.

JEFFREY D. FRIEDLANDER, Acting Corporation Counsel

Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:    **HON. PAUL G. FEINMAN**                PART _52_

_____
                              _Justice_

Global Network Communications        INDEX NO.    _109531-05_

                                     MOTION DATE    _10-11-05_

          - v -                      MOTION SEQ. NO.    _001_

Gino Menchini                        MOTION CAL. NO.    _8_

The following papers, numbered 1 to _8_ were read on this motion to/for _Article 78_

_Petition_
Notice of ~~Motion/~~ Order to Show Cause — Affidavits — Exhibits ...

Answering Affidavits — Exhibits  _Answer — Memo to_

Replying Affidavits  _Memo_

_Sur-Reply_

| PAPERS NUMBERED |
| --- |
| 1 |
| 2,3,4,5 |
| 6,7 |
| 8 |

Cross-Motion:    ☐ Yes    ☒ No

Upon the foregoing papers, it is ordered that this motion  _petition is_
_decided in accordance with the_
_annexed decision, order + judgment._

~~This judgment has not been entered by the County Clerk
and notice of entry cannot be served based hereon. To
obtain entry, counsel or authorized representative must
appear in person at the Judgment Clerk's Desk (Room
141B).~~ **UNFILED JUDGMENT**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated:    _11/28/05_                    Paul G. F_____    J.S.C.

Check one:    ☒ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate:    ☐ DO NOT POST    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CIVIL TERM: PART 52
-------------------------------------------------------------------------X
GLOBAL NETWORK COMMUNICATIONS, INC.,
                                        Petitioner,

                -against-                          Index No.           109531/2005
                                                  Mot. Seq. Nos.       001 & 002
GINO MENCHINI, AS COMMISSIONER OF THE             Mot. Cal. Nos.       8 & 9
DEPARTMENT OF INFORMATION                         Submission Date      10-11-05
TECHNOLOGY AND TELECOMMUNICATIONS,
THE DEPARTMENT OF INFORMATION
TECHNOLOGY AND TELECOMMUNICATIONS,
and THE CITY OF NEW YORK,
                                        Respondent
-------------------------------------------------------------------------

PAUL GEORGE FEINMAN, J.:

        Motion sequence numbers 001 and 002 are consolidated for disposition.

        The petitioner Global Network Communications, Inc. brings this Article 78 proceeding for

a judgment vacating and setting aside the decision and order of the respondent Gino Menchini as

Commissioner of the Department of Information Technology and Telecommunication dated March

11, 2005.  Menchini decided that Global not be awarded a public pay telephone franchise.  Global

also moves, pursuant to CPLR 7805, for an order staying the proceedings by the respondent

Department of Information Technology and Telecommunications (DoITT) in this matter and

staying enforcement of the DoITT's determination which is the subject of this Article 78

proceeding, and preliminarily enjoining the DoITT from removing Global's pay phones, pending

the outcome of this Article 78 proceeding. For the reasons which follow, the petition is denied,

thereby rendering academic petitioner's request for a preliminary injunction.  Any previously

issued temporary restraining order is hereby immediately vacated.

                                    *BACKGROUND*

                                          1

The petitioner Global owns approximately 1,000 interim eligible public pay telephones located on, or near, City sidewalks, which are subject to franchise and permit requirements (New York City Administrative Code §§ 23-402, 23-403). In a decision dated March 11, 2005, Commissioner Menchini determined not to propose to the Franchise and Concession Review Committee the award of a public pay telephone franchise to Global because Global's owner Ronald Massie was indicted for loan sharking and mail fraud. It was alleged that Massie was both skimming money from the commissions owed to property owners, and obtaining a significant part of its business through the use of members of an organized crime family. During the pendency of this Article 78 proceeding, Massie pled guilty both to the crime of mail fraud (18 USC 1342) in connection with Global's pay telephone business, and making false statements to a bank in connection with a mortgage. Additionally, on April 23, 2003, at the criminal trial of George Lombardozzi, Massie appeared as a government witness and admitted, *inter alia,* that Global had obtained 20% to 30% of its business from locations that were signed up by members of organized crime, Global made payments to associates of organized crime, and Global fraudulently understated revenues, withholding $1.8 million in pay telephone commissions payable to property owners and then moved that money offshore to further Massie's loan sharking activities. Massie also testified that he dealt cocaine, promoted prostitution and promoted illegal video poker machines. Furthermore, Global has been repeatedly delinquent in paying its registry fees and fines. Because Global is no longer permitted to operate pay phones on City property, it must, within 60 days after the determination, either cease operations, or sell to a franchise holder, or to a "potential franchisee" (67 RCNY 6-23 [ii]).

In prior litigation involving this dispute, another Justice of this court remanded an Article 78 petition for further proceedings. The federal District Court dismissed Global's lawsuit pending

2

there without prejudice to commencing this Article 78 proceeding.  An appeal of that dismissal order is *sub judice* in the Second Circuit Court of Appeals.

## ARGUMENTS

In support of the instant petition, Global makes the following arguments.  Commissioner Menchini's decision is contrary to law because it limits Global to selling its business, in an all-cash transaction, to an existing franchisee, in plain violation of Section 6-23 of the New York City Rules, and because the DoITT has refused for several years, and continues to refuse, to accept applications for franchises.  Global also contends that Commissioner's decision is arbitrary and capricious because DoITT has not permitted the conditional grant of a franchise to Global, contingent on Massie either separating himself from Global, or divesting himself of any interest in Global except to the extent of a passive economic interest held by a family trust.  Global cannot even have an interest in the advertising revenues generated by the public pay telephones.  Global contends that DoITT is currently permitting two convicted felons involved in other companies to have ongoing interests in public pay telephone franchises.

In opposition to the petition, the respondents argue that their determination, declining to recommend a franchise for Global, is entirely lawful and proper, and can in no respect be characterized as arbitrary and capricious or unlawful given Massie's conceded criminal history.

## ANALSIS

Judicial review of the determination of a body or officer is limited to whether the determination was made "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]).  Therefore, a court may not substitute its judgment for that of administrative agency when there is a rational basis for the agency's determination (<u>Matter of Nehorayoff v Mills</u>, 95 NY2d 671 [2001]).  Moreover, it is well

settled that the interpretation given a statute by the agency charged with its enforcement will be respected by the courts if not irrational or unreasonable (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98 [1997]; Matter of Fineway Supermarkets, Inc. v State Liquor Authority, 48 NY2d 464 [1979]).

Commissioner Menchini lawfully exercised his discretion in denying Global's application for an award of a public pay telephone franchise on the ground that Global's principal, Massie, lacked the requisite good character, honesty and integrity. In reaching his determination, Commissioner Menchini was entitled to rely on Massie's past criminal history as demonstrating a lack of the character required for franchisee. Global lacks a property right in the franchise it seeks, and was afforded a sufficient opportunity to be heard (Matter of Daxor Corp. v State of New York Dept. of Health, 90 NY2d 89 [1997]). Accordingly, Commissioner Menchini's determination was rational, and not arbitrary and capricious within the meaning of the law.

Nor did the determination of the Commissioner to require a sale to an existing franchisee deny Global due process of law, since there is absolutely no evidence that Global's inability to sell to a potential franchisee will reduce the purchase price, since there are numerous existing franchisees sufficient to create a competitive market for Global's business.

67 RCNY 6-23 provides:

The continued maintenance and operation of interim eligible public pay telephones identified in a registry of public pay telephones shall no longer be authorized if and when any of the following occurs: (i) the owner has declined to respond to the request for proposals or other solicitation of proposals issued by the Commissioner for the purpose of entering into franchise agreements for the installation, operation and maintenance of public pay telephones within the time period specified in such request for proposals or other solicitation of proposals and sixty days have elapsed following such failure to respond; (ii) the Commissioner has determined not to propose the award of a franchise to such owner to the Franchise and Concession Review Committee and sixty days have elapsed following notification to such owner of the Commissioner's determination; or (iii) the Franchise and Concession

Review Committee has determined not to approve a proposed franchise agreement for such owner and sixty days have elapsed following notification to such owner of the Committee's determination. However, such public pay telephone may continue to be maintained and operated if, within any such sixty day period the owner enters into an agreement for the sale of such public pay telephone to another person who, at the time such agreement is concluded, is either a potential franchisee or has been awarded a franchise, and ownership of such public pay telephone is transferred within ninety days after such agreement is concluded.

Contrary to Global's assertion, Commissioner Menchini's interpretation of the above quoted rule does not run counter to the plain meaning of the language (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, supra). The rule simply does not require that there must be a list of potential franchisees. Also contrary to Global's assertion, there is no requirement that Global sell its franchise for all cash. Finally, the respondents are not required to accept Massie's offer to divest himself of any interest in Global except a passive economic interest. Thus, there is no basis upon which the petition can be granted and the proceeding must be dismissed. This renders the need for any injunctive relief academic.

Accordingly, it is

ORDERED and ADJUDGED that the petition is denied and the proceeding is dismissed, with costs and disbursements to the respondents, and it is further

ORDERED that Global's motion for a preliminary injunction is denied as academic and that any previously issued temporary restraining order is hereby immediately vacated.

This constitutes the decision, order and judgment of this court.

Dated: November 28, 2005
    New York, New York

ENTER:

*Paul George Fein*

UNFILED JUDGMENT
This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or _____ representative must appear in person at th_____ Desk (Room 141B).

Pt 52 Dec/109531_2005_001&002

5

Exhibit C

APPEAL, CLOSED

## U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:03-cv-07934-LLS

Global Network Comm. v. City of New York, et al
Assigned to: Judge Louis L. Stanton
Demand: $0
Cause: 28:1331 Fed. Question: Other

Date Filed: 10/07/2003
Date Terminated: 09/13/2007
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Global Network Communications, Inc.**

represented by **Joseph P. Garland**
Law Office of Joseph P. Garland
275 Madison Avenue
New York, NY 10016
212-213-1812
Fax: 212-213-1816
Email: jpg65@columbia.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert G. Scott**
Cole, Raywid & Braverman, L.L.P.
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006
(202) 659-9750
*TERMINATED: 01/08/2007*
*LEAD ATTORNEY*

**T. Scott Thompson**
Cole, Raywid & Braverman, L.L.P.
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006
(202) 659-9750
*TERMINATED: 01/08/2007*
*LEAD ATTORNEY*

**Defendant**

**City of New York**

represented by **Diana Marsh Murray**
NYC Law Department, Office of the
Corporation Counsel
100 Church Street
New York, NY 10007
(212) 788-0853
Fax: (212) 791-9714

Email: dmurray@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**City of New York Department of
Information Technology and
Telecommunications**

represented by   **Diana Marsh Murray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gino P. Menchini**
*in his official capacity*

**Defendant**

**Stanley Shor**
*in his official capacity*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/10/2008 | 65 | Appeal Record Sent to USCA (Index). Notice that the Original index to the record on Appeal for 63 Notice of Appeal, filed by Global Network Communications, Inc. USCA Case Number 07-5184-cv, 3 Copies of the index, Certified Clerk Certificate and Certified Docket Sheet were transmitted to the U.S. Court of Appeals. (nd) (Entered: 01/10/2008) |
| 12/21/2007 | 64 | ORDER of USCA (Certified Copy) as to 63 Notice of Appeal, filed by Global Network Communications, Inc. USCA Case Number 07-5184-cv. It is hereby Ordered that the motion for preliminary injunction is DENIED. Catherine O'Hagan Wolfe, Clerk USCA. Certified: 12/20/2007. (tp) (tp). (Entered: 12/21/2007) |
| 11/20/2007 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 63 Notice of Appeal,. (nd) (Entered: 11/20/2007) |
| 11/20/2007 | | Transmission of Notice of Appeal to the District Judge re: 63 Notice of Appeal,. (nd) (Entered: 11/20/2007) |
| 11/20/2007 | 63 | NOTICE OF APPEAL from 62 Order on Motion for Reconsideration, Order on Motion to Vacate, Order on Motion for Miscellaneous Relief, 52 Memorandum & Opinion, 55 Clerk's Judgment. Document filed by Global Network Communications, Inc.. Filing fee $ 455.00, receipt number E 633400. Copies of Notice of Appeal mailed to attorney(s) of record: Corporation Counsel, NYC. (nd) (Entered: 11/20/2007) |
| 1/09/2007 | 62 | ORDER denying 56 Motion for Reconsideration ; denying 56 Motion to Vacate ; denying 56 Motion. For these reasons, the motion for reconsideration is denied. SO ORDERED. (Signed by Judge Louis L. Stanton on 11/8/2007) (jmi) (Entered: 11/09/2007) |
| /05/2007 | 61 | REPLY MEMORANDUM OF LAW in Further Support re: 56 MOTION for Reconsideration. MOTION to Vacate. MOTION Denying defendnts' mot io for summary judgment. Document filed by Global Network Communications, Inc.. (djc) (Entered: 11/07/2007) |
| /24/2007 | 60 | MEMORANDUM OF LAW in Opposition re: 56 MOTION for Reconsideration. MOTION to Vacate. MOTION Denying defendnats' mot io for summary judgment.. Document filed by City of New York, City of New York Department of Information Technology and Telecommunications. (dle) (Entered: 10/26/2007) |

| | | |
|---|---|---|
| 09/27/2007 | | DECLARATION of Joseph P. Garland in Support re: 56 MOTION for Reconsideration. MOTION to Vacate. MOTION Denying defendnats' mot io for summary judgment. [Received in the night deposit box on 9/27/2007 at 9:58 p.m.] Document filed by Global Network Communications, Inc.. (jar) (Entered: 10/02/2007) |
| 09/27/2007 | 58 | DECLARATION of Jeffrey Hanft in Support re: 56 MOTION for Reconsideration. MOTION to Vacate. MOTION Denying defendnats' mot io for summary judgment. Document filed by Global Network Communications, Inc.. (djc) (Entered: 10/01/2007) |
| 09/27/2007 | 57 | MEMORANDUM OF LAW in Support re: 56 MOTION to Vacate. MOTION Denying defendnats' mot io for summary judgment. Document filed by Global Network Communications, Inc.. (djc) (Entered: 10/01/2007) |
| 09/27/2007 | 56 | MOTION for Reconsideration of the Court's opinion and order dated August 30, 2007 and the Judgment entered herein on September 13, 2007 dismissing the action. MOTION to Vacate the Judgment entered herein on September 13, 2007. MOTION Denying defendants' motion for summary judgment. Document filed by Global Network Communications, Inc.(djc) (Entered: 10/01/2007) |
| 09/14/2007 | | Mailed notice of Right to Appeal re: 55 Clerk's Judgment, and to Attorney(s) of Record: Joseph P. Garland, Diana Marsh Murray. (tve) (Entered: 09/26/2007) |
| 09/13/2007 | 55 | CLERK'S JUDGMENT That for the reasons stated in the Court's Opinion and Order dated August 30, 2007, defendants motion for summary judgment is granted and the complaint and amended complaint is dismissed, with costs and disbursements to defendants according to law. (Signed by J. Michael McMahon, clerk on 9/13/07) (ml) (Entered: 09/13/2007) |
| 09/07/2007 | 54 | LETTER addressed to Judge Louis L. Stanton from Joseph Garland dated 8/24/07 re: Request for a conference to take up the development with respect to (i) the developments described. Document filed by Global Network Communications, Inc.(cd) (Entered: 09/11/2007) |
| 09/07/2007 | 53 | LETTER addressed to Judge Louis L. Stanton from Diana Murray dated 9/5/07 re: plaintiff's letter dated 8/24/07 re a conference. Document filed by City of New York. (cd) (Entered: 09/10/2007) |
| 08/30/2007 | 52 | OPINION AND ORDER #95129: The City's motion for summary judgment is granted. The Clerk will enter judgment dismissing the complaint and amended complaint, with costs and disbursements to the defendant according to law. (Signed by Judge Louis L. Stanton on 8/30/07) (tro) Modified on 9/4/2007 (kco). (Entered: 08/31/2007) |
| 07/02/2007 | 51 | MEMORANDUM OF LAW in Further Support of motion for summary judgment. Document filed by City of New York, City of New York Department of Information Technology and Telecommunications, Gino P. Menchini, Stanley Shor. (jpo) (Entered: 07/06/2007) |
| 05/14/2007 | 50 | DECLARATION of Diana M. Murray in Support of Motion for Summary Judgment. Document filed by City of New York, City of New York Department of Information Technology and Telecommunications. w. Exhibits in support of City's Motion for Summary Judgment. (djc) Modified on 6/15/2007 (Clark, Dolores). (Entered: 06/15/2007) |
| 07/14/2007 | 49 | MEMORANDUM OF LAW in Support of Motion for Summary Judment. Document filed by City of New York, City of New York Department of Information Technology and Telecommunications. (djc) (Entered: 06/15/2007) |
| 01/2007 | 48 | Plaintiff's Counterstatement, purs. to Local civil rule 56.1. Document filed by Global Network Communications, Inc.. (tro) (Entered: 06/06/2007) |

| 06/01/2007 | | DECLARATION of Joseph P. Garland dated May 25, 2007, Exhibits 6-14. Document filed by Global Network Communications, Inc. (tro) (Entered: 06/06/2007) |
|---|---|---|
| 06/01/2007 | 46 | DECLARATION of Ronald E. Massie in Opposition to the Motion of Defts the City of New York and the Department of Information Technology and Telecommunications for summary judgment. Document filed by Global Network Communications, Inc.. (tro) (Entered: 06/06/2007) |
| 06/01/2007 | 45 | MEMORANDUM OF LAW in Opposition to Motion for Summary Judgment. Document filed by Global Network Communications, Inc.. (tro) (Entered: 06/06/2007) |
| 06/01/2007 | 44 | DECLARATION of Joseph P. Garland in Opposition re: 11 MOTION (FILED ON SERVICE DATE) to Dismiss. MOTION (FILED ON SERVICE DATE) to Dismiss.. Document filed by Global Network Communications, Inc.. (tro) (Entered: 06/06/2007) |
| 04/20/2007 | 43 | ENDORSED LETTER addressed to Judge Louis L. Stanton from Joseph P. Garland dated 4/19/07 re: Request an alteration of the briefing schedule related to Defendants' motion for summary judgment. The Parties agreed that Plaintiff's answering papers currently due on April 30 will be served on May 25 and defendants' reply now due on May 30 will be served on July 2. ENDORSEMENT: GRANTED. No further extensions should be contemplated without very good cause. (Signed by Judge Louis L. Stanton on 4/20/07) (Entered: 04/23/2007) |
| 03/02/2007 | 42 | ENDORSED LETTER addressed to Judge Louis L. Stanton from Diana M. Murray dated 2/27/07 re: I am writing, with consent of opposing counsel, to request until March 29, 2007 to serve the City's motion for summary judgment in the above referenced case. ENDORSEMENT: GRANTED. So Ordered. (Signed by Judge Louis L. Stanton on 3/1/07) (js) (Entered: 03/05/2007) |
| 01/31/2007 | 41 | ORDER that the City shall not on or before 2/16/07 to remove or cause Global's PPTs' removal from their present locations for lack of a franchise or permit. (Signed by Judge Louis L. Stanton on 1/31/07) (cd) (Entered: 02/01/2007) |
| 01/30/2007 | | Minute Entry for proceedings held before Judge Louis L. Stanton : Interim Pretrial Conference held on 1/30/2007. (dle) (Entered: 02/08/2007) |
| 01/19/2007 | | Minute Entry for proceedings held before Judge Louis L. Stanton : Interim Pretrial Conference held on 1/19/2007. Conference held. Next conference set for 1/30/07 at 2:30. (js) (Entered: 01/29/2007) |
| 01/08/2007 | 40 | ENDORSED LETTER addressed to Judge Stanton from Robert Scott dated 12/7/06 re request for Robert Scott, T. Scott Thompson and Cole Raywid & Braverman leave to withdraw as counsel for Global: after hearing all concerned in this application at a conference this afternoon, it is granted, and Messrs Scott and Thompson and their firm are relieved as counsel for plaintiff. (Signed by Judge Louis L. Stanton on 1/5/07) (cd, ) (Entered: 01/09/2007) |
| 01/05/2007 | | Set Deadlines/Hearings: Pretrial Conference set for 1/19/2007 02:30 PM before Judge Louis L. Stanton. (jco) (Entered: 01/19/2007) |
| 01/05/2007 | | Minute Entry for proceedings held before Judge Louis L. Stanton : Pretrial Conference held on 1/5/2007. Next conference set for 1/19/07 @ 2:30. (jco) (Entered: 01/19/2007) |
| 12/11/2006 | 39 | NOTICE OF APPEARANCE by Joseph P. Garland on behalf of Global Network Communications, Inc. (Garland, Joseph) (Entered: 12/11/2006) |
| 12/05/2006 | 38 | ENDORSED LETTER addressed to Judge Stanton from Ronald E. Massie dated 12/1/06 re: This application for reconsideration of my November 28, 2006 allowing Mr. Gottesman to withdraw as counsel is denied...; (Signed by Judge Louis L. Stanton on 12/4/06) (djc, ) (Entered: 12/05/2006) |

| | | |
|---|---|---|
| | | ORDER re J. Michael Gottesman application to be relieved as local counsel for plaintiff: the application is granted and Mr. Gottesman is relieved of further responsibilities to the Court in this case. (Signed by Judge Louis L. Stanton on 11/28/06) (cd, ) (Entered: 11/29/2006) |
| 11/22/2006 | 37 | LETTER addressed to Judge Stanton from J. Michael Gottesman dated 11/21/06 re: response to the City of NY's letter dated Nov. 16, 2006 opposing request to withdraw as counsel for Plaintiff Global Network Comm...;. Document filed by Global Network Communications, Inc..(djc, ) (Entered: 11/29/2006) |
| 11/17/2006 | 36 | LETTER addressed to Judge Stanton from Diana M. Murray dated 11/16/06 re: counsel writes in opposition to the request by counsel for plaintiff Global Network Communications, Inc to move for leave to withdraw as local counsel.. Document filed by City of New York.(djc, ) (Entered: 11/29/2006) |
| 11/15/2006 | 35 | LETTER addressed to Judge Stanton from J. Michael Gottesman dated 11/14/06 re: counsel requests a connference in connection with a motion he wishes to make to withdraw as counsel to Plantiff Global Network Communications, Inc...;. Document filed by Global Network Communications, Inc..(djc, ) (Entered: 11/29/2006) |
| 10/23/2006 | 33 | ORDER: The Court having heard the parties at a conference held this day, defendant's motion to dismiss shall be treated as one for summary Judgment and disposed of as provided in Fed. R. Civ. P. 56. Since no party wishes to submit the case to the Federal Communications Commission, and the Court concurs that no issue appears which requires the specialized expertise of the Commission, the Court finds that application of the doctrine of primary jurisdiction in the Commission is not warranted. (Signed by Judge Louis L. Stanton on 10/20/06) (js, ) (Entered: 10/24/2006) |
| 10/20/2006 | | Minute Entry for proceedings held before Judge Louis L. Stanton : Interim Pretrial Conference held on 10/20/2006. (jar, ) (Entered: 10/24/2006) |
| 09/05/2006 | | Appeal Record Returned. Indexed record on Appeal Files for 24 Notice of Appeal, filed by Global Network Communications, Inc., USCA Case Number 05-3298, returned from the U.S. Court of Appeals. (nd, ) (Entered: 09/15/2006) |
| 09/05/2006 | | Transmission of USCA Mandate/Order to the District Judge re: 32 USCA Mandate,. (nd, ) (Entered: 09/05/2006) |
| 09/05/2006 | 32 | MANDATE of USCA (Certified Copy) as to 24 Notice of Appeal, filed by Global Network Communications, Inc., USCA Case Number 05-3298-cv. Ordered, Adjudged and Decreed that the judgment of the District Court is VACATED and case is REMANDED for further proceedings in accordance with the opinion of this Court. Roseann B. MacKechnie, Clerk USCA. Issued As Mandate: 9/1/2006. (nd, ) (Entered: 09/05/2006) |
| 03/29/2006 | | Appeal Record Sent to USCA (File). Indexed record on Appeal Files for 24 Notice of Appeal, filed by Global Network Communications, Inc., USCA Case Number 05-3298, were transmitted to the U.S. Court of Appeals to the attention of Vincenza Mathias on 3/31/06. (tp, ) (Entered: 03/29/2006) |
| 8/23/2005 | 31 | Appeal Record Sent to USCA (Index). Notice that the Original index to the record on Appeal for 24 Notice of Appeal, filed by Global Network Communications, Inc., 3 Copies of the index, Certified Clerk Certificate and Certified Docket Sheet were transmitted to the U.S. Court of Appeals. (nd, ) (Entered: 08/23/2005) |
| 8/10/2005 | 30 | DECLARATION of Robert G. Scott, Jr. in Support leave to file a second amended and supplemental complaint. Document filed by Global Network Communications, Inc.. (jmi, ) (Entered: 08/16/2005) |

| | | |
|---|---|---|
| | | OPINION AND ORDER #91774; re: This Court's Opinion and Order datd 6/9/05 is amended by inserting the words "commissions on" between the word "of" and the word "about" on the third line from the bottom of page 3, making that line read as follows: "their establishments, out of commissions on about $1,800,000. (Signed by Judge Louis L. Stanton on 6/20/05) Copies Mailed By Chambers.(sac, ) Additional attachment(s) added on 7/26/2006 (rag, ). Additional attachment(s) added on 7/26/2006 (rag, ). Additional attachment(s) added on 7/27/2006 (rag, ). (Entered: 06/23/2005) |
| 06/21/2005 | 25 | MEMO ENDORSEMENT on (COPY) Emergency Motion for injunction pending appeal; re: After hearing the parties by counsel this afternoon, plaintiff's application for an injunction pending appeal is denied, except to the extent that (in order to allow Global the opportunity to arrange to sell the PPT's to a qualified buyers or buyers, at the PPT's present locations) defendant shall not before Monday 8/22/05 remove on cause L. Stanton on 6/20/05) (sac, ) (Entered: 06/23/2005) |
| 06/20/2005 | 28 | MEMORANDUM OF LAW in Support re: 27 MOTION (FILED ON SERVICE DATE) for Injunction Pending Appeal that restrains Defendants, their employees and agents, from acting to remove or cause to be removed public pay telephones currently owened by Global located on the City's inalienable property, purs. to Rule 62(c) of the FRCP. Document filed by Global Network Communications, Inc.. (ae, ) (Entered: 06/24/2005) |
| 06/20/2005 | 27 | EMERGENCY MOTION (FILED ON SERVICE DATE) for Injunction Pending Appeal that restrains Defendants, their employees and agents, from acting to remove or cause to be removed public pay telephones currently owened by Global located on the City's inalienable property, purs. to Rule 62(c) of the FRCP. Document filed by Global Network Communications, Inc.. (ae, ) (Entered: 06/24/2005) |
| 06/20/2005 | | Minute Entry for proceedings held before Judge Louis L. Stanton : Interim Pretrial Conference held on 6/20/2005. (pl, ) (Entered: 06/22/2005) |
| 06/20/2005 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 24 Notice of Appeal,. (pr, ) (Entered: 06/20/2005) |
| 06/20/2005 | | Transmission of Notice of Appeal to the District Judge re: 24 Notice of Appeal,. (pr, ) (Entered: 06/20/2005) |
| 06/15/2005 | 24 | NOTICE OF APPEAL from 23 Memo Endorsement, 21 Memorandum & Opinion,. Document filed by Global Network Communications, Inc.. Filing fee $ 255.00, receipt number E 546680. Copies of Notice of Appeal mailed to Attorney(s) of Record: Diana Murray. (pr, ) (Entered: 06/20/2005) |
| 06/15/2005 | | Mailed notice of Right to Appeal re: 22 Clerk's Judgment, and to Attorney(s) of Record: John Richard Goldman, Diana M. Murray, Robert G. Scott, T. Scott Thompson. (lma, ) (Entered: 06/15/2005) |
| 06/14/2005 | 22 | CLERK'S JUDGMENT That for the reasons stated in the Court's Opinion and Order dated June 9, 2005, this action is dismissed, with costs and disbursements to defendants according to law, without prejudice to plaintiff?s assertion of claims that may be open to it in a proceeding in the Supreme Court of the State of New York under Article 78 of the New York Civil Practice Law and Rules. (Signed by J. Michael McMahon, clerk on 6/14/05) (ml, ) (Entered: 06/14/2005) |
| 6/13/2005 | 23 | MEMO ENDORSEMENT on Plaintiff's Notice of Motion for leave to file a second amended and supplemental complaint. Motion denied as futile. (Signed by Judge Louis L. Stanton on 6/10/2005) copies mailed by chambers.(jsa, ) (Entered: 06/16/2005) |
| 6/13/2005 | | Transmission to Judgments and Orders Clerk. Transmitted re: 21 Memorandum & |

|  |  | Opinion, to the Judgments and Orders Clerk for preparation of Judgment. (kw, ) (Entered: 06/13/2005) |
|---|---|---|
| 06/10/2005 | 29 | MEMORANDUM AND OPINION # 91737; the Clerk enter judgment dismissing this action, with costs and disbursements to dfts according to law, without prejudice to plaintiff's assertion of claims that may be open to it in a proceeding in the Supreme Court of the State of N.Y. under Article 78. (Signed by Judge Louis L. Stanton on 6/9/05) (pl, ) Additional attachment(s) added on 7/26/2006 (rag, ). (Entered: 07/08/2005 |
| 06/10/2005 | 21 | OPINION AND ORDER #91737 the Clerk will enter judgment dismissing this action with costs and disbursements to defendants accordings to law, without prejudice to plaintiff's assertion of claims that may be open to it in a proceeding in the Supreme Court of the State of New York under Article 78 of the New York Civil Practice Law and Rules. (Signed by Judge Louis L. Stanton on 6/9/05) (kw, ) Additional attachment (s) added on 7/26/2006 (rag, ). (Entered: 06/13/2005) |
| 06/06/2005 | 20 | LETTER addressed to Dear Judge Stanton from Robert G. Scott, Jr. dated 3/29/2005 re: request the opportunity to appear before the Court to elimate any confusion in the deft's. papers.......... Document filed by Global Network Communications, Inc..(jma, ) (Entered: 06/13/2005) |
| 06/06/2005 | 19 | LETTER addressed to Dear Judge Stanton from Diana M. Murray dated 3/31/2005 re: requesting argument or a hearing on the City's motion to dismiss the complaint in the above-referenced action....... Document filed by Global Network Communications, Inc.. (jma, ) (Entered: 06/13/2005) |
| 05/16/2005 | 18 | ENDORSED LETTER addressed to Diana M. Murray, Esq. from J. Michael Gottesman dated 8/6/04; re: granting Plaintiff permission to withdraw its motion for a preliminary injunction without prejudice. (Signed by Judge Louis L. Stanton on 5/13/05) Copies Mailed By Chambers.(sac, ) (Entered: 05/17/2005) |
| 03/14/2005 | 17 | REPLY MEMORANDUM OF LAW in Support re: 11 MOTION (FILED ON SERVICE DATE) to Dismiss.. Document filed by City of New York, City of New York Department of Information Technology and Telecommunications, Gino P. Menchini, Stanley Shor. (dle, ) (Entered: 03/18/2005) |
| 03/14/2005 | 16 | DECLARATION of Diana M. Murray in Support re: 11 MOTION (FILED ON SERVICE DATE) to Dismiss.. Document filed by City of New York, City of New York Department of Information Technology and Telecommunications, Gino P. Menchini, Stanley Shor. (dle, ) (Entered: 03/18/2005) |
| 02/08/2005 | 15 | Unpublished Decisions referred to in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss. Document filed by Global Network Communications, Inc.. (ps, ) (Entered: 02/10/2005) |
| 1/31/2005 | 14 | DECLARATION of Robert G. Scott, Jr. in Opposition re: 11 MOTION (FILED ON SERVICE DATE) to Dismiss.. Document filed by Global Network Communications, Inc.. (ps, ) (Entered: 02/05/2005) |
| 1/31/2005 | 13 | MEMORANDUM OF LAW in Opposition re: 11 MOTION (FILED ON SERVICE DATE) to Dismiss. Document filed by Global Network Communications, Inc.. (ps, ) (Entered: 02/05/2005) |
| /19/2004 |  | Minute Entry for proceedings held before Judge Louis L. Stanton : Interim Pretrial Conference held on 11/19/2004. (djc, ) (Entered: 12/09/2004) |
| 16/2004 | 12 | MEMORANDUM OF LAW in Support re: 11 MOTION (FILED ON SERVICE DATE) to Dismiss.. Document filed by City of New York, City of New York |

| | | Department of Information Technology and Telecommunications. (pa, ) (Entered: 11/19/2004) |
|---|---|---|
| 11/15/2004 | 11 | NOTICE OF MOTION (FILED ON SERVICE DATE) to Dismiss the complt. with attached declarations of Diana M. Murray & Agostino Cangemi in support..Ret: date 1/21/05 Document filed by City of New York, City of New York Department of Information Technology and Telecommunications. (pa, ) (Entered: 11/19/2004) |
| 08/06/2004 | | Minute Entry for proceedings held before Judge Louis L. Stanton : Pretrial Conference held on 8/6/2004; adjourned to 9/24/04 at 11:30.. (cd, ) (Entered: 08/12/2004) |
| 07/06/2004 | 9 | SCHEDULING ORDER: Initial Conference set for 8/6/2004 02:30 PM before Judge Louis L. Stanton. (Signed by Judge Louis L. Stanton on 7/6/2004) (jsa, ) (Entered: 07/07/2004) |
| 07/01/2004 | 10 | FIRST AMENDED COMPLAINT amending 1 Complaint against City of New York, City of New York Department of Information Technology and Telecommunications.Document filed by Global Network Communications, Inc.. Related document: 1 Complaint.(sac, ) (Entered: 07/12/2004) |
| 12/19/2003 | | Set Answer Due Date purs. to 8 Stipulation and Order,, as to City of New York answer due on 2/10/2004; City of New York Department of Information Technology and Telecommunications answer due on 2/10/2004; Gino P. Menchini answer due on 2/10/2004; Stanley Shor answer due on 2/10/2004., Status Report due by 1/13/2004. (pl, ) (Entered: 01/07/2004) |
| 12/19/2003 | 8 | STIPULATION ; that the motion for preliminary injunction, and the scheduling thereto, is adjourned sine die; the dft's agree not to remove public pay telephones (PPT's) operated by the plaintiff currently located at 410 Layfayette Steet (2 PPT's ) and 110-112 West 44th Street (4PPts) for the period up to and including 1/20/04. In addition, the dft's agree that if any notices to remove PPTs are sent ot the plaintiff during this period, they shall not take effect until after 1/20/04. Status Report due by 1/13/2003. dft's time to respond to the complaint shall be extended to 2/10/04 (Signed by Judge Louis L. Stanton on 12/16/03) (pl, ) (Entered: 01/07/2004) |
| 12/03/2003 | | Set/Reset Scheduling Order Deadlines: dft's Responses to plaitniffs motion for a preliminary injunction is due by 12/18/2003 Replies due by 1/7/2004. Status Report due by 12/16/2003. (pl, ) (Entered: 12/11/2003) |
| 12/03/2003 | 7 | STIPULATION AND ORDER:that the hearing scheduled for the purpose of taking the testimony of Ronald J. Massie, shall be adjourned form 12/4/03 at 12:00 p.m. to 1/8/04 @10:30 A.M.; dfts agree not to remove public pay telephones (PPTs) operated by the plaintiff currently located at 410 Lafayette St. (2PPts) and 110-112 West 44the Street (4PPTs for the period up to and including 12/30/03. In addition, the dfts agree that if any notices to remove PPTS are sent to the plaintiff during this period, they shall not take effect until after 11/30/03. the dfts shall serve and file their opposition papers to plaintiff's motion for a preliminary injunction on or before 12/18/03; plaintiff's reply, if any, shall be served and filed by 1/7/04. In the event that defendants' cross move to dismiss the complaint, the scheduling may be modified upon application to the Court. the parties shall report to the Court the status of settlement negotiations on 12/16/03, and may request such addition relief, at that time; the dft's time to respond to plaintiff's expedited discovery request, as modified by the Court at a conference held on 11/18/03, shall be extended to 12/16/03; dfts' time to respond to the complaint shall be extended to 12/31/03 (Signed by Judge Louis L. Stanton on 12/2/03) (pl, ) (Entered: 12/11/2003) |
| /21/2003 | | CASHIER'S OFFICE REMARK on in the amount of $50.00 paid on 11/21/03 Receipt #491992. (sac) (Entered: 11/22/2003) |
| /18/2003 | | PRETRIAL CONFERENCE held before Judge Louis L. Stanton . (ae) (Entered: |

| | | |
|---|---|---|
| | | 11/21/2003) |
| 11/12/2003 | 6 | fld Unsigned Order to Show Cause for TRO and Preliminary Injunction . (cd) (Entered: 11/14/2003) |
| 11/06/2003 | 5 | Memo endorsed on motion by plaintiffs; granting plaintiffs requests that for Robert G. Scott, and T. Scott Thompson of Cole, Raywid & Braverman, LLP to appear pro hac vice on behalf of plaintiffs . ( signed by Judge Louis L. Stanton ); forwarded this document to the attorney admissions Clerk. (pl) (Entered: 11/11/2003) |
| 11/05/2003 | | Status Conference set at 11:30 11/25/03 before Judge Louis L. Stanton . (cd) (Entered: 11/10/2003) |
| 11/05/2003 | | Motion Hearing before Judge Louis L. Stanton (cd) (Entered: 11/10/2003) |
| 10/22/2003 | 4 | ORDER, conference pursuant to FRCP 16(b) set for 1/16/04 at 11:30 a.m. in room 21C . ( signed by Judge Louis L. Stanton ); (kw) (Entered: 10/24/2003) |
| 10/14/2003 | 3 | AFFIDAVIT OF SERVICE of summons and complaint as to Stanley Shor by Christopher Merolla on 10/10/03 . Answer due on 10/30/03 for Stanley Shor . (db) (Entered: 10/17/2003) |
| 10/14/2003 | 3 | AFFIDAVIT OF SERVICE of summons and complaint as to Gino P. Menchini by Christopher Merolla on 10/10/03 . Answer due on 10/30/03 for Gino P. Menchini . (db) (Entered: 10/17/2003) |
| 10/14/2003 | 3 | AFFIDAVIT OF SERVICE of summons and complaint as to Dept. of Info Tech. by Christopher Merolla on 10/10/03 . Answer due on 10/30/03 for Dept. of Info Tech. . (db) (Entered: 10/17/2003) |
| 10/14/2003 | 3 | AFFIDAVIT OF SERVICE of summons and complaint as to City of New York by Madelyn Santana on 10/10/03 . Answer due on 10/30/03 for City of New York . (db) (Entered: 10/17/2003) |
| 10/07/2003 | 2 | RULE 7.1 CERTIFICATE filed by Global Network Comm. . (jjm) (Entered: 10/09/2003) |
| 10/07/2003 | | Magistrate Judge Henry B. Pitman is so designated. (jjm) (Entered: 10/09/2003) |
| 10/07/2003 | 1 | COMPLAINT filed. Summons issued and Notice pursuant to 28 U.S.C. 636(c). FILING FEE $ 150.00 RECEIPT # 487445. (jjm) (Entered: 10/09/2003) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01.11.2008 16:25:54 | | |
| PACER Login: | ny0001 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:03-cv-07934-LLS |
| Billable Pages: | 7 | Cost: | 0.56 |

Exhibit D

# General Docket
## US Court of Appeals for the Second Circuit

Second Circuit Court of
Appeals

INDIV

OPEN

Court of Appeals Docket #:        07-5184-cv
Nsuit : 3890              STATUTES-Other

Global Network Comm. v. City of New York        Filed  11/20/07

Appeal      SDNY (NEW YORK CITY)
from:

Case type information:

     Civil

     Private

     None

Lower court information:

    District:      03-cv-7934

    Trial Judge:   Louis L. Stanton

    MagJudge:

    Date Filed:     10/07/03

    Date order/judgement:    11/9/2007

    Date NOA filed:  11/20/2007

ee status: Paid

anel Assignment:

anel:

te of decision:

ior cases:  NONE

rrent cases NONE

ficial Caption 1/

INDIV

OPEN

........................................

cket No. [s] : 07-5184 -cv

obal Network Communications, Inc.,

Plaintiff-Appellant,

v.

The City of New York and City of New York Department of
Information Technology and Telecommunications,

Defendants-Appellees,

Gino O. Menchini, in his official capacity and Stanley
Shor, in his official capacity,

Defendants,


- - - - - - - - - - - - - - - - - - - - - - - - - - - -


Authorized Abbreviated Caption 2/
- - - - - - - - - - - - - - - - - - - - - - - - - - -
Docket No. [s] : 07-5184 -cv

Global Network Comm. v. City of New York
- - - - - - - - - - - - - - - - - - - - - - - - - -


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - -
./ Fed. R. App. P. Rule 12 [a] and 32 [a].
./ For use on correspondence and motions only.

Docket as of     January 08, 2008   10:06 pm                    Page    2

                                                         INDIV

                                                         OPEN

ino O. Menchini

efendant

:anley  Shor

:fendant

:ty of New York                    John  Hogrogian Esq.

fendant-Appellee                   [ LD n ]
                                   NYC Law Department

                                   100 Church St.
                                   New York , NY , 10007

                                   212-788-1027

:y of New York Department          John  Hogrogian Esq. (See above)
 Information Technology and
 fendant-Appellee                  [ LD n ]

INDIV

OPEN

Global Network Communications,   Joseph  Garland Esq.
Inc.
Plaintiff-Appellant              [ LD n ]
                                 Law office of Joseph P. Garland,
                                  Esq.
                                 275 Madison Ave.
                                 New York  , NY ,  10016

                                 212-213-1812

Docket as of   January 08, 2008  10:06 pm
                                              Page   4

                                           INDIV

                                           OPEN

11/20/07   Copy of notice of appeal and district court
           docket entries on behalf of  APPELLANT
           Global Network Communications, Inc.,  filed.
              [Entry date Nov 28 2007 ]  [AM]

11/20/07   Copy of receipt re: payment of docketing fee
           filed on behalf of  APPELLANT    Global
           Network Communications, Inc.,  Receipt #:
           E633400.
              [Entry date Nov 28 2007 ]  [AM]

11/20/07   Copy of district court judgment RECEIVED.
           [Entry date Nov 28 2007 ]  [AM]

11/20/07   Copy of district court opinion and order
           RECEIVED.  [Entry date Nov 28 2007 ]  [AM]

12/5/07    APPELLANT   Global Network Communications,
           Inc.,  Form C filed, with proof of service.
              [Entry date Dec  7 2007 ]  [NG]

12/5/07    APPELLANT   Global Network Communications,
           Inc.,  Form D filed, with proof of service.
              [Entry date Dec  7 2007 ]  [NG]

12/17/07   APPELLANT   Global Network Communications,
           Inc.,  disclosure letter pursuant to FRAP
           Rule 26.1 RECEIVED.    [Entry date Dec 17
           2007 ]  [AM]

12/17/07   Pre-Argument Conference Notice and Order
           from Stanley A. Bass, Scheduled For:
           Wednesday 1/2/08 @ 4:30 pm, Filed.   [Entry
           date Dec 19 2007 ]  [NG]

12/17/07   Scheduling order #1 filed. Record on appeal
           due  1/16/2008. Appellants brief due
           1/23/2008. Appellees brief due  2/22/2008.
           Ready week  4/7/2008. (SB)   [Entry date Dec
           19 2007 ]  [NG]

12/17/07   Appellant   Global Network Communications,
           Inc. motion for preliminary  injunction
           pending appeal filed with proof of service.
              [Entry date Dec 17 2007 ]  [AM]

12/18/07   Notice of appeal acknowledgment letter from
           John Hogrogian received.   [Entry date Dec
           20 2007 ]  [NG]

12/19/07   Appellee  City of New York, memorandum of
           law in opposition to motion for  injunction
           pending appeal filed with proof of service.

Docket as of   January 08, 2008  10:06 pm                Page    5

                                             INDIV

                                             OPEN

           [Entry date Dec 19 2007 ]  [AM]

12/20/07   Notice to counsel in re:ORDER filed 12/20/07
           denying motion for preliminary injunction .
           [Entry date Dec 20 2007 ]  [AM]

12/20/07   Certified copy of the order, filed 12/20/07
           issued to the district court, [informational
           only].   [Entry date Dec 20 2007 ]  [AM]

12/20/07   Order FILED DENYING motion  for injunction
           pending appeal by Appellant  Global Network
           Communications, Inc., endorsed on motion
           dated 12/17/2007. (Before: RR, C.J. by: JF)
           [Entry date Dec 20 2007 ]  [AM]

12/21/07   Proposed reply memorandum of law in support
           of the motion for injunction from  APPELLANT
           Global Network Communications, Inc.,
           received.   [Entry date Dec 26 2007 ]  [EJ]

12/21/07   Appellant   Global Network Communications,
           Inc. motion for injunction pending appeal to
           be heard by a full panel, and to file an
           oversized memorandum of law in support of
           the motion for preliminary injunction, filed
           with proof of service.   [Entry date Dec 26
           2007 ]  [EJ]

1/3/08     Mandate receipt returned from the district
           court.   [Entry date Jan  3 2008 ]  [YV]

1/3/08     Notice of appeal acknowledgment letter from
           Joseph Garland received.   [Entry date Jan
           7 2008 ]  [KR]

1/3/08     Scheduling order #2 filed. Appellees brief
           due  3/7/2008. Ready week  4/21/2008. (SB)
           [Entry date Jan  8 2008 ]  [CI]

1/8/08     Notice to counsel in re: Scheduling order #2
           filed 01/03/08.   [Entry date Jan  8 2008 ]
           [CI]

| PACER Service Center |
| --- |
| Transaction Receipt |
| 01/11/2008 16:04:56 |

| PACER Login: | hy0001 | Client Code: | |
|---|---|---|---|
| Description: | dkt report | Case Number: | 07-5184 |
| Billable Pages: | 5 | Cost: | 0.40 |

Exhibit E



THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**MICHAEL A. CARDOZO**
*Corporation Counsel*

**DIANA MURRAY**
Phone: (212) 788-1278
Fax: (212) 227-5648
e-mail: dmurray@law.nyc.gov

**By Fax  (212) 213-1816**

Law Office of Joseph Garland
275 Madison Avenue
Suite 420
New York, New York 10016

November 15, 2007

Re: Global Network Communications v. City
    03 Civ. 7934

Dear Mr. Garland:

I write in response to your November 13th letter.

By letter of October 16th, you were advised that the City will consider settlement discussions with Global permanently ended unless the City received, by Friday October 19, 2007, Mr. Hanft's express written confirmation that he is agreeable to the franchise term length proposed by the City in connection with those discussions, along with an explanation of why such a statement is consistent with your representations to the Court.  As explained in my October 16th letter, without such an express agreement to this essential element to any settlement, further settlement discussions would be futile.  See also my October 1st letter.  The October 16th letter also made clear that in order to assure that such an expression of agreement is made in good faith and does not merely constitute one statement directly contradicted by another, the City required, as a further prerequisite to any further settlement discussions, an explanation of how such an expression of agreement by Mr. Hanft is consistent with your August 24th letter to the Court, later incorporated in Global's motion for reconsideration, apparently representing that the term the City is proposing is not "economically feasible" for Mr. Hanft.

No such confirmation or explanation was provided as of October 19, 2007.  Your letter of November 13th letter also does not provide a basis for further settlement discussions.  The letter, from you as Global's counsel and not from Mr. Hanft or his representative, merely indicates that Mr. Hanft is "willing to consider" the franchise term described by the City and then only if the

City agrees to certain other terms. Furthermore, this ostensible "willingness to consider" still is directly contradicted, without clarifying explanation, by your representation to the Court that the term that Mr. Hanft now is ostensibly prepared to "consider" is infeasible. Your response is thus both untimely and wholly inadequate in both form and substance on multiple grounds and settlement discussions with Global have ended.

Of course, the City understands that any ultimate settlement of this action would involve additional terms and conditions requiring the parties' agreement. However, as the City repeatedly observed, settlement discussions in this case are futile if all parties are not prepared to accept at the outset the franchise term length described by the City. Given the absence of such acceptance, further settlement discussions are not in the City's interest and will not be entertained.

Sincerely yours,

s/

Diana M. Murray

Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

GLOBAL NETWORK COMMUNICATIONS, INC.,

                                    Plaintiff,           03 Civ. 7934 (LLS)

- against -

CITY OF NEW YORK and CITY OF NEW YORK
DEPARTMENT OF INFORMATION TECHNOLOGY
AND TELECOMMUNICATIONS,

                                    Defendants.

-------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR RECONSIDERATION AND TO VACATE JUDGMENT

LAW OFFICE OF JOSEPH P. GARLAND
Joseph P. Garland – JG0888
275 Madison Avenue, Suite 420
New York, New York 10016
(212) 213-1812

Attorneys for Plaintiff

# **Table of Contents**

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.  NEW FACTS .......................................................................................................... 2

III. ARGUMENT ........................................................................................................... 4

   1. The Court Relied in its Finding on a "Fact" of which there was No Evidence ............................... 4

   2. New Evidence Establishes a Further Violation of the TCA by the City ........................................ 8

IV. CONCLUSION ....................................................................................................... 12

2

# __Table of Authorities__

## __Cases__

*Doe v. New York City Dep't of Social Services*, 709 F.2d 782 (2d Cir. 1983) ............................... 4

*Henderson v. Metropolitan Bank & Trust Co.*, 2007 WL 2286412
(S.D.N.Y. Aug. 8, 2007) ...................................................................................................... 4

*In re Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 11 FCC RCD 20541 (Sept.1996) ................. 11

*Qwest Communications v. City of New York*, 387 F. Supp. 2d 191 (E.D.N.Y. 2005) ................... 7

*TCG New York, Inc. v. City of White Plains*, 305 F.3d 67 (2d Cir. 2002) .......................... 5, 6, 11

## __Statutes__

47 C.F.R. § 64.1330 .................................................................................................... 11

47 C.F.R. § 64.1330(a) ................................................................................................ 10

Local Civil Rule 6.3 ................................................................................................... 1, 2

rule 59(e) of the Federal Rules of Civil Procedure ....................................................... 1

Section 253, Telecommunications Act of 1996 ............................................................. 1

Plaintiff, Global Network Communications, Inc. ("Global"), by its attorneys, submits this Memorandum of Law in support of its motion pursuant to Local Civil Rule 6.3 for reargument and reconsideration of the Court's August 30, 2007 decision granting the motion for summary judgment filed by Defendants City of New York ("City") and the City of New York Department of Information Technology and Telecommunications ("DoITT") (jointly "Defendants" or the "City") and under rule 59(e) of the Federal Rules of Civil Procedure to vacate the judgment entered in this Action.

# I.  **PRELIMINARY STATEMENT**

Extraordinary circumstances in this case justify the making of the motion and compel its being granted.  New evidence was brought to the Court's attention before summary judgment was granted, but after the parties' papers were submitted, which shows that the City's offered rationale for excluding Global from competition in the marketplace is untrue, and that the City has erected a barrier to Global's exiting the business (and to a potential acquirer's entry) in violation of section 253 of the federal Telecommunications Act of 1996 ("TCA").[1]  This significant new evidence was apparently overlooked by the Court.

In addition, the Court's conclusion overlooked the complete absence in the record of any evidence that with respect to Global's public pay telephones on the sidewalks of the City (the "PPTs") Global failed or might fail to make the payment of those fees payable to the City.  Yet,

---

[1] These facts were set forth most recently in the letter of Joseph Garland, Esq., counsel for Plaintiff, dated August 24, 2007.  (*See* Exhibit 1, to the Declaration of Joseph Garland, dated September 27, 2007 ("Garland Decl.").)

1

the Court predicated its grant of summary judgment under section 253(c) of TCA on the implication that Global would not make payments to the City, which justified the City's denial of a franchise, and which, in turn, precluded Global from being able to compete on the City's sidewalks (including against Verizon, the former monopolist and the dominant firm in the market).

Finally, the Court overlooked the evidence that the City has granted Verizon such a subsidy as to render its, the City's, charging any fees to any other PPT-operator non-neutral and, thus, a further violation of section 253(a).

## II. <u>NEW FACTS</u>

Global has sought to sell its PPTs on the City's sidewalks to a company owned by Jeffrey Hanft. This would allow Global to exit the competitive market for the provisioning of payphone service on the City's sidewalks on a competitively neutral basis under TCA.[2] Mr. Hanft's desire for his company to purchase the PPTs was predicated on his ability to obtain permits for them from the City and a payphone franchise from the City.   (Declaration of Jeffrey Hanft dated September 17, 2007).[3]  (The franchise and permits are the *sine qua non* under the City's laws, though not necessarily under TCA, for a payphone to be operated on the City's sidewalks.  Pay-

---

[2] This exit is caused by the City's denial to Global of a franchise, which this Court has upheld based on issues of character of the present owner of Global, even though there is nothing in the text or legislative history of TCA which defines the alleged character of a provider's owner as an element of the traditional management of the right of way, such as, perhaps, siting criteria might be.

[3] Because the basis of this motion is in part "new evidence," Global seeks the Court's leave under Local Civil Rule 6.3 to submit the accompanying declarations of Joseph P. Garland and Jeffrey Hanft.

2

phone competition on the City's sidewalks under TCA has two key elements – service providers and their units of production, payphones.)  The City represented to this Court that such a franchise is available to a new entrant – such as Mr. Hanft – interested in entering the market for PPTs on the City's sidewalks.  As the Court was informed in writing on August 24 (*see* Garland Decl., Exh. 1), this representation was and is false.

Before he submitted paperwork to DOITT applying for a franchise for the Global PPTs he intended to purchase, Mr. Hanft was told by the City that he would be subjected to particularly strenuous scrutiny were he to pursue his efforts to proceed with the acquisition of Global assets.  Notwithstanding this sentiment, Mr. Hanft submitted the information requested by the City and completed the formal application requested by the City to facilitate the purchase of those assets, which Mr. Hanft understood included obtaining a franchise.  (Hanft Decl., ¶ 13.)

In the meantime, Mr. Hanft was contacted by the City's Department of Investigation ("DOI"), which asked that he submit to an interview (allegedly as part of the process that would permit Global to exit the market at issue in this action on an alleged competitively neutral basis).  Mr. Hanft willingly submitted on May 29, 2007 to this "interview."  Although the "interview" purported to be under the auspices of DOI, the chief speaker on behalf of the City was Stanley Shor of DoITT.[4]  (Hanft Decl., ¶ 8.)

The essence of Mr. Shor's comments on May 29 was that DoITT would give no assurance that a franchise would be granted to Mr. Hanft's company even if its application was favor-

---

[4] The interview was apparently tape-recorded.  Mr. Hanft requested a copy of that recording, but his FOIL request has been denied by DOI.  (Hanft Decl., ¶ 7.)

3

ably received and that even if Mr. Hanft's company was granted a franchise, DoITT could give no assurance that it would extend beyond 2010, and, in particular, that DoITT did not know whether it would grant the four-year extension permitted in the existing franchise agreement to any entity, let alone Mr. Hanft. (Hanft Decl., ¶ 10.) Mr. Hanft has since submitted the additional information requested by the City. (Hanft Decl., ¶ 13.) (This information was communicated to the Court during the pendency of the motion for summary judgment, together with a request of the Court that the new developments and facts related thereto be considered with respect to the then-pending motion of summary judgment. (Garland Decl. Exh. 1).)

## III.  **ARGUMENT**

As Judge Scheindlin recently noted, among the grounds for a motion for reconsideration are "'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Henderson v. Metropolitan Bank & Trust Co.*, 2007 WL 2286412, at *2 (S.D.N.Y. Aug. 8, 2007) (quoting *Doe v. New York City Dep't of Social Services*, 709 F.2d 782, 789 (2d Cir. 1983)). At bar, the Court (i) made a clear error in its acceptance as a controlling fact something that is nowhere reflected in the record before it, and (ii) overlooked new evidence, arising while the motion was pending, and brought to the Court's attention before it issued its decision.

## 1.  **The Court Relied in its Finding on a "Fact" of which there was No Evidence**

The Court granted the City's motion on the ground the City's concerns about Global's supposed ability and willingness to pay fees, based on a guilty plea of Global's principal, fell

4

within the so-called "safe-harbor" of section 253(c) of TCA.[5]  The Court did not address any issues as to the propriety of the City's actions under section 253(a), nor did the Court analyze the propriety of the invocation of section 253(c) when remedies less offensive to competition exist (such as divestiture by Global's owner of his ownership interest, or sale by Global of all of its assets on the City's sidewalks).  (Op., at 17-18.)

To buttress its decision, the Court quoted *TCG New York, Inc. v. City of White Plains*, in which the Second Circuit said that a transferee might properly be rejected by a municipality "on the basis of insufficient assurance of ability to pay reasonably imposed fees for use of rights-of-ways."  305 F.3d 67, 82 (2d Cir. 2002) (*quoted at* Op., at 15).  But the Court overlooked the absence of any evidence that such assurances would not be and could not be forthcoming from Global.  And it also overlooked the very next sentence from the Second Circuit, "However, because White Plains cannot legitimately turn away 'any' provider of telecommunications services, section 253(a), a provision of sweeping breadth whose main purpose is to force each new telecommunications provider to receive White Plains's blessing before offering services, even if its services represent no change from the services offered and burdens imposed by a prior franchisee, is invalid."  305 F.3d at 82.

Thus, the Court overlooked the absence of any evidence in the record that Global had not

---

[5] The Court equated the past conduct of Global's owner in defrauding private property owners of parts of commissions with Global's ability or willingness in the future to pay obligations to the City, if Global obtained a franchise.  The Court said, "[T]he record shows that Global *cannot be expected* to pay its obligations to the City in a timely or honest manner."  (Op., at 15 (emph. added).)  The Court did not describe as the basis of its decision that Global had defrauded the City of any payments it might otherwise be entitled to since 1996.

properly and timely made all payments to the City due under the terms of the registration of

Global's PPTs from 1996 to 2006, when Global disputed the City's statement of amounts due.

Nor was there anything in the record to evidence that Global could not or would not properly and

timely make all payments to the City.  Moreover, there is nothing in the record to suggest that if

proper and timely payment was, indeed, the City's *bona fide* concern that there were means well

short of an outright prohibition under TCA -- and the elimination of a competitor and units of

production from a market – to secure the City's *legitimate* interests, such as the posting of a bond

or a standby letter of credit.  In fact, in an amended and restated franchise agreement entered into

between the City and Qwest Communications Corp., which only became publicly available after

the motion for summary judgment in this Action was fully briefed, related to the installation and

operation of fiber-optic and other cables on the City's public rights-of-way, (Garland Decl., Exh.

2), the City agreed that Qwest would pay at the outset as a flat rate the entire "compensation to

the City for the use of the Inalienable Property . . . through the end of the term contemplated in

this Agreement." Said term would run to 2010. (Exh. 2, § 3.2, 3.4 (at p.8).)

In this connection, the Court overlooked the fact that Global already paid some $500

thousand to the City in registration fees.  This was "assurance" – to use *TCG*'s phrase – that

Global would be able to pay and would in fact pay additional fees going forward.  Nothing in the

record suggested that this money was somehow tainted.  Nothing in the record suggested that the

City did not gladly accept this money.

While the Court makes reference to whether Global has overpaid the City (Op., at 15), it

overlooks the core issue raised by Global concerning the City's entitlement to any fees what-

soever.[6] Global did not assert that the City would not be permitted to assess reasonable fees. It asserted that the fact that the City essentially permitted Verizon Communications to avoid paying any fee via its allowance of significant subsidies to Verizon's payphone operations meant that these fees were not neutral – as the Court recognizes it must be, (Op., at 14 n.6). Because the Court's conclusion that the City's conduct fell within section 253(c)'s safe harbor is predicated entirely on issues related to Global's payment or non-payment of fees, it was incumbent on the Court to consider this argument. It overlooked it.

This was a challenge not to the City's assessing charges against Global, but to the City's assessing charges against any PPT-operator. In a case in the Eastern District of New York, Qwest Communications stopped paying the City's broadband franchise fee after the *TCG v. White Plains* decision and sued to get a refund. *Qwest Communications v. City of New York*, No. 04-CV-3019 (E.D.N.Y). In that case, Judge Block denied the City's motion to dismiss. 387 F. Supp. 2d 191, 194 (E.D.N.Y. 2005) ("the Court concludes that the gross-revenue-fee provision does not fall within the safe-harbor provision of section 253(c) because the fee requirement has been applied on a discriminatory basis."). And while the City entered into a restated and amended franchise agreement with Qwest to settle the *Qwest* Action, both parties reserved the

---

[6] The Court's characterizes as "speculation" Global's assertion that it overpaid the City. (Op., at 15.) In this the Court appears to have overlooked the distinction made by Global between whether it overpaid the City as a result of the City's mis-count of the number of PPTs subject to registry fees and whether the City was entitled to charge any fees at all given the Verizon subsidy. There is no speculation that Global paid a significant amount to the City for its PPTs and that Global raised as a factual issue whether the City allowed Verizon to effectively pay nothing. As noted in the text, the Court did not address whether as a result the City has the right to seek a fee from Global at all.

7

right to assert that, as to the City, its franchise scheme comported with federal law and, as to Qwest, that it did not. (Garland Decl., Exh. 2, §§ 10.19, 10.20.)

Thus, as Global argued and the Court overlooked, if the City cannot satisfy its burden that the $500 thousand that it has already collected did not violate section 253(c), then Global would be entitled to credit against any future lawful fee, which obviously would exceed what would be owed because there is only three years left on the franchise. And until the City could establish the lawfulness of any fee, it may not charge one given its decision to allow Verizon to occupy the public rights-of-way without, effectively, making any payments. Verizon makes payments, but the required compensation is not competitively-neutral and non-discriminatory because Verizon receives a subsidy, while Global and many other competitors did not and do not. Finally, before the City could even consider Global's history, it has to establish that a lawful fee would exceed the $500 thousand that Global already paid since it was not entitle to demand the $500 thousand.

## 2. New Evidence Establishes a Further Violation of the TCA by the City

Separately, the Court overlooked the developing evidence that implicated the rationale offered by the City for Global's rejection, and adopted by the Court, and that evidences that the reason the City rejected Global had nothing to do with its principal's character or conduct; but rather, a desire to eliminate competitors, principally to the former Bell monopolist (now the dominant firm), and to eliminate units of production (which principally benefits the former monopolist's market share and market power). Such a rationale expressly violates section 253(a) and would not survive a proper section 253(c) review.

It is well-settled that a barrier to exit, as well as a barrier to entry, violates section 253(a). In light of the developments brought to the Court's attention on Aug. 24, (*see* Garland Decl., Exh. 1), not only has the City barred Global's entry into the market, it also is effectively barring its exit on a competitively neutral basis. In addition, the City is erecting barriers to Mr. Hanft's purchase of the Global assets. The result of the City's recent conduct, as illuminated by DoITT's own official, Stanley Shor, (Hanft Decl., ¶¶ 10-12), is the barring of a new entrant from coming into this market, and from enhancing competition in this market. The result, in other words, is a violation of section 253(a). As it bears on Global, it also evidences that the so-called invocation of the "safe harbor" defense due to Global's pedigree is simply untrue, and, in all events, the disposition of the motion for summary judgment should be reconsidered.

Under section 253(a), a municipality may not create barriers to entry, or to exit, from a telecommunications market. The City asserts – and the Court accepted – that the denial of a franchise to Global because of its owner's pedigree fell within section 253(c)'s safe-harbor. Global maintains that the City's rationale is, as a matter of fact, untrue, as evidenced by the new developments described to the Court on Aug. 24. Notwithstanding this, section 253(c) can have no role with respect to whether the City's denial of the opportunity to Global to sell its assets is prohibited by section 253(a). The City has done nothing to challenge Mr. Hanft's *bona fides*, or his ability to pay the City money as and when due, except insofar as it has implied since January 2007 that it would not approve anyone that wished to acquire Global's assets. Indeed, this intransigence evidences that the City's objective with respect to Global, whether entering or exiting, is not to allow competition, but to discourage it, regardless of the *bona fides* of the competi-

9

tor. In other words, its treatment of Global reflects a motivation to stifle competition, rather than a concern that it won't receive its money.

In the Opinion, the Court refers to a regulation of the Federal Communications Commission that reflects the FCC's concern about localities erecting or maintaining barriers to entry or exit and thereby maintain the *status quo* of City-preferred operators. (Op., at 18-19 (citing, and quoting, 47 C.F.R. § 64.1330(a)).) The Court wrote, however, "The City's denial of a franchise to Global has nothing to do with 'government regulation of prices.' Nor does it reflect the type of 'regulatory barriers to entry and exit' contemplated by the FCC regulation. An isolated refusal to deal with an applicant known for payment defaults and the defrauding of payees is not a 'regulatory barrier to entry and exit.'" (Op., at 19 (quoting FCC Reg.).)

In its conclusion, the Court considered only the denial of the franchise to Global. It did not address the barrier to exit imposed by the City's conduct related to Mr. Hanft. That conduct is unquestionably a violation of these regulations and of the statute itself.

In fact, (i) Mr. Hanft's company could not obtain a payphone franchise pursuant to NYC Council Resolution 2248 (LU No. 1255) of 1997 (the "1997 Authorizing Res.") because the ability of the City to award a payphone franchise thereunder expired by operation of the express terms of the 1997 Authorizing Res.; and (ii) DOITT never intended to issue a Request for Proposals to Mr. Hanft's company (or to any other new entrant) to respond to in order to obtain a Payphone Franchise, pursuant to NYC Council Resolution 1043 (LU No. 423A) of 2003, as amended by NYC Council Resolution 502 of 2004 (the "2003/04 Authorizing Res."), which is the currently existing City legislation under which any new entrant, such as Mr. Hanft's compa-

ny, could enter the market for the provisioning of payphone service on the City's sidewalks. In short, the developments laid before the Court on Aug. 24 evidence that the City has now erected a complete barrier to entry.

The City is not offering Mr. Hanft's company the ability to purchase in an economically-feasible way the PPTs and operate them in the only way that would be meaningful and lawful – with permits under a franchise issued pursuant to the 2003/04 Authorizing Resolution.

The City is simultaneously creating a barrier to entry (as to Mr. Hanft's company) and to exit (as to Global) from the market for the provisioning of payphone services on the sidewalks of the City, which is a federally protected public right of way, under the Telecommunications Act of 1996, particularly, section 253, which is, ironically, entitled, "Removal of Barriers to Entry." See Orders of the Federal Communications Commission; *In re Implementation of the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 11 FCC RCD 20541 (Sept.1996) ¶¶ 2, 59, and 11 FCC RCD 21233 (Nov. 1996) ¶¶ 139-140. *See also*, 47 C.F.R. § 64.1330. Defendants' conduct is also at odds with the holding of the Second Circuit in *TCG v. City of White Plains* and, more importantly, of section 253 of the TCA.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, the Court should grant Global's motion for reconsideration and, upon such reconsideration, deny the City's motion for summary judgment.

Dated:  September 27, 2007

Respectfully submitted,

LAW OFFICE OF JOSEPH P. GARLAND

By: _____

Joseph P. Garland – JG0888
275 Madison Avenue, Suite 420
New York, New York 10016
(212) 213-1812

Attorneys for Plaintiff

12

Exhibit G

## MEMORANDUM ENDORSEMENT

Global Network Communications, Inc. v. City of New York et al., 03 Civ. 7934 (LLS)

On plaintiff Global Network Communications, Inc.'s motion pursuant to S.D.N.Y. Local Civ. R. 6.3 and Fed. R. Civ. P. 59(e) for reconsideration of the Court's Opinion and Order of August 30, 2007 granting defendant City of New York's motion for summary judgment and dismissing Global's claims, the Court adheres to that Opinion and Order.

To the extent Global's motion seeks alteration of that judgment on the grounds on which it was submitted to the Court, and on which it was opposed, the Court's determination is unchanged, for the reasons set forth in the Opinion.

To the extent the motion seeks leave to serve a supplemental complaint setting forth the new claim that the defendants are preventing Global from exiting and Mr. Hanft from entering the market, it is denied. Although that claim was mentioned in conferences before briefing of the summary judgment motion was complete, and in a letter to the Court thereafter in which Global's counsel sought a pre-motion conference for leave to assert it in an amended pleading, (see Garland Ltr. August 24, 2007 at 3), it has never been presented in a proposed pleading, and its facts may not be ripe. It would require discovery into new facts, exploration of new legal issues (which perhaps should be referred to the Federal Communications Commission) and the litigation of a complex separate claim which did not even exist when the issues raised in the summary judgment motion were being prepared, presented, decided, appealed, remanded, resubmitted and at last decided in the form of the summary judgment motion. Proper administration calls for entry of judgment on those issues, so they can be finally laid to rest. That would be frustrated by accepting new claims which would require further litigation in this case.

The proper course is for the new claim to be litigated separately. Indeed, Global's lawyer has already "been informed that Mr. Hanft and his company will commence their own action in light of the imposition of this barrier to their entry, if they do not join Global." (Garland Ltr. at 3.)

In *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738 (7th Cir. 1985), the district court denied plaintiff's motions to supplement its complaint "because their grant would of necessity require new and lengthy discovery and thus would prolong the litigation" and the question "would be more appropriately resolved in a supplemental proceeding." *Id.* at 741. The Seventh Circuit affirmed: "because supplementation would raise new issues, would of necessity require new and further discovery, and postpone the impending trial, we hold that the court did not abuse its discretion." *Id.* at 743.

For these reasons, the motion for reconsideration is denied.

Dated: November 8, 2007
       New York, NY

                              *Louis L. Stanton*
                              LOUIS L. STANTON
                              U.S.D.J.

MEMORANDUM ENDORSED @ 9/13/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

GLOBAL NETWORK COMMUNICATIONS, INC.,

                               Plaintiff,

   - against -

CITY OF NEW YORK and CITY OF NEW YORK
DEPARTMENT OF INFORMATION TECHNOLOGY
AND TELECOMMUNICATIONS,

                             Defendants.

--------------------------------------------------------------X

03 Civ. 7935



**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECONSIDERATION AND TO VACATE JUDGMENT**

LAW OFFICE OF JOSEPH P. GARLAND
Joseph P. Garland – JG0888
275 Madison Avenue, Suite 420
New York, New York 10016
(212) 213-1812

Attorneys for Plaintiff

Exhibit H



### THE CITY OF NEW YORK
### DEPARTMENT OF INFORMATION TECHNOLOGY &TELECOMMUNICATIONS
Paul J. Cosgrave, Commissioner

Stanley Shor
*Assistant Commissioner*
*Franchise Administration*

November 16, 2007

VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED & FACSIMILE
70020860000688861161
FAX: 718-328-1193

Ronald E. Massie
Global Network Communications Inc.
1080 Leggett Ave.
Bronx, New York 10474

Re:  Public Pay Telephones (PPTs) operated on City property without permits

Dear Mr. Massie:

     This letter serves as notice that Global Network Communications must remove the following PPT(s) located on the streets, sidewalks and other inalienable property of the City of New York ("City") that are owned, operated and maintained by Global Network Communications.  Recent inspections conducted by the Department of Information Technology and Telecommunications (DoITT) have identified the following as non-permitted PPTs:

| Building Number | Street Name | Phone Number | Borough | CB |
|---|---|---|---|---|
| 158 | Fulton Street | 212-587-1024 | Manhattan | 1 |
| 158 | Fulton Street | 212-587-1197 | Manhattan | 1 |
| 338R | East 11 Street | 212-254-5898 | Manhattan | 3 |
| 310 | East 11 Street | 212-614-9408 | Manhattan | 3 |
| 176 | Bleecker Street | 212-254-7353 | Manhattan | 2 |
| 176 | Bleecker Street | 212-614-9016 | Manhattan | 2 |
| 654 | 8 Avenue | 212-921-7870 | Manhattan | 5 |
| 654 | 8 Avenue | 212-921-2159 | Manhattan | 5 |
| 837 | 6 Avenue | 212-239-6070 | Manhattan | 5 |
| 605 | 6 Avenue | 212-741-6113 | Manhattan | 4 |
| 2369 | 2 Avenue | 212-534-4835 | Manhattan | 11 |
| 115 | 2 Avenue | 212-420-8409 | Manhattan | 3 |
| 451 | 10 Avenue | 212-643-9012 | Manhattan | 4 |
| 1110 | 1 Avenue | 212-755-7435 | Manhattan | 8 |

Pursuant to Section 23-402 of the New York City Administrative Code (the "Code"), no PPT shall be installed, operated or maintained on, over or under any street or any other inalienable property of the City without a permit thereof. DoITT's search of its records has uncovered no permit(s) for your company at the location(s) cited above. Consequently, Global Network Communication's PPTs are in violation of Section 23-402, and are subject to removal by DoITT pursuant to Section 23-408(i)(1)(aa) of the Code and Section 6-36 (c) of Title 67 of the Rules of the City of New York (the "rules"). Section 6-36 (c) of the Rules provides that Global Network Communications has five (5) business days from the date of this letter to remove said non-permitted PPTs from City Property, or to provide DoITT with written evidence that said PPTs are permitted, or do not require permits.

DoITT's records also reflect that Global Network Communications has failed to pay fees required under Section 6-24(d) of the Rules for installing, operating or maintaining PPTs on, over or under any street or any other inalienable property of the City. Thus, the PPTs are subject to an order of removal and/or removal additionally pursuant to Section 6-26 (b)(iv).

Global Network Communications has thirty (30) days from the date of removal of its PPTs by the City to recover the PPTs, or it will be deemed abandoned pursuant to Section 23-408(k) of the Code and will be auctioned by the City. The PPT(s) may be released pursuant to Section 23-408 upon payment of the cost of removal, repair and restoration work, storage and administrative expenses incurred by DoITT as a result of the violation. Before DoITT will release the PPT(s), Global Network Communications will need to present proof of ownership including, but not limited to, a bill of sale, or keys to open the coin box. If an individual other than the owner comes to collect the PPTs, that individual must have written and notarized authorization from the owner on company letterhead that the PPTs may be released to said authorized representative, and that said authorized representative may accept service of Notice of Violation ("NOV").

No PPTs will be released without photo identification. Payment must be made by certified check, money order, bank check, or other form of negotiable instrument acceptable to DoITT.

Please address all requests for an appointment to recover the PPTs, or questions concerning form of payment, or other issues, to Jerry Eskowitz at 212-788-6555. All such request must be made in writing.

Sincerely,

Stanley Shor

c:    *W. Kalish, D. Murray, J. Eskowitz*

Exhibit I



*STANTON, J.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
GLOBAL NETWORK COMMUNICATIONS, INC.,                        :
                                                            :
                                    Plaintiff,              :
                                                            :
        - against -                                         :
                                                            :
CITY OF NEW YORK and CITY OF NEW YORK                       :
DEPARTMENT OF INFORMATION TECH-                             :
NOLOGY AND TELECOMMUNICATIONS,                              :
                                                            :
                                    Defendants.             :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12|13|07

07 Civ. *11209 (4A)*

ORDER TO SHOW CAUSE
FOR PRELIMINARY
INJUNCTION AND
TEMPORARY
RESTRAINING ORDER

Upon the upon the declaration of Ronald E. Massie dated December 13, 2007 and

the declaration of Joseph P. Garland dated December 13, 2007, and upon all of the prior

proceedings herein, it is:

ORDERED, that the above-named Defendants show cause before this Court, at

Room ____, United States Courthouse, 500 Pearl Street, in the City, County, and State of

New York, on _____, 2007, ____ at o'clock in the ____noon thereof, or

as soon thereafter as counsel may be heard, why an order should not be issued pursuant to

Rule 65 of the Federal Rules of Civil Procedure enjoining Defendants and each of them, as

well as any person acting on behalf of either of them during the pendency of this action

from taking any action to remove, or force the sale or removal of, any of Plaintiff's public

pay telephones on the public rights-of-way within the City of New York pending the

conclusion of this Action; and it is further

ORDERED that, sufficient reason having been shown therefor, pending the hearing of Plaintiff's application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P., Defendants and each of them, as well as any person acting on behalf of either of them, are temporarily restrained and enjoined from taking any action to remove, or force the sale or removal of, any of Plaintiff's public pay telephones on the public rights-of-way within the City of New York pending the conclusion of the Court's hearing on Plaintiff's application for a preliminary injunction; and it is further

ORDERED that security in the amount of $_____ be posted by Plaintiff prior to _____, 2007, at _____ o'clock in the _____noon of that day; and it is further

ORDERED that personal service of a copy of this order and annexed declarations upon Defendants' counsel on or before _____ o'clock in the _____noon, December ____, 2007, shall be deemed good and sufficient service thereof.

DATED: New York, New York

ISSUED: December ___, 2007 at _____M

_____
United States District Judge

Having heard counsel on the record at a conference on December 13, 2007, the application for a TRO is denied.

Part I

December 13, 2007

2

Exhibit J

1

7crPglobC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   GLOBAL NETWORK COMMUNICATIONS,

4                   Plaintiff,

5           v.                          07 Civ. 11209 (LBS)

6   CITY OF NEW YORK, et anno,

7                   Defendants.

8   ------------------------------x

                                        New York, N.Y.
9                                       December 27, 2007
                                        11:30 a.m.
10
    Before:
11
                        HON. LEONARD B. SAND,
12
                                        District Judge
13
                            APPEARANCES
14
    LAW OFFICE OF JOSEPH P. GARLAND,
15          Attorneys for Plaintiff
    BY:  JOSEPH P. GARLAND
16
    MICHAEL A. CARDOZO, Corporation Counsel
17  for the City of New York
    BY:  JERALD HOROWITZ
18  BY:  BRUCE REGAL

19

20

21

22

23

24

25

7crPglobC

2

1          (In chambers)

2          MR. HOROWITZ:  Jerald Horowitz for Michael A. Cardoza,

3   Corporation Counsel.

4          MR. REGAL:  Bruce Regal also with the law department.

5          THE COURT::  I am afraid that there may have been some

6   misconception for this conference.  I had asked for a telephone

7   conference to deal with scheduling matters.

8          Understand that at this moment I have, as the only

9   papers I have in this case, a series of letters, a letter from

10  Mr. Garland dated December 21.  A letter from Mr. Horowitz,

11  dated December 26, another letter from Mr. Horowitz dated

12  December 24.  And another letter from Mr. Garland dated

13  December 26.

14         Has the defendant been served?

15         MR. GARLAND:  Yes, I served them before coming over

16  here this morning.

17         MR. HOROWITZ:  Your Honor, we don't know yet.

18         MR. GARLAND:  I will represent that I served both the

19  city and DOITT.  D-O-I-T-T, is the acronym for the other

20  department.

21         THE COURT:  Have you made any formal motion or

22  application other than these letters?

23         MR. GARLAND:  Yes, we have, your Honor.

24         THE COURT:  I don't have a copy of that.

25         MR. GARLAND:  I have a set of the papers, your Honor.

7crPglobC

1          THE COURT:  Well, that may -- would you get the file?

2     Because the parties seem to disagree.

3          I am the third Judge, right?

4          MR. GARLAND:  Second.  Second and a half, your Honor.

5          THE COURT:  What I want to do is set a timetable.  And

6     I understand you went before Judge Cote as a Part I matter?

7          MR. GARLAND:  Yes.

8          THE COURT:  And her endorsement denies a TRO?

9          MR. GARLAND:  That's right, your Honor.

10         THE COURT:  You have a matter before the Second

11    Circuit which is an appeal from a ruling made by Judge Stanton

12    who has declined an application to him to treat the present

13    matter as related to his previous decision.

14         And I understand the city takes a position that there

15    is --

16         MR. HOROWITZ:  -- no motion.

17         THE COURT:  That there is no motion.

18         MR. HOROWITZ:  There is no motion.

19         THE COURT:  Other than the letter.  The letter is a

20    motion.

21         MR. HOROWITZ:  The letter is an application,

22    theoretically.  If the Court would like to consider it as an

23    application, a premotion conference letter to schedule the

24    motion practice.  That's, you know, your Honor, we have no

25    objection to a reasonable schedule, on the PI motion.

4

7crPglobC

1          THE COURT::  I understand, Mr. Garland, your sense of

2    great urgency.  On the other hand, I don't think that that is a

3    reason not to proceed in a formal manner.

4          I will tell you what I need.

5          MR. GARLAND:  Yes, your Honor.

6          THE COURT:  I need a motion, I need a copy of the

7    pleadings before Judge Cote, and before Judge Stanton.

8          Now, somewhere I have, I think, as an attachment,

9    Judge Cote's endorsement to the application for an order to

10   show cause for preliminary injunction and temporary restraining

11   order.  And the endorsement does, the application for a TRO is

12   denied on -- was a date set by Judge Cote for a hearing on a

13   preliminary injunction?

14         MR. GARLAND:  No, your Honor.

15         THE COURT:  She said that would be before whatever

16   Judge is assigned to the case?

17         MR. GARLAND:  That's right, your Honor.

18         THE COURT::  She adhered to a very sound principle,

19   that when you are in Part I, you do, appropriately, do the

20   minimum that is required in the matter that's before the Judge

21   in Part I.

22         Just tell me the city's position with respect to the

23   relationship between the matter that was before Judge Stanton

24   and is now on appeal, and the matter that is before this Court

25   when a formal motion is made.

5

7crPglobC

1          MR. HOROWITZ:  Your Honor, they are related cases.  We

2     had thought, not to, with regard to you, but generally we

3     thought the case would be assigned to Judge Stanton as a

4     related case.  I don't know whether Judge Stanton was given

5     this case or not.  I never spoke to Judge Stanton.

6          I have to tell you, your Honor, I am not the attorney

7     who's been handling this matter.  It is Diana Murray, and she

8     is on vacation.

9          THE COURT::  And she returns on the 7th.

10          MR. HOROWITZ:  Yes.  Yes, they do appear to be

11     related.

12          THE COURT:  But is one dispositive of the other?

13          MR. HOROWITZ:  We believe that there may be collateral

14     estoppel arguments to be made based upon the prior case.

15          THE COURT::  For me to rule on that I am going to need

16     the papers in that case.

17          MR. HOROWITZ:  Absolutely, your Honor.

18          MR. GARLAND:  Just if I may, procedurally, your Honor,

19     we filed the case as potentially related.

20          Judge Stanton, on the day we filed the complaint and

21     the application for the TRO and preliminary injunction, was not

22     sure he would take it and sent us to the Part I Judge.  The

23     next day, the question was whether the new case was, in fact,

24     sufficiently related to the old case, that it was appropriate

25     that Judge Stanton take it.

7crPglobC

1          During that conference call Judge Stanton declined to
2    take the reference to the case to him and, therefore, the case
3    went back to the clerk's office for the process of being
4    randomly assigned.  And that's why it was ultimately randomly
5    assigned to you.  As soon as we found out that you were the
6    Judge on the case, we came forward.

7          THE COURT:  So I am going to need a formal motion.  I
8    am going to need a copy of the pleadings before Judge Cote and
9    before Judge Stanton.  And I like, you know, the application to
10   have read all of that before we have a hearing.

11         Now, you tell me how much time you are going to take
12   to assemble all this, including the briefs, including the
13   pleadings, the filing of the motion.

14         MR. GARLAND:  I can have the motion tomorrow, your
15   Honor.  I understood by filing the order to show cause, that we
16   did, in fact, have a motion subject to appearing before you,
17   the Judge assigned to the case.

18         THE COURT:  Is that in any of the materials you sent
19   me, the formal motion?

20         MR. GARLAND:  I understood that the order to show
21   cause would be the equivalent of the notice of motion.  And
22   that after Judge Cote denied the TRO, all that was required was
23   a scheduling of when the motion, ultimate motion for the
24   preliminary injunction, would be heard by the Court.

25         In connection with the order to show cause

7crPglobC

1     application, we did file supporting papers and we did file a

2     brief.

3          THE COURT:  You did?

4          MR. GARLAND:  In connection with those things.

5          THE COURT:  I don't have any of that.

6          MR. GARLAND:  Of course we will be happy to send it to

7     you.  I'll be happy to just create a formal notice of motion

8     with respect to that, your Honor.  That's why we were

9     refraining from doing that, because my understanding was that

10    we had sufficiently noticed the motion for a preliminary

11    injunction.

12         THE COURT:  The city takes a different position, and

13    it is silly to waste time and effort on it, it is easier to

14    create the motion.

15         Tell me a timetable you want to do all of this.  And

16    to get it to me in time so that I can read it prior to the

17    hearing.

18         MR. HOROWITZ:  Your Honor, the city does have a

19    separate application with regard to the scheduling.  There is

20    pending a motion by this plaintiff to the Second Circuit Court

21    of Appeals in which the plaintiff makes the same arguments that

22    they are making on this application for a preliminary

23    injunction now before the Second Circuit.

24         We would request that this Court stay the application

25    of the PI until we hear from the Second Circuit.  Otherwise we

7crPglobC

1    are going to have -- we may have inconsistent determinations.

2         MR. GARLAND:  Your Honor, with respect to the

3    application in the Second Circuit, obviously we make virtually

4    identical arguments with respect to the damage being done to

5    Global as a result of the city's behavior.

6         We are trying to stay the city from taking out of

7    circulation the phones -- those arguments are obviously the

8    same.  There is an -- even if -- the case before the Second

9    Circuit concerns the denial of a franchise to Global to operate

10   public phones on the city sidewalks.  That denial of the

11   franchise was 2005.  This action concerns efforts by Global to

12   sell its current assets to a third party, and the inability of

13   Global to do that because there is no franchises available to

14   operate those phones.  And this complaint is limited to the

15   allegation that the nonavailability of the franchise is

16   directly at odds with the telecommunications act and with the

17   FCC regulations promulgated pursuant hereto.  So the core

18   factual allegations are different between the two.

19        THE COURT:  If the Second Circuit granted the stay in

20   the matter before it, it would obviate any urgency about this

21   matter, would it not?

22        MR. GARLAND:  Of course it would, your Honor.  On the

23   other hand --

24        THE COURT:  Has the Second Circuit given you any

25   indication of the timing dealing with your application?

7crPglobC

1          MR. GARLAND:  We applied for a TRO with the Second

2    Circuit last Monday.  On Wednesday Judge Raggi, the matter was

3    assigned to her, and she denied our application for a TRO last

4    Wednesday.

5          On Thursday we made a motion to the Second Circuit

6    that our application for a preliminary injunction be

7    considered, because Judge Raggi denied the whole application,

8    including the preliminary injunction part of it.  We made a

9    motion to the Second Circuit that the motion be considered by a

10   full panel of the Court, by three judges.

11         So in terms of the timing of things, that is all we

12   know at this point.  We made that motion as soon after as we

13   heard Judge Raggi's ruling as possible.

14         So while the Second Circuit's grant of a motion for a

15   stay would obviously provide us the relief we required, if the

16   Second Circuit were to deny that application, then we would be

17   back at square one, and our assets would continue to be

18   diminished as the city continues to remove our assets.

19         If the city were to agree to refrain from doing

20   something until the Second Circuit rules, that would be a

21   completely different story.  But they consistently refuse to

22   refrain from taking action.  So we are working on two parallel

23   tracks.  But they are not necessarily -- raising the same

24   issues.

25         MR. HOROWITZ:  We disagree, your Honor.  In fact, you

7crPglobC

1    know, their brief talked about the fact that they couldn't sell

2    to -- they made arguments that they couldn't sell their assets

3    to another company.  And those arguments are in front of the

4    Second Circuit.  So they made the same arguments that they are

5    making here in this complaint to the Second Circuit.

6            THE COURT:  A different theory, one is, it deals with

7    the right of the entity that the, I don't know the name -- who

8    is it that wishes to sell --

9            MR. GARLAND:  -- Global.

10           THE COURT:  Global wishes to sell?

11           MR. GARLAND:  Correct, your Honor.

12           THE COURT:  Your client --

13           MR. GARLAND:  -- my client is Global.

14           THE COURT:  Wishes to -- there are two potential

15   purchasers?

16           MR. GARLAND:  Sometime ago there were two.  More

17   recently, however, and this is the specific allegation of this

18   complaint, and I understand your Honor doesn't have that, there

19   was a specific purchaser and an agreement was made to sell it

20   to him.  He complied with the obligations to the city to get a

21   franchise.  None has been awarded and, therefore, he can't buy

22   the assets.

23           We made a motion for reconsideration with Judge

24   Stanton, after he granted the summary judgment to the city, in

25   which we asserted that there were, in fact, issues of fact with

7crPglobC

1    respect to whether the city's denial of a franchise to the

2    potential buyer was within the framework of the existing

3    action.   And Judge Stanton, on the motion for reconsideration

4    said, no, that is essentially a completely different situation,

5    and that should be the subject of a separate action.

6          And then ultimately Judge Stanton, as I said, when we

7    had the conference call with him on the related issue, he said

8    that it was not sufficiently related to the prior action to

9    justify him taking the case.

10         So it seems pretty clear, at least in Judge Stanton's

11    mind, and, of course, we will send you the opinion, including

12    his two-page opinion, memo endorsement on the motion for

13    reconsideration, in Judge Stanton's mind they are different

14    theories, all under the umbrella of the obligations on the part

15    of the city with respect to regulating telecommunications

16    verses -- as reflected in pay phones on the rights of way.

17         THE COURT:   I am not really going to deal with the

18    substance of the arguments.   I don't know whether I agree with

19    my colleague Judge Stanton or not, I don't know enough about it

20    to opine on it.   Although it does, at least superficially, seem

21    that there would be efficiencies if they were dealt with in a

22    single proceeding before a single judge.

23         MR. HOROWITZ:   Your Honor, if I may, this transaction

24    that is alleged in the complaint was part of settlement

25    discussions before Judge Stanton.   So Judge Stanton knows all

7crPglobC

1   the facts of the complaint that is before this Court.  And we

2   believe it should be in front of Judge Stanton, but based on

3   the dichotomies, as you suggest.

4         MR. GARLAND:  We felt it belonged there as well.

5   Obviously Judge Stanton did not agree.

6         THE COURT:  And this Court functions in a way which

7   makes the determination by a judge in a matter that's not

8   related should not be before him definitive.

9         Tell me when you think you can have all these papers,

10  including the briefs, including whatever it is I need to

11  decide.

12        MR. HOROWITZ:  Your Honor, we are requesting that the

13  motion, this motion that the plaintiff wants to bring, be

14  stayed until the Second Circuit has ruled.

15        THE COURT:  I think that's one of the things which I

16  will hear and determine when I have all the papers before me,

17  with the date we are going to set.  Tell me.

18        MR. GARLAND:  Well, your Honor, our papers, our

19  initial papers are done.  And they are ready to go.  I don't

20  know -- granted, the attorney --

21        THE COURT:  -- all right, you have the burden.  And if

22  you feel that what you have put forth, or will put forth, is

23  sufficient for you to sustain your burden, I am certainly not

24  going to quarrel with that.

25        MR. GARLAND:  I understand that, your Honor.

7crPglobC

1  MR. HOROWITZ: Your Honor, we obviously have a number

2 of arguments, some of which we outlined here, some of which we

3 have yet to outline. And, in fact, that our, you know, the

4 attorney that has been handling this case won't be back until

5 January 7, we request at least until January 15 to get in

6 papers.

7  THE COURT: January 15.

8  MR. HOROWITZ: I would ask for more time, but that

9 would be the shortest amount of time that we would be able to

10 get papers in. It is a Tuesday.

11  THE COURT: All I have noted for January 15 on my

12 personal calendar, not the docket, is pay estimated income tax.

13  Now, plaintiff takes the position that if there is

14 going to be that delay, the city should agree that during the

15 interim period, that there will be no change of position.

16 Change of position includes what, removal of phones?

17  MR. HOROWITZ: Your Honor, we, my client will not

18 agree to it. We've been down a long road with this plaintiff.

19 There has been many proceedings in which --

20  THE COURT: Is this a theoretical objection? Is, in

21 fact, anything going to happen between now and January 15 in

22 terms of removal of telephones?

23  MR. HOROWITZ: Well, your Honor, I can't speak

24 definitively, but mostly because a lot of knowledgeable people

25 from my client are away this week. So it would be hard for me

14

7crPglobC

1    to tell you for sure.  But I believe that it is more than

2    theoretical.

3              MR. GARLAND:  I am not sure what is more than

4    theoretical, your Honor.

5              THE COURT:  Whether the refusal to agree not to remove

6    any phones between now and January 15 is a, based on the

7    assertion of the rights that the city believes it has, and

8    Gateway does not, or whether it is based on the fact that there

9    is actual removal scheduled between January -- now and January

10   15.  That was my question.

11             The city is telling me he really can't answer that

12   because that is something not within his control.

13             MR. GARLAND:  Your Honor, that puts us, the -- they

14   began removing phones over two weeks ago.

15             THE COURT:  You told all this to the Court of Appeals?

16             MR. GARLAND:  We did.

17             THE COURT:  And after being apprized of this, Judge

18   Raggi has declined to take any action.  And you now asked the

19   Second Circuit to do that?

20             MR. GARLAND:  That's correct, your Honor.  That's

21   separate and apart from this action, your Honor.  We filed the

22   action two weeks ago, on an emergency basis, because of what

23   the city was continuing to do.  And to delay the submission of

24   things until January 15 is, I think, inappropriate given the

25   danger, the ultimate damage which is being done to Global in

7crPglobC

1    this period.  And there is also a question -- there is -- the

2    extent to which we would like expedited discovery with respect

3    to preparing for a hearing on our application.

4         THE COURT::  What do you want by way of expedited

5    discovery?

6         MR. GARLAND:  The core issues concern whether, in

7    fact, there is a franchise available.  The number of

8    franchisees who exist, the nature of those franchisees, whether

9    they are still in business, whether they bought their sites and

10   number of phones --

11        THE COURT:  Now, you are telling me two different

12   things.  You are telling me you are ready, you said earlier

13   that the papers are adequate.  And now you are telling me that

14   before this Court makes any decision, you want to engage in

15   some discovery.  How much discovery do you think you can have

16   between now and this holiday weekend?

17        MR. GARLAND:  Just to be clear, your Honor, our view

18   is that the lack of a franchises, which we believe to be the

19   case, is an absolute violation of the telecommunications act.

20        When we appeared before Judge Cote, Judge Cote asked

21   the question of whether, how many firms there are that do have

22   franchises.  That raised the prospect that the Court may

23   determine that, well, there are a significant number of

24   potential acquirers.  And that, therefore, we do not face a

25   barrier to exiting the industry.  What we want to establish is

16

7crPglobC

1    the reality of those franchisees.

2        MR. HOROWITZ:  Your Honor, with all due respect to

3    plaintiff's application for discovery, this plaintiff, as we

4    pointed out in our letter, does not have standing to raise

5    claims of a purchaser who is not a party to this action, does

6    not have standing because they don't have a franchise to raise

7    telecommunications act claims.  The pay phones are illegal on

8    the streets.  We have the right to remove them.  Two Judges

9    have ruled in our favor based upon the fact that Judge Stanton

10   has denied summary judgment after a full set of papers and

11   reconsideration based upon their claim that they couldn't sell

12   to a purchaser.

13       But, your Honor, just understand the transaction that

14   they want to make, they wanted to sell to a third party.  They

15   are alleging in this complaint that this third party is not,

16   does not have the right to enter the pay phone business here in

17   the city.

18       THE COURT:  Now I am confused.  Gateway wishes to sell

19   it to a third party?

20       MR. HOROWITZ:  And they're asserting the third party's

21   rights here in this lawsuit.

22       THE COURT:  The third party's rights to be what?

23       MR. HOROWITZ:  To get a franchise.

24       THE COURT:  The third party is not asserting that

25   right?  Who is the third party?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7crPglobC

1      MR. GARLAND:  A gentleman named Jeffrey Hamm.  Our

2   allegation --

3      MR. HOROWITZ:  If I may finish my arguments.

4      Your Honor, because this third party is not a part of

5   this lawsuit, the Court can't grant the relief that the

6   plaintiff is requesting.  Therefore, this case should be

7   dismissed for failure to have an indispensable party.  It

8   should also be dismissed because the plaintiff lacks standing

9   to raise these claims, and if necessary we will need to make a

10  motion to dismiss, but certainly before any discovery takes

11  place, because they don't have any right to be here on this

12  complaint before this Court.

13     THE COURT:  I am not going to order discovery.  You

14  can argue that you are entitled to it, and we will deal with

15  that.

16     3:00 on Tuesday January 15.

17     Now, can I have all of these papers by 3:00 on January

18  11?  Hand delivered.  Tell whoever it is, who hand delivers the

19  papers, that my chambers will be notified.  Otherwise they will

20  sit in the mailroom.  That includes the briefs.

21     Also, I'd appreciate it if you would order a copy of

22  this transcript.

23     I think that's about all we can do at this juncture.

24     MR. GARLAND:  Again, your Honor, note my objection

25  that the City Corporation Counsel is a significant firm, is

18

7crPglobC

1    unable to provide a responsive papers until January 11.

2          THE COURT:  But you, sir, you have not furnished

3    papers that I need as well.

4          We are adjourned.

5          MR. GARLAND:  Thank you, your Honor.

6

7

8

9                              oOo

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25