UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

GLOBAL NETWORK COMMUNICATIONS, INC.,

                                        Plaintiff,

                                                    07 CV 11209 (LBS)

                    -v-

CITY OF NEW YORK; CITY OF NEW YORK
DEPARTMENT OF INFORMATION TECHNOLOGY
AND TELECOMMUNICATIONS.

                                        Defendants.

------------------------------------------------------------------------ x

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the City of New
                        York, Attorney for Defendants
                        By:    DIANA M. MURRAY
                               Assistant Corporation Counsel
                               100 Church Street
                               New York, New York 10007
                               (212) 788-1278

GABRIEL TAUSSIG,
ROBIN BINDER,
DIANA MURRAY,
        Of Counsel.

January 11, 2008

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT

POINT I

THE CLAIMS UNDER THE TCA ARE BARRED BY LACK OF STANDING AS WELL AS BY COLLATERAL ESTOPPEL .................................................... 6

A.   The lack of standing............................................................... 6

B.   Other grounds for dismissing the TCA claims .......................... 8

POINT II

PLAINTIFF IS NOT ENTTLED TO DAMAGES UNDER SECTION 1983......................................................................... 10

A.   The TCA does not creat rights. ............................................. 10

B.   The failure to award a franchise does not violate Global's rights .................................................................... 15

POINT III

PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED................................................. 18

CONCLUSION................................................................................... 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

GLOBAL NETWORK COMMUNICATIONS, INC.,

Plaintiff,

07 CV 11209 (LBS)

-v-

CITY OF NEW YORK; CITY OF NEW YORK
DEPARTMENT OF INFORMATION TECHNOLOGY
AND TELECOMMUNICATIONS.

Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Defendants the City of New York and its Department of Information Technology and Telecommunications (collectively, "the City") respectfully submit this memorandum in support of their cross-motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1)(6) and (7) and in opposition to the motion of plaintiff Global Network Communications, Inc. ("Global") for a preliminary injunction. Global, the owner of public pay telephones ("PPTs") illegally placed on City sidewalks, seeks to enjoin the City from relocating those payphones to a storage facility.

In 1959, the New York City Council ("the City Council") adopted Local Law 78 of 1959 ("Local Law 78") making it illegal to install or maintain a public pay telephone installation ("PPT") on City-owned street property without a license issued by the City's

Commissioner of Traffic, in his or her discretion, and establishing procedures for issuance of such licenses. Nevertheless, by the early 1990s companies had installed PPTs on City streets without licenses. See Global Network Communications, Inc. v. City of New York, 507 F. Supp.2d 365 (S.D.N.Y. 2007).

In 1995, the City Council adopted Local Law 68 of 1995 ("Local Law 68"), New York City Administrative Code ("Admin Code"), Sections 23-401 through 23-408, which provided a conditional amnesty procedure (the "amnesty procedure") allowing legalization of previously installed, unlicensed PPTs located on City streets, provided certain conditions were met, including, but not limited to, receipt by the owner of a "franchise" from the City. See Local Law 68, §6, Defs. Exh. A.[1] Upon notice of the denial of such a franchise application, a company must either remove its PPTs from City streets or within 60 days enter into an agreement to sell certain of its PPTs located on City sidewalks. In the event that a company does neither, the City may remove the PPTs from City sidewalks. After removal by the City, the payphone equipment itself remains retrievable by the company upon payment of the cost of removal. Id. In this sense, the removal of PPT's on City sidewalks upon denial of a franchise application is similar to the removal off illegally parked cars, thereafter recoverable from a storage facility.

After the enactment of New York City Local Law 68 of 1995, Global applied for a franchise to operate and legalize its PPT locations on City sidewalks. While its application was being considered, Global's chief executive and sole shareholder, Ronald Massie ("Massie"), admitted in criminal proceedings that Global relied on organized crime figures to further its

---

[1] All exhibits referred to herein are annexed to the Declaration of Diana Murray, dated January 11, 2008 ("Murray Decl.").

business and committed fraud against its business associates as well as involvement in other illegal activities. See Global Network Communications, Inc. v. City of New York, 507 F. Supp. 2d at 369-370. Based in part on these admissions, the City denied Global a franchise. Challenges to the franchise denial made by Global in both state and federal court were rejected. See decision in Global Network Communications v. Gino Menchini, Index No. 1009531/05, Defs. Exh. B, and Global Network Communications, Inc. v. City of New York, 507 F. Supp.2d 365 (S.D.N.Y. 2007), currently on appeal.

As upon the denial of a franchise, Global has no right to operate PPTs on the City's streets, see New York City Administrative Code Section 23-402, by letter dated November 16, 2007, the City notified Global that 41 of its PPTs would be removed if Global did not remove them first. See November 16, 2007 letter of Assistant Commissioner Stanley Shor, Defs. Exh. G. As of today, the City has removed 39 of the 41 PPTs. The remaining two PPTs are impracticable to remove at this time. Murray Decl., ¶ 20.

On December 13, 2007, Global filed the instant action. The complaint alleges that at an unspecified time Global entered into an agreement with a third party named Jeffrey Hanft ("Hanft") to sell what the complaint characterizes as Global's assets, contingent on Hanft obtaining a franchise from the City ("Hanft Sale"). See Compl., ¶¶ 14, 15. Hanft sought to obtain a franchise from the City for the purpose of operating PPTs at locations where Global had installed PPTs, and at an unspecified time, the City responded by stating PPT locations occupied by Global phone equipment "no longer constitute transferable assets of Global" and refused to further discuss the Hanft Sale. See Compl., ¶¶ 15, 17, 18. Unmentioned in the complaint, but irrefutable by Global, is the fact that the Hanft Sale was presented by Global as a means of

3

settling its now dismissed lawsuit, Global Network Communications v. City of New York, et al., 03 CV 7934 (LLS). See Murray Decl., ¶ 14.

In the new complaint, Global asserts three claims. The first claim asserts that Hanft's supposed rights to enter the payphone market were violated pursuant to Section 253 of the federal Telecommunications Act ("TCA"), 47 U.S.C. § 253(a). The second claim asserts that Hanft's supposed rights to enter the payphone market were violated pursuant to Section 276(c) of the TCA, 47 U.S.C. § 276(c). The third claim asserts that the failure to permit Hanft to obtain a franchise violates Global's supposed rights under TCA Sections 253 and 276, entitling Global to obtain damages pursuant to 42 U.S.C. § 1983.

At the same time the instant lawsuit was filed, Global applied for a temporary restraining order prohibiting the City from removing any of Global's PPTs from the City's streets. After a conference on the matter, the District Court (Cote, J.) denied the application citing plaintiff's failure to meet the likelihood of success on the merits standard. See Order dated December 13, 2007, Def. Exh. I. Murray Decl. ¶ 22.

On December 19, 2007, the Second Circuit (Raggi, J.) denied Global's motion for a preliminary injunction prohibiting the City from removing any of Global's PPTs from the City's streets pending its appeal in the prior action. On December 20, 2007, Global moved for consideration of the same motion by a full panel of the court. This motion has yet to be decided by the Second Circuit. Murray Decl. ¶ 23.

As set forth below and in the accompanying Murray Decl., the complaint should be dismissed. The first two causes of action asserting claims under the TCA are barred as Global lacks standing to assert claims on behalf of Hanft and its own claims both lack a legal basis and are barred by collateral estoppel. The third cause of action for damages under Section 1983 fails

in the absence of a private right of action under the TCA as well as the absence of a violation of Global's rights under the TCA or the Fourteenth or First Amendment.

Furthermore, plaintiff's motion for a preliminary injunction should be denied in all respects. Global has failed to demonstrate either a substantial likelihood of success on the merits or irreparable harm in the absence of an injunction. As Global was denied a franchise, it has no saleable rights to occupy the City's sidewalks. Thus, the only asset Global has to sell is its pay phone equipment, the sale of which can be effectuated without the issuance of a franchise for Hanft and regardless of whether the illegal PPTs have been removed from City sidewalks, either by the City or plaintiff. [2]

---

[2] It should be noted that the City's ostensible failure to grant a franchise to Hanft was raised in the 2003 case as new evidence meriting reconsideration and vacation of the summary judgment dismissing the action. See Pl. Mem., dated September 27, 2007, Defs. Exh. F. As Judge Stanton's decision denying reconsideration and vacation of the grant of summary judgment is on appeal as is the grant of summary judgment, this issue is also before the Second Circuit in the prior action. See November 20, 2005 Notice of Appeal, Entry #63 on District Court Docket, Defs. Exh. B.

## ARGUMENT

## POINT I

### THE CLAIMS UNDER THE TCA ARE BARRED BY LACK OF STANDING AS WELL AS BY COLLATERAL ESTOPPEL.

As alleged in the first and second cause of action, Global claims violations of the TCA based on the failure to make a franchise available to potential market entrants and Hanft in particular.   However, as Global is not a potential entrant but merely a potential seller of payphone equipment and has no basis to assert such a claim on behalf of the alleged potential entrant Hanft, the claims fail for lack of standing.  To the extent that Global claims a barrier to "the free exit from the market," Complaint, ¶ 45, the claim is barred by collateral estoppel based on Judge Stanton's holding in the earlier case.

### A.  The lack of standing

A plaintiff lacks standing to challenge the denial of a franchise to a third party. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  As the party invoking federal jurisdiction, plaintiff bears the burden of establishing the elements of standing. Id. at 561.  To establish Article III standing, "[a] plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Raines v. Byrd, 521 U.S. 811, 818-819 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984) (emphasis added).  See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41 (1976); Warth v. Seldin, 422 U.S. 490, 498 (1975) (standing is "the

threshold question in every federal case, determining the power of the court to entertain the

suit."). Standing implicates two questions:

> First, whether the plaintiff-respondents allege
> 'injury in fact,' that is, a sufficiently concrete
> interest in the outcome of their suit to make it a case
> or controversy subject to a federal court's Art. III
> jurisdiction, and, second, whether as a prudential
> matter, the plaintiff-respondents are proper
> proponents of the particular legal rights on which
> they base their suit.

Iannucci v. City of New York, 2007 U.S. Dist. LEXIS 25860, *13 (E.D.N.Y. March 21, 2007)

(quoting Singleton v. Wulff, 428 U.S. 106, 112 (1976)).

      The Supreme Court has held that "[o]rdinarily, one may not claim standing in

this Court to vindicate the constitutional rights of some third party." Singleton, 428 U.S. at 113

(quoting Barrows v. Jackson, 346 U.S. 249, 255 (1953)) (internal quotations omitted). Similarly,

it is a "well-settled principle that a Section 1983 claim must be based upon the violation of

plaintiff's personal rights, and not the rights of someone else." Archuleta v. McShan, 897 F.2d

495, 497 (10th Cir. 1990) (quoting McKelvie v. Cooper, 190 F.3d 58, 64 (2d Cir. 1999); see also

McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) ("A party may not assert a civil

rights claim on behalf of another, each party must establish that he or she was personally

deprived of rights or privileges secured by the Constitution."); Sterngass v. Bowman, 563 F.

Supp. 456, 459 (S.D.N.Y. 1983) ("One may not sue under 42 U.S.C. § 1983 for deprivation of

another's constitutional rights").

      Courts have recognized an exception to the rule against third party standing where

the party has made the following "two additional showings":  (1) "the party asserting the right

has a 'close' relationship with the person who possesses the right" and (2) "there is a 'hindrance'

to the possessor's ability to protect his own interests." Kowalski v. Tesmer, 543 U.S. 125, 131 (2004). As to the first showing, "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." Singleton, 428 U.S. at 112; Griswold v. Connecticut, 381 U.S. 479 (1965) (court permitted physician defendant to assert privacy rights of married persons physician advised). As to the second showing, the Supreme Court "has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights." Kowalski, 543 U.S. at 130.

Here, plaintiff's alleged contractual relationship with Hanff does not establish the required close relationship require to assert a claim on behalf of a third party. Moreover, plaintiff has not demonstrated that Hanff could not assert the claim himself. In fact, to the contrary, counsel for Global represented to Judge Stanton that Hanff and his company would commence their own action or join Global's. See Memorandum Endorsement, Defs. Exh. G.

Moreover, having been denied a franchise and, thus, the ability to legally occupy City sidewalks, Global has only its payphone equipment, unrelated to any sidewalk locations, to sell. As such, it is merely a potential vendor of supporting services and is not within the zone of interest protected or regulated by the TCA. See Underground Construction Co. v. City and County of San Francisco 2002 U.S. Dist. LEXIS 12994 (N.D. Cal., July 15, 2002) (construction company that installs conduit for telecommunication providers has no standing to assert TCA claims). Thus, Global lacks standing to assert claims under the TCA on its own behalf as well.

**B. Other grounds for dismissing the TCA claims**

Furthermore, to the extent that Global claims a barrier to "the free exit from the market, Complaint, ¶ 45, the claim is barred by collateral estoppel. As held in the decision

8

granting summary judgment in the earlier case, the denial of the franchise for Global based on Global's defaults of its obligations to the City and its untrustworthiness to pay compensation honestly, is not the type of "regulatory barriers to entry and exit" contemplated by the FCC and is unaffected by FCC regulation. See Global Network Communications, Inc. v. City of New York, 507 F. Supp. 2d at 374.[3]

Finally, plaintiff's claims must also be dismissed for failure to join a necessary party. See Fed. R. Civ. P. Rules 12(b)(7), 19. Courts generally follow a two-step analysis for determining whether to dismiss an action for failure to join a necessary party. First, the Court must ascertain whether the absent party is "necessary." See Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000). Second, the Court must determine whether the party's absence validates dismissal pursuant to Rule 19(b). Id. at 724. Here, plaintiff asks the Court to order the City to grant a franchise to Hanft, who is not a party to the action and whose ongoing interest in such a franchise (especially in light of Global's absence of any locations to sell), and the terms and conditions of such interest, is not known. Accordingly, the lawsuit should be dismissed in the absence of a party whose presence is required to obtain complete relief. See Rule 19(a)(1).

---

[3] It should also be noted that Global's claims arises from failed settlement negotiation in the prior action. In an attempt to settle the claims in the action, Global offered to have the locations where it originally installed phones sold to a (supposedly) bona fide third party. Murray Decl. ¶__. Global's apparent dissatisfaction with the City's settlement position does not give rise to a claim of a denial of an opportunity to transfer what it characterizes as its assets and is not "a barrier to exit" in violation of Section 253. Any right Global to transfer its PPTs locations to a third party expired long ago. Pursuant to 67 RCNY § 6-23(ii), Global had 60 days following receipt of the 2005 Notice of the Commissioner's Final Determination denying Global's application for a PPT franchise to enter into an agreement to sell certain of its PPTs located on City sidewalks. This 60-day period long ago expired. Thus, Global has no remaining entitlement to the locations which it now occupies illegally and the prospect of benefiting financially from such a transfer of PPT locations to another party does not exist outside of a settlement context.

## POINT II

### PLAINTIFF IS NOT ENTITLED TO DAMAGES UNDER SECTION 1983.

As alleged in the third cause of action, Global seeks damages under 42 USC Section 1983 based on the alleged violation of its rights under the TCA and the Fourteenth and First Amendment. However, a claim for damages based on the TCA is not cognizable under Section 1983 as a general matter and there is no substantive basis for the alleged violations of plaintiff's rights.

### A. The TCA does not create rights.

A plaintiff seeking Section 1983 redress must assert the violation of a federal right, not merely of federal law. Gonzaga Univ. v. Doe, 536 U.S. 273 (2002) (holding "*rights,* not the broader or vaguer 'benefits' or 'interests,'… may be enforced under the authority of [section 1983]"). Where Congress does not expressly provide a private right of action, the presumption is that they did not intend to provide one. See Touche Ross & Co. v. Redington, 442 U.S. 560, 571 (1979) ("[i]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best"); Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 116 (2d Cir. 2007).

Congressional intent is the keystone as to whether a federal private right of action exists for a federal statute. *See* Alexander v. Sandoval, 532 U.S. 275 (2001). Thus, the inquiry requires "a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries." "[W]here the text and structure of a statute provide no indication that

Congress intends to create a new individual right," there is no basis for a suit under § 1983. Gonzaga, 536 U.S. at 285-86. The question, therefore, is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries. Cannon v. Univ. of Chicago, 441 U.S. 677, 690-93, n. 13. (1979)

Courts consider three factors in determining whether statutory language is rights-creating. First, whether the statutory text is "phrased in terms of the persons benefited." Gonzaga, 536 U.S. at 285-86. Examples of individually focused terminology is found in Titles VI and IX: "no person shall be subjected to discrimination" which are phrased "'with an *unmistakable* focus on the benefited class.'" Id. (quoting Cannon, 441 U.S. at 691). "Where a statute does not include this sort of explicit 'right- or duty- creating language' we rarely impute to Congress an intent to create a private right of action." Id. (quoting Cannon, 441 U.S. at 690, n. 13).

In contrast, the focus of language directing that "no funds shall be made available" to any "educational agency or institution" which has a prohibited "policy or practice," is not on the individual. Rather, the Supreme Court held that such language is "two steps removed from the interests of the individual students and parents and clearly does not confer the sort of '*individual* entitlement' that is enforceable under § 1983." Id. (quoting Blessing v. Arizona Dept. of Economic Security, 520 U.S. 329 (1997)). See Alexander, 532 U.S. at 289(stating "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons")(quoting California v. Sierra Club, 451 U.S. 287, 294 (1981)).

The second factor courts consider is whether "the right assertedly protected by statute is not so vague and amorphous that its enforcement would strain judicial competence."

Finally, the statute must unambiguously impose a binding obligation on the states. Id. at 283; Loyal Tire & Auto Center, Inc. v. Town of Woodbury, 445 F. 3d 136 (2d Cir. 2006).

The issues in Loyal Tire were (1) whether the municipal regulation being challenged fell within the safety exception to the preemption provision of 49 U.S.C. § 14501, and, if not, (2) whether Section 14501(c)(1) creates a private right of action enforceable under Section 1983. In determining whether Section 1983 damages were available, this Court, considering only the first of the three factors, held that Section 14501 may not be enforced through Section 1983 because "Section 14501(c)(1) requires state and local authorities to refrain from regulating motor carriers of property but does not expressly grant any rights to individual motor carriers." Id. at 150. Applying the rule set forth in Gonzaga, this Court stated that a statute "which provides that a state or municipality may not 'enact or enforce' certain kinds of laws ... is not 'phrased in terms of the persons benefited.'" Id. (quoting Cannon, 441 U.S. at 692 n. 13). Instead, it forbids certain state and local legislation and because its focus is "on the regulated actors (state and local authorities), it has an aggregate, rather than an individual, focus." Thus, Section 14501(c)(1) may not be enforced via Section 1983. Id.

The holding in Loyal Tire did not leave the plaintiff without a remedy. As this Court noted, Loyal Tire's right to bring an action seeking declaratory and injunctive relief from municipal regulation, pursuant to the "Supremacy Clause" of the United States Constitution (Article VI, paragraph 2), on the ground that federal law preempts the regulation is undisputed. However, it noted that "'[a] claim under the *Supremacy Clause* that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law' under Section 1983 and that '[a] claim under the *Supremacy Clause* simply asserts that a federal statute has taken

away local authority to regulate a certain activity. Whether [the preempting statute] gives rise to a right enforceable under § 1983 is a different matter.'" Id. at 149 (citations omitted).

This instant case is virtually indistinguishable from Loyal Tire. The language of Sections 253(a) and (c) does not indicate Congressional intent to create a private right of action. Notably, there is no provision in the TCA that explicitly provides a private right of action for violations of Section 253(a). The presumption, therefore, is that Congress did not intend to create one.[4] This presumption is reinforced by the absence of "rights-creating language" in Section 253 which further demonstrates a lack of Congressional intent to create a private right of action. Id. Instead the focus of the language is exclusively on the state and local laws and requirements to be construed: "[n]o State or local statute or regulation, or other State or local legal requirement may prohibit ...." Section 253 does not create rights, not even in aggregate, but only establishes parameters for the application of State and local laws and requirements, that is, rules under which State and localities must operate. Alexander, 532 U.S. at 289 (holding "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons") (citation omitted). See Gonzaga, 536 U.S. at 284 ("For a statute to create such private rights, its text must be phrased in terms of the persons benefited.") (internal quotations omitted). Even where, as here, there are

---

[4] Note that the language of Section 253(a) is not even directed at state or local governments, rather it is directed only at state and local laws, regulations and other legal requirements, which "may not prohibit or have the effect of prohibiting" etc. In effect, 253(a) merely directs that such laws, regulations and so on are to be read (consistent with the Supremacy Clause) as effectual only insofar as they are consistent with Section 253, with inconsistent requirements simply read out or rendered unenforceable under the supreme law of the land.

identifiable beneficiaries of the statute, there is no private right of action unless the statute conferred "specific, individually enforceable rights." Gonzaga, 536 U.S. at 281.

The language of Section 253(c) clearly does not grant any benefits to telecommunications providers such as Global. Section 253(c) was not drafted to benefit telecommunication providers but instead benefits only the relevant State or local government by protecting its right to manage its public rights-of-way. The fact that Section 253(d) provides for enforcement by the FCC indicates a preference for a more expedient, less expensive administrative process. By exempting cases implicating public rights-of-way, Congress did not seek harsher penalties when public rights-of-way are implicated but just the opposite: Congress sought additional protection of state and local government prerogatives in the public rights-of-way context and wanted to assure a local forum for such cases. See Sprint Telephony PCS, L.P., v. County of San Diego, 479 F.3d 1061, 1078 (9th Cir. 2007)(finding no private right of action enforceable through Section 1983); Qwest Corp. v. City of Santa Fe, 380 F.3d 1258 (10th Cir. 2004)(noting that where Congress wanted to create a private right of action under the TCA it did so clearly); Telcom Technologies v. Bridgeport, 2006 U.S. Dist. LEXIS 92728 (D.C. Conn. 2006).

The legislative history indisputably demonstrates that Congress excepted Section 253(c) challenges from FCC jurisdiction solely for the convenience of the local jurisdictions -- to avoid them having to travel to Washington to defend their requirements. 141 Cong. Rec. S8170 (daily ed. June 12, 1995); 141 Cong. Rec. S8350 (daily ed. June 14, 1995); 141 Cong. Rec. S8212 (daily ed. June 13, 1995) & 141 Cong. Rec. S8306, S8308 (daily ed. June 14, 1995). This change was solely about venue, not rights. To strap localities with liability for Section 1983

damages where Congress' intended only to ease their burden is not only inconsistent with the language of the statute but directly contrary to Congress' intent.

The Ninth Circuit and other courts have also concluded that neither 47 USC Section 276 nor the FCC's actions thereunder created any private right of action. See Greene, et al. v. Sprint Communications Co., et al., 340 F.3d 1047 (9th Cir. 2003), cert. denied, 158 L. Ed. 2d 492, 2004 U.S. LEXIS 2773, 72 U.S.L.W. 3656 (2004); Phonetel Technologies, Inc. et al. v. Network Enhanced Telecom d/b/a Network IP, 197 F. Supp. 720 (E.D. Tex. 2002); Western Communications Systems. v. Global Crossing Telecommunications., Inc., 2001 U.S. Dist. LEXIS 25412 (S.D. Cal. 2001).

Here, the language of the statute plainly demonstrates that Congress did not intend to create a private right of action, a plaintiff claiming under the Supremacy Clause that a municipal law, regulation, or other legal requirement is preempted by Section 253 has, as its available remedy, declaratory or injunctive relief but not section 1983 damages. Thus, for all the reasons described above (the lack of a policy intended to protect a specific class, the language and structure of Section 253(a) focused on preemption of laws rather than on rights or obligations, and a legislative history that indicates a Congressional intent to be more not less protective of local governments than an earlier plan that would itself have precluded judicial remedies entirely), and as described in New Phone and Santa Fe, a Section 1983 damage claim does not arise from Sections 253 or 276 and plaintiff's third claim to the extent that it seeks damages under the TCA should be dismissed.

**B. The failure to award a franchise to Hanft does not violate Global's rights.**

Even if a private right of action were found to exist under the TCA, Global's claim that its rights under the TCA were violated by the failure to

award a franchise to Hanft is without basis whatsoever in law.  Judge Stanton has already ruled that the City was within its authority not to grant Global a franchise and, thus, to decline to grant Global the right to use the City's sidewalks for payphones.  Once the City chose to exercise that authority, Global's temporary ability to occupy the sidewalks without a franchise terminated immediately with respect to certain locations (those covered by Section 6.d. of Local Law 68 of 1995) and sixty days thereafter with respect to certain other locations (those covered by Section 6.a. of Local Law 68 of 1995.  See Local Law 68, § 6, Defs. Exh. A.  Thus, Global's claim in this case comes down to the bizarre argument that although the City may, pursuant to Judge Stanton's decision, deny it any right or interest in City sidewalk locations, Global nonetheless has the right to sell that non-existent right or interest to someone else.

Furthermore, Global's argument that the City is restricted by the TCA from limiting Global's authority to sell such locations and, thus, profitably end its telecommunications service is without basis and totally at odds with the Telecommunications Act.  Global's attempt to find support for its position in an FCC reference to the preemption of state and local government barriers to "exit," Complaint, ¶ 56, utterly fails.  As is clear from context in which that reference occurs, the FCC's intent that a law or other requirement that constitutes a barrier to "exit" may be preempted when such a law or other requirement negatively effects an entity's provision of telecommunications service.

Specifically, the FCC explained as quoted in paragraph 56 of the complaint, that the removal of exit barriers is to further market deployment of services.  Thus, for example, an argument might be made that at the time an entity is entering a market to provide telecommunications service, a state or local government would be preempted from imposing a restriction on the terms on which the entity seeking to enter would be able to eventually exit the

market (and recover its investment) so severe as to deter the entity from entering the market in the first place. But that is not Global's situation. Global is not seeking to commence providing service nor is it claiming that it is deterred from offering service by a preempted barrier to its ability to eventually exit the market. Rather, Global is seeking to profit from its inability to legally occupy City sidewalks by selling off City sidewalk locations and, thus, is seeking to pursue interests unrelated to the federal Telecommunications Act's policy of increasing competition in the provision of telecommunications service. The attempt to use the TCA, a lever to generate profits by selling City sidewalk space rips the FCC's language and turns FCC policy on its head. Global is stopping its provision of service – precisely the opposite of the FCC's goa of promoting new competition. Accordingly, Global's claim of a violation of its rights under the TCA is also without substantive basis and should be dismissed.

Global's claims of violation of its rights under the Fourteenth and First Amendments similarly fail. As the denial of a franchise was found by Judge Stanton not to violate either substantive or procedural due process, Global cannot claim violations by reason of the effects of that denial, i.e. that Global had to remove or sell its PPTs on City streets to a franchised company within 60 days of denial of a franchise. See Section 6.a. of Local Law 68 of 1995, Defs. Exh. A. Absent any entitlement to have PPT installations on City sidewalks, Global also cannot claim a violation of its First Amendment rights by the inability to sell its PPTs on City streets.

### POINT III

### PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED

To establish entitlement to a preliminary injunction, a plaintiff must establish that absent award of the injunction it will suffer irreparable harm and, additionally, must demonstrate either (1) "a likelihood of success on the merits" or (2) "sufficiently serious questions going to the merits to make them fair ground for litigation and balance of the hardships decidedly tip" in the movant's favor. Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775, 779-80 (2d Cir. 1994); Local 1814, ILA v. New York Shipping Assoc., 965 F.2d 1224, 1228 (2nd Cir.), cert denied, 506 U.S. 953 (1992).

Where the movant seeks to enjoin "governmental action taken in the public interest pursuant to a statutory or regulatory scheme," a more rigorous test applies to applications for a preliminary injunction. The movant must establish "a clear or substantial likelihood of success on the merits." Sussman v. Crawford, 488 F.3d 136, 140 (2d Cir. 2007). In the instant case, Global has made no such showing. As discussed in Points I and II, the Complaint fails to establish a basis to recover. Furthermore, in support of its motion for a preliminary injunction, plaintiff provides only conclusory allegations as to the existence of a barrier to exit and its alleged violation of the TCA. See Pl. Mem. of Law, pp. 9-10.

Global also fails to demonstrate that it will suffer irreparable harm if an injunction is not granted, although required to do so as a party seeking a preliminary injunction. See LaRouche v. Kezer, 20 F.3d 68, 72 (2d Cir. 1994). As defined by the Second Circuit, irreparable harm is an "injury that is neither remote nor speculative, but actual and imminent and

that cannot be remedied by an award of monetary damages." Forest City Daly Housing v. Town of North Hempstead, 175 F.3d 144, 153 (2d Cir. 1999). Furthermore, where "there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." Moore v. Consolidated Company of New York, 409 F.3d 506, 510 (2d Cir, 2005).

Global argues that without a preliminary injunction, its PPTs and the good will it has developed over the years will have been destroyed leaving nothing to be sold to Hanft, Global Memo of Law, at 8, and will, in turn, result in the destruction of Global's business. Massie Decl., ¶ 29. In fact, Global's authority to offer payphone service on City sidewalks ended with the previously upheld franchise denial. In any event, even without any franchise from the City, Global is free to relocate its payphone equipment from City sidewalks to any location on any private property as well as to sell such equipment to anyone it chooses.

The availability of damages also renders Global's claim of irreparable harm meritless. As Global asserts claims for monetary damages under Section 253(a) and 276 and for constitutional violations, even if damages are not available under the TCA, damages would be available pursuant to 42 U.S.C. § 1983 for the alleged constitutional violations.

Another factor to be considered in deciding whether to issue a preliminary injunction is "the public interests that may be affected." LaRouche v. Kezer, supra, 20 F.3d at 72. Contrary to Global's assertion, the City and the public have a substantial interest in terminating, as soon as possible, placement on City streets of payphone installations controlled by an entity with Global's admitted untrustworthy history. See Global Network Communications, Inc. v. City of New York, 507 F. Supp.2d at 369-370. Furthermore, sidewalk space is a scarce and valuable commodity. The value of such space to the public for free and

uncluttered pedestrian circulation, or for use by others, may be difficult to express in dollars but is no less valuable.  Sidewalk space can properly be compared to parking space, from which the City removes illegally parked cars every day to maintain public use of rights-of-way.  Just as the public interest is served by the removal of illegally parked cars, so too is the public interest served by the removal of PPTs illegally occupying City sidewalks.

In any event, and as argued at the December 27, 2007 conference before the Court, the instant motion for a preliminary injunction in this action should be stayed pending determination of the merits of plaintiff's motion, currently before the Second Circuit, for reconsideration by a panel of the Second Circuit of the December 19, 2007 denial of a preliminary injunction  Plaintiff admits that its motion before the Second Circuit requests the same relief requested here.  See December 17, 2007 Transcript, p. 8, Defs. Exh. J.  Moreover, plaintiff both raised the City's ostensible failure to grant a franchise to Hanft in the prior case as new evidence meriting reconsideration and vacation of the summary judgment dismissing the action,   see Pl. Mem., dated September 27, 2007, Defs. Exh. F, and has appealed Judge Stanton's decision denying reconsideration and vacation of the grant of summary judgment.  See November 20, 2005 Notice of Appeal, Entry #63 on District Court Docket, Defs. Exh. B.  Thus, a stay herein is warranted at this time as the decision by the Circuit addressing the merits of the application will be binding on the parties.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss should be granted and plaintiff's motion for a preliminary injunction should be denied.

Dated:      New York, New York
             January 11, 2008

                            MICHAEL A. CARDOZO
                            Corporation Counsel of the
                              City of New York
                            Attorney for Defendants
                            100 Church Street
                            New York, New York 10007
                            (212) 788-1027

                  By:        _Diana M Murray_
                            Diana M. Murray
                            Assistant Corporation Counsel