UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GLOBAL NETWORK COMMUNICATIONS,
INC.

        Plaintiff,

        v.

CITY OF NEW YORK AND CITY OF
NEW YORK DEPARTMENT OF
INFORMATION TECHNOLOGY
AND TELECOMMUNICATIONS

        Defendants.
------------------------------------------------------------x

**Memorandum & Order**

07 Civ. 11209 (LBS)

SAND, J.,

Global Network Communications Inc. ("Global") moves for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure to enjoin the city from continuing to remove Global's public pay telephones ("PPTs") pending resolution of this case. Defendants the City of New York and its Department of Information Technology and Telecommunications ("DoITT") (collectively, "the City") oppose the motion of plaintiff Global for a preliminary injunction and cross-move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), (6), and (7). Global's application for a temporary restraining order enjoining the Defendants from removing the PPTs was denied by Judge Cote on December 13, 2007.

**Factual Background**

Global's Participation in the PPT Market

In 1959, the New York City Council adopted Local Law 78 of 1959 ("Local Law 78") making it illegal to install or maintain a public pay telephone installation on City-

owned property without a license issued by the City's Commissioner of Traffic, in his or her discretion, and establishing procedures for issuance of such licenses. Nevertheless, by the early 1990s companies had installed PPTs on City streets without licenses. See Global Network Communications, Inc. v. City of New York, 507 F.Supp.2d 365, 367 (S.D.N.Y. 2007).

In 1995, the City Council adopted Local Law 68 of 1995 ("Local Law 68"), New York City Administrative Code, Sections 23-401 through 23-408, which provided a conditional amnesty procedure allowing legalization of previously installed, unlicensed PPTs located on City streets, provided certain conditions were met, including, but not limited to, receipt by the owner of a "franchise" from the City. See Local Law 68, § 6; Defs. Exh. A. Upon notice of the denial of such a franchise application, a company must either remove its PPTs from City streets or within 60 days enter into an agreement to sell certain of its PPTs located on City sidewalks. In the event that a company does neither, the City may remove the PPTs from City sidewalks. After removal by the City, the payphone equipment itself remains retrievable by the company upon payment of the cost of removal. Id. In this sense, the removal of the PPTs on City sidewalks upon denial of a franchise application is similar to the removal of illegally parked cars, thereafter recoverable from a storage facility.

After the enactment of New York City Local Law 68 of 1995, Global applied for a franchise to operate and legalize its PPT locations on City sidewalks. While its application was being considered, Global's chief executive and sole shareholder, Ronald Massie ("Massie") admitted in criminal proceedings that Global relied on organized crime figures to further its business and committed fraud against its business associates as

well as involvement in other illegal activities.  See Global Network Communications, 507 F.Supp.2d at 369-70.  Based in part on these admissions, the City denied Global a franchise.  Challenges to the franchise denial made by Global in both state and federal court were rejected.  See Global Network Communications v. Gino Menchini, Index No. 1009531/05, Defs. Exh.B.; Global Network Communications, 507 F.Supp.2d 365 (S.D.N.Y. 2007) (currently on appeal to the Second Circuit).

Upon the denial of a franchise, the City determined that Global has no right to operate PPTs on the City's streets.  See New York City Administrative Code Section 23-402.  By letter dated November 16, 2007, the City notified Global that 41 of its PPTs would be removed if Global did not remove them first.  See Defs. Exh. G (Nov. 16, 2007 Letter of Assistant Commissioner Stanley Shor).  As of January 11, 2008, the City has removed 39 of the 41 PPTs.  The remaining two PPTs were impracticable to remove at that time.  Murray Decl. ¶ 20.

Global's Recent Efforts to Divest Its PPT Assets

In light of the denial of a franchise to Global, Global attempted to sell its PPT assets.  Two earlier efforts did not go forward because City objected to the terms of the proposed transactions.  More recently, however, Global entered into an agreement pursuant to which the PPT assets of Global would be sold to a third party.  Global disclosed its intention of selling its assets to a third party in a conference held before Judge Louis Stanton, to whom the original action was assigned, with the City on January 5, 2007. Ronald Massie, president of Global, disclosed the name of the person who sought to acquire those assets, Jeffrey Hanft, at a later conference with the City and Judge

3

Stanton. Bruce Regal, an attorney with the New York City Corporation Counsel's office and one of the counsel for the City in the original action said that a franchise was then available to a third party that wished to obtain one.

Mr. Hanft had a telephone conversation with Mr. Regal and Stanley Shor, assistant commissioner of DoITT. Mr. Shor was told that he had to complete and submit a VENDEX, or standard Vendor Information Exchange System application. Mr. Hanft completed the VENDEX application. Mr. Hanft then attended an interview with Joseph Piazza of the Department of Investigation and Mr. Shor on May 29, 2007.

On November 30, 2007, Robert Rubin, an attorney for Mr. Hanft, wrote to Mr. Regal to inquire as to the status of Mr. Hanft's application to obtain a franchise to operate the Global assets that he intends to purchase from Global. On December 11, 2007, Mr. Regal responded to Mr. Rubin's letter. Mr Regal told Mr. Rubin:

> As the locations on City sidewalks of public pay telephones originally installed by Global Network Communications, Inc. ("Global") no longer constitute transferable assets of Global, any transaction, such as you describe in your letter, involving payphone locations on City sidewalks in connection with which Global would receive consideration, could only have occurred as part of a settlement of legal claims brought by Global against the City. Recent developments, including a court decision favorable to the City, have led the City to conclude that a settlement would not be in the City's interest, and the City and Global are no longer discussing such a settlement.

On November 19, 2007, Mr. Massie received a letter from Mr. Shor identifying 41 Global PPTs that DoITT intended to remove within five business days unless either Global removed them itself or Global gave reasons why they should be permitted to remain on the City's public rights-of-way.

As of December 13, 2007, Global has a total of 662 PPTs (including the four that were removed on December 13). Of these, the 41 identified in Mr. Shor's Nov. 19 letter

4

are the most valuable curb-line PPTs because they are appropriate for carrying advertising. Further communications between Mr. Shor and Global's attorney resumed stating the parties' various positions regarding the appropriateness of removal of the PPTs.

Global seeks judicial intervention to preserve the assets that it intends to sell to Mr. Hanft, so that it can exit the business of providing public payphone services in the City. Global contends that the City's refusal to provide a mechanism for a new entrant such as Mr. Hanft or any other outsider (i.e., a non-franchisee) to obtain a franchise to operate PPTs on the City's public rights-of-way violates the requirements of the Telecommunication Act of 1996 ("Telecom Act") that states and localities remove barriers to exit and entry.

The Present Lawsuit

On December 13, 2007, Global filed the instant action. In this new complaint, Global asserts three claims. The first claim asserts that Hanft's supposed rights to enter the payphone market were violated pursuant to Section 253 of the TCA, 47 U.S.C. § 253(a). The second claim asserts that Hanft's supposed rights to enter the payphone market were violated pursuant to Section 276(c) of the TCA, 47 U.S.C. § 276(c). The third claim asserts that the failure to permit Hanft to obtain a franchise violates Global's supposed rights under TCA Sections 253 and 276, entitling Global to obtain damages pursuant to 42 U.S.C. § 1983.

**Procedural Posture**

At the same time that the instant lawsuit was filed, Global applied for a temporary restraining order prohibiting the City from removing any of Global's PPTs from the City's streets. After a conference on the matter, Judge Cote denied the application, citing plaintiff's failure to meet the likelihood of success on the merits standard. See Order dated December 13, 2007, Defs. Exh. I; Murray Decl. ¶ 22.

On December 19, 2007, the Judge Raggi of the Second Circuit denied Global's motion for a preliminary injunction prohibiting the City from removing any of Global's PPTs from the City's streets pending its appeal in the prior action. On December 20, 2007, Global moved for consideration of the same motion by a full panel of the court. This motion has yet to be decided. Murray Decl. ¶ 23.

**Discussion**

**A. Global Lacks Standing to Assert Claims on Behalf of Hanft or Any Third Party Purchaser**

Global lacks standing to challenge the denial of a franchise to a third party purchaser. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). As the party invoking federal jurisdiction, plaintiff bears the burden of establishing the elements of standing. Id. at 561. To establish Article III standing, "[a] plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Raines v. Byrd, 521 U.S. 811, 818-19 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)) (emphasis added); see also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S.

6

464, 472 (1982) (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41 (1976); Warth v. Seldin, 422 U.S. 490, 498 (1975) (standing is "the threshold question in every federal case, determining the power of the court to entertain the suit"). Standing implicates two questions:

> First, whether the plaintiff-respondents allege 'injury in fact,' that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction, and, second, whether as a prudential matter, the plaintiff-respondents are proper proponents of the particular legal rights on which they base their suit.

Iannucci v. City of New York, 2007 U.S. Dist. LEXIS 25860 at *13 (E.D.N.Y. Mar. 21, 2007) (quoting Singleton v. Wulff, 428 U.S. 106, 112 (1976)).

The Supreme Court has held that "[o]rdinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party." Singleton, 428 U.S. at 113 (quoting Barrows v. Jackson, 346 U.S. 249, 255 (1953)) (internal quotations omitted). Similarly, it is a "well-settled principle that a Section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990) (quoting McKelvie v. Cooper, 190 F.3d 58, 64 (2d Cir. 1999); see also McCloud v. Delaney, 677 F.Supp. 230, 232 (S.D.N.Y. 1988) ("A party may not assert a civil right claim on behalf of another, each party must establish that he or she was personally deprived of rights or privileges secured by the Constitution."); Sterngass v. Bowman, 563 F.Supp 456, 459 (S.D.N.Y. 1983) ("One may not sue under 42 U.S.C. § 1983 for deprivation of another's constitutional rights").

Courts have recognized an exception to the rule against third party standing where the party has made the following "two additional showings": (1) "the party asserting the

7

right has a 'close relationship' with the person who possesses the right" and (2) "there is a 'hindrance' to the possessor's ability to protect his own interests." Kowalski v Tesmer, 543 U.S. 125, 131 (2004). As to the first showing, "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." Singleton, 428 U.S. at 112; Griswold v. Connecticut, 381 U.S. 479 (1965) (court permitted physician defendant to assert privacy rights of married persons physician advised). As to the second showing, the Supreme Court "has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction against the litigant would result indirectly in the violation of the third parties' rights." Kowalski, 543 U.S. at 130.

Here, plaintiff's alleged potential contractual relationship with Hanft or any potential purchaser does not establish the close relationship required to assert a claim on behalf of a third party. Moreover, plaintiff has not demonstrated that Hanft or any other potential purchaser could not assert the claim itself. In fact, counsel for Global represented to Judge Stanton that Hanft and his company would commence their own action or join Global's. See Memorandum Endorsement, Defs. Exh. G.

Any right Global had to sell its PPT franchise expired long ago. Pursuant to local rule RCNY § 6-23(ii), Global had 60 days following receipt of the 2005 Notice of the Commissioner's Final Determination denying Global's application for a PPT franchise to enter into an agreement to sell certain of its PPTs located on City sidewalks. This 60-day period has expired. Thus, Global has no remaining entitlement to the locations and now occupies them illegally. Global simply does not have standing to assert the rights of others who may want a franchise with the City for those locations.

**B. Global's Claim that It is Entitled to Sell to a Buyer of Its Choice Fails Because It Lacks Standing to Bring This Claim on Its Own Behalf**

Global also contends that, by denying franchises to potential acquirers of Global's PPT assets, the actions of the City deny it the ability "to sell to a buyer of its choice, and the current regulatory scheme governing the provision of payphone service on the City's public right-of-way are illegal because they do not allow such a sale." January 15, 2008 Letter to the Court at 2. Its argument rests on the faulty proposition that the City's denial of franchises to qualified third parties harms Global's interest in divesting itself of its valuable PPT franchise. This position fails because, as Judge Stanton found that a PPT franchise was properly denied to the company, see Global Network Communications, 507 F.Supp.2d 365 (S.D.N.Y. 2007) (currently on appeal to the Second Circuit), it simply has no PPT franchise to offer.

In essence, Global has alleged no redressable harm in this action stemming from actions by the City. Indeed, if the City granted PPT franchises to third party purchasers to whom Global intends to sell its PPT assets, Global still – according to Judge Stanton's decision – simply has no valid PPT franchise to market. Absent a reversal of Judge Stanton's summary judgment decision by the Second Circuit, granting franchises to qualified buyers of Global's expired PPT franchise will not redress any harm to Global. Allen v. Wright, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and *likely to be redressed by the requested relief*.") (emphasis added).

Having been denied a franchise and, thus, the ability to legally occupy City sidewalks, Global has only its payphone equipment, unrelated to any sidewalk locations,

9

to sell. As such, it is merely a vendor of supporting services and is not within the zone of interests protected or regulated by the TCA. See Underground Construction Co. v. City and County of San Francisco, 2002 U.S. Dist. LEXIS 12994 (N.D. Cal. July 15, 2002) (construction company that installs conduit for telecommunication providers has no standing to assert TSA claims). Thus, Global lacks standing to assert claims under the TCA on its own behalf as well.

### C. Global Remaining Claims on its Own Behalf to Sell its PPTs are Barred by Collateral Estoppel

Counsel for Global admitted at a December 27, 2007, conference before this Court that "with respect to the application in the Second Circuit, we obviously make virtually identical arguments with respect to the damage being done to Global as a result of the city's behavior." Defs. Exh. J (Dec. 27, 2007, Tr. 8). During the same conference, counsel for the City contended that Global "made the same arguments that they are making here in this complaint to the Second Circuit." Defs. Exh. J (Dec. 27, 2007, Tr. 10).

To the extent that Global claims a barrier to "the free exit from the market," Complt. ¶ 45, based on denial of the ability to sell its franchise to Hanft or any third party purchaser, that claim is barred by collateral estoppel. Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995) ("Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment."). As held in Judge Stanton's decision in the earlier case, the denial of a franchise for Global based on Global's defaults of its obligations to the City and its untrustworthiness to pay

compensation honestly, is not the type of "regulatory barriers to entry and exit" contemplated by the FCC and is unaffected by FCC regulation.  See Global Network, 507 F.Supp.2d at 374.  Moreover, Judge Stanton ruled that "there is no factual issue presented altering the conclusion that the City's rejection of Global's application lay within the 'safe harbor' provision of § 253(c), and the claim of violation of TCA § 253 is dismissed." Global Network, 507 F.Supp.2d at 373.

Moreover, Global's claims of violation of its rights under the Fourteenth and First Amendments cannot be considered by this court under principles of collateral estoppel. As the denial of a franchise was found by Judge Stanton not to violate either substantive or procedural due process, Global cannot claim violations by reason of the effects of that denial, i.e., that Global had to remove or sell its PPTs on City streets to a franchised company within 60 days of denial of a franchise.  See Global Network, 507 F.Supp.2d at 374-76.  Absent any entitlement to have PPT installations on City sidewalks, Global also cannot claim a violation of its First Amendment rights by the inability to sell advertising on its PPTs on City streets.  Global Network, 507 F.Supp.2d at 376 ("Global's claims of violation of its right to free speech, and of retaliation for its litigation, are both dismissed.").

Global's argument under the Contract Clause was rejected by Judge Stanton in the prior litigation.  Global Network, 507 F.Supp.2d at 377 ("Global's claim that its contract was unconstitutionally impaired is dismissed.").  Its claims under the New York Public Service law were dismissed, Global Network, 507 F.Supp.2d at 376-77, as well as its claims under 42 U.S.C. § 1983 and 1988, Global Network, 507 F.Supp.2d at 377.

Global simply cannot relitigate issues previously decided by Judge Stanton and presently on appeal before a full panel of the Second Circuit under the guise of a new complaint alleging harms from the inability to sell defunct PPT assets to a proposed third party purchaser.

**D.  The Motion for a Preliminary Injunction Should Be Stayed**

The instant motion for a preliminary injunction should thus be stayed pending determination of the merits of plaintiff's motion and appeal, currently before a full panel of the Second Circuit after the December 19, 2007, denial of a preliminary injunction. See November 20, 2005 Notice of Appeal, Entry #63 on District Court Docket, Defs. Exh. C (appealing Judge Stanton's decision denying reconsideration and vacation of the grant of summary judgment).  A stay herein is warranted at this time as a decision by the Second Circuit addressing the preliminary injunction application and the appeal of Judge Stanton's summary judgment decision will be binding on the parties.

**Conclusion**

Judge Stanton denied leave "to serve a supplemental complaint setting forth the new claim that the defendants are preventing Global from exiting and Mr. Hanft from entering the market."  See Memorandum Endorsement, Defs. Exh. G.  That supplemental complaint is before us today.  Global's primary claim of harm resulting from not being able to sell to a purchaser of its choice depends exclusively on the existence of a valid

12

PPT franchise from the City, and thus this Court must stay decision on Global's request for a preliminary injunction and the City's request for a dismissal of the complaint pending decision by the Second Circuit on that very issue.

SO ORDERED.

Dated: January __, 2008
New York, NY

_____
U.S.D.J.